# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
07/24/2019
CT Log Number 535924999

TO: Cathy A. King, General Counsel & Secretary
PAR Technology Corporation
8383 Seneca Tpke, Par Technology Park
New Hartford, NY 13413-4957

RE: **Process Served in Delaware**

FOR: PAR Technology Corporation (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | KANDICE NEALS, PLTF. vs. PAR TECHNOLOGY CORP, ETC., DFT. <br> *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | COMPLAINT, SUMMONS, EXHIBIT(S) |
| **COURT/AGENCY:** | Cook County - Circuit Court, IL <br> Case # 2019CH03701 |
| **NATURE OF ACTION:** | Employee Litigation |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/24/2019 at 14:41 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this Summons, not counting, the day of service |
| **ATTORNEY(S) / SENDER(S):** | J. Eli Wade-Scott <br> Edelson PC <br> 350 North LaSalle Street, 14th Floor <br> Chicago, IL 60654 <br> 312-589-6370 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via UPS Next Day Air , 1ZX212780111221467 |
| | Image SOP |
| | Email Notification, Cathy A. King cathy_king@partech.com |
| | Email Notification, Cathy A. King cathy_king@partech.com |
| | Email Notification, Theresa A Szuba theresa_szuba@partech.com |
| | Email Notification, Whitney McKenna whitney_mckenna@partech.com |
| | Email Notification, Paul Dominiski paul_dominski@partech.com |
| | Email Notification, Whitney McKenna whitney_mckenna@partech.com |
| **SIGNED:** <br> **ADDRESS:** | The Corporation Trust Company <br> 1209 N Orange St <br> Wilmington, DE 19801-1120 |

Page 1 of 2 / SV

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
07/24/2019
CT Log Number 535924999

**TO:** Cathy A. King, General Counsel & Secretary
PAR Technology Corporation
8383 Seneca Tpke, Par Technology Park
New Hartford, NY 13413-4957

**RE:** **Process Served in Delaware**

**FOR:** PAR Technology Corporation  (Domestic State: DE)

**TELEPHONE:**                    302-658-7581

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
7/23/2019 5:39 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03701
5885747

FILED DATE: 7/23/2019 5:39 PM 2019CH03701

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

KANDICE NEALS

_____
(Name all parties)

v.

PAR TECHNOLOGY CORP.

Case No. 2019 CH 03701

### ☐ SUMMONS ☐ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 3

Date Served: 7/24/19
Time Served: 2:30
Server: MT 3592991

Summons - Alias Summons                                (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

7/23/2019 5:39 PM DOROTHY BROWN

Witness: _____

Atty. No.: 62075

Atty Name: J. Eli Wade-Scott

Atty. for: Plaintiff

Address: 350 North LaSalle Street, 14th Floor          DOROTHY BROWN, Clerk of Court

City: Chicago                                          Date of Service: 7/2/19

State: IL    Zip: 60654                                (To be inserted by officer on copy left with Defendant or other person):

Telephone: 312-242-0859

Primary Email: ewadescott@edelson.com

FILED DATE: 7/23/2019 5:39 PM    2019CH03701

FILED DATE: 7/23/2019 5:39 PM   2019CH03701

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

## Daley Center Divisions/Departments

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

**12-Person Jury**

Return Date: No return date scheduled
Hearing Date: 7/19/2019 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
Cook County, IL

FILED
3/21/2019 2:21 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

FILED DATE: 3/21/2019 2:21 PM   2019CH03701

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |
|---|---|
| KANDICE NEALS, individually and on behalf of all others similarly situated, | Case No. 2019CH03701 |
| *Plaintiff,* | |
| v. | |
| PAR TECHNOLOGY CORP., a Delaware corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kandice Neals ("Neals") brings this Class Action Complaint and Demand for Jury Trial against Defendant PAR Technology Corp. ("PAR") to put a stop to its unlawful collection, use, and storage of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1. Defendant PAR is a developer of cloud-based point of sale ("POS") systems for the hospitality industry. It offers a range of POS systems that enable businesses—primarily restaurants—to track their employees' time by using a biometric finger scanner.

2. When employees first begin their jobs at a restaurant that uses PAR's POS system, they are required to scan their fingerprint in its biometric time tracking system as a means of authentication, instead of using key fobs or other identification cards.

3. While there are tremendous benefits to using biometric time clocks in the

workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

4.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

5.     Despite this law, PAR disregards restaurant employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, PAR has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by the BIPA.

6.     Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

7.     Plaintiff Kandice Neal is a natural person and citizen of the State of Illinois.

8.     Defendant PAR Technology Corp. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 8383 Seneca

FILED DATE: 3/21/2019 2:21 PM   2019CH03701

FILED DATE: 3/21/2019 2:21 PM   2019CH03701

Turnpike, New Hartford, New York 13413.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois and has committed tortious acts in Illinois.

10. Venue is proper in Cook County because Defendant is a nonresident of this State.

## FACTUAL BACKGROUND

### I. The Biometric Information Privacy Act.

11. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

12. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

3

FILED DATE: 3/21/2019 2:21 PM   2019CH03701

13.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

14.     The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

15.     The BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

16.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

17.     The BIPA also establishes standards for how companies in possession of biometric identifiers and biometric information must handle them. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made

available to the public—establishing a retention schedule and guidelines for permanently

destroying biometric identifiers and biometric information when the initial purpose for collecting

such identifiers or information has been satisfied or within three years of the individual's last

interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

18.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored

provisions place no absolute bar on the collection, sending, transmitting or communicating of

biometric data. For example, the BIPA does not limit what kinds of biometric data may be

collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be

collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage

in that conduct must make proper disclosures and implement certain reasonable safeguards.

## II.     PAR Technology Violates the Biometric Information Privacy Act.

19.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many

companies who had experimented with using biometric data as an authentication method stopped

doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I

above, was widely publicized and brought attention to consumers' discomfort with the use of

their biometric data.

20.     Unfortunately, PAR failed to address these concerns. PAR continues to collect,

store, and use restaurant employees' biometric data in violation of the BIPA.

21.     Specifically, PAR sells and/or leases its POS systems with a biometric fingerprint

scanner to restaurants. When employees first begin work at a restaurant that uses a PAR POS

system, they are required to have their fingerprints scanned in order to enroll them in its

fingerprint database.

22.     Restaurants use PAR's POS as an employee time tracking system that requires the

FILED DATE: 3/21/2019 2:21 PM    2019CH03701

FILED DATE: 3/21/2019 2:21 PM    2019CH03701

restaurant's employees to use their fingerprint as a means of authentication. Unlike a traditional time clock, employees have to use their fingerprint to "punch" in to or out of work.

23.     PAR failed to inform restaurant employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all. Indeed, restaurant employees are unaware that by providing their biometric identifiers to the restaurant they are actually transmitting their sensitive biometric data to PAR.

24.     PAR similarly failed to provide restaurant employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying restaurant employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the restaurant does so without any knowledge of when their biometric identifiers will be removed from PAR's databases—or if they ever will be.

25.     The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as PAR's—where the restaurant employees are aware that they are providing biometric identifiers to their employer but are not aware of the full extent of the reasons they are doing so, nor are informed who else is receiving this data—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But PAR disregards these obligations, and instead unlawfully collects, stores, and uses restaurant employees' biometric identifiers and information without proper consent.

26.     Ultimately, PAR disregards restaurant employees' statutorily protected privacy rights by violating the BIPA.

FILED DATE: 3/21/2019 2:21 PM  2019CH03701

## FACTS SPECIFIC TO PLAINTIFF NEALS

27.     Plaintiff Neals worked at a Charley's Philly Steaks restaurant starting in May 2018.

28.     As a new employee, Charley's Philly Steaks required Neals to scan her fingerprint into the PAR POS system so that it could use it as an authentication method to track her time. PAR subsequently collected and stored Neals's biometric identifier into its database.

29.     Each time Neals began and ended her workday she was required to scan her fingerprint into PAR's POS system.

30.     PAR never informed Neals of the specific limited purposes or length of time for which it collected, stored, or used her fingerprint.

31.     Similarly, PAR never informed Neals of any biometric data retention policy it developed, nor whether it will ever permanently delete her fingerprint.

32.     Neals never signed a written release allowing PAR to collect or store her fingerprint.

33.     Neals has continuously and repeatedly been exposed to the risks and harmful conditions created by PAR's violations of the BIPA alleged herein.

34.     Plaintiff seeks liquidated damages under BIPA as compensation for the injuries PAR has caused.

## CLASS ALLEGATIONS

35.     **Class Definition**: Plaintiff Kandice Neals brings this action pursuant to 735 ILCS 5/2-801 on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by PAR Technology while residing in Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over

this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

36.    **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

37.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a) whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

   b) whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

   c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

   d) whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

   e) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying

FILED DATE: 3/21/2019 2:21 PM  2019CH03701

FILED DATE: 3/21/2019 2:21 PM 2019CH03701

biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f)   whether Defendant complies with any such written policy (if one exists); and

g)   whether Defendant used Plaintiff's and the Class's fingerprints to identify them.

38.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of the other members of the Class.

39.   **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be

fostered and uniformity of decisions will be ensured.

## CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiff and the Class)

40.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

41.     The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

42.     The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.*, when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

43.     Unfortunately, PAR fails to comply with these BIPA mandates.

44.     PAR is corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

45.     Plaintiff and the Class are individuals who had their "biometric identifiers"

FILED DATE: 3/21/2019 2:21 PM   2019CH03701

FILED DATE: 3/21/2019 2:21 PM 2019CH03701

collected by PAR (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

46.     Plaintiff's and the Class's biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

47.     PAR violated 740 ILCS 14/15(b)(3) by negligently failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

48.     PAR violated 740 ILCS 14/15(b)(1) by negligently failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

49.     PAR violated 740 ILCS 14/15(b)(2) by negligently failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

50.     PAR violated 740 ILCS 14/15(a) by negligently failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

51.     By negligently collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, PAR violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq.*

52.     On behalf of herself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to

comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $5,000 for each willful and/or reckless violation of the BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative $1,000 for each negligent violation of the BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees, costs, and expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kandice Neals, on behalf of herself and the Class, respectfully requests that the Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Neals as a representative of the Class, and appointing her counsel as Class Counsel;

B.    Declaring that Defendant's actions, as set out above, violate the BIPA;

C.    Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.    Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E.    Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.    Awarding such other and further relief as equity and justice may require.

FILED DATE: 3/21/2019 2:21 PM 2019CH03701

FILED DATE: 3/21/2019 2:21 PM 2019CH03701

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**KANDICE NEALS,** individually and on behalf of all others similarly situated,

Dated: March 21, 2019

By: /s/ J. Eli Wade-Scott
One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075

David Fish
dfish@fishlawfirm.com
John Kunze
kunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
Firm ID: 44086

Return Date: No return date scheduled
Hearing Date: 7/23/2019 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
7/16/2019 3:06 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03701

5789281

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

# EXHIBIT 1

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| KANDICE NEALS, individually and on behalf of all others similarly situated, | Case No.: 2019 CH 03701 |
| *Plaintiff,* | |
| v. | |
| PAR TECHNOLOGY CORP., a Delaware corporation, | |
| *Defendant.* | |

## <u>DECLARATION OF J. ELI WADE-SCOTT</u>

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true:

1.     I am an attorney admitted to practice before the Supreme Court of the State of Illinois. I am entering this declaration in support of Plaintiff's Motion for and Memorandum in Support of Class Certification. This declaration is based upon my personal knowledge except where expressly noted otherwise. If called upon to testify to the matters stated herein, I could and would competently do so.

2.     I am an Associate at the law firm of Edelson PC, which has been retained to represent the named Plaintiff in this matter, Kandice Neals.

3.     Attached hereto as Exhibit 1-A is a true and accurate copy of the firm resume of Edelson PC.

4.     To date, Edelson PC and its attorneys have diligently investigated and dedicated

substantial resources to the investigation of the claims at issue in this action, and we will

continue to do so throughout its pendency.

           *                              *                                  *

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing

is true and correct.

Executed on July 16, 2019.

/s/ J. Eli Wade-Scott

FILED DATE: 7/16/2019 3:06 PM    2019CH03701

2

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

# EXHIBIT 1-A

FILED DATE: 7/16/2019 3:06 PM  2019CH03701

**Edelson PC**

350 North LaSalle Street, 14th Floor, Chicago, Illinois 60654
t 312.589.6370 l f 312.589.6378 l www.edelson.com

## EDELSON PC FIRM RESUME

EDELSON PC is a plaintiffs' law firm concentrating on class actions, mass actions and public client investigations and prosecutions.

Our attorneys have been recognized as leaders in these fields by state and federal courts, legislatures, national and international media groups, and our peers. Our reputation has led state and federal courts across the country to appoint us lead counsel in many high-profile cases, including in cutting-edge privacy class actions against Facebook, comScore, Netflix, Time, Microsoft; Telephone Consumer Protection Act class actions against technology, media, and retail companies such as Google, Twentieth Century Fox, Simon & Schuster, and Steve Madden; data security class actions against LinkedIn, Advocate Hospitals, and AvMed; banking cases related to reductions in home equity lines of credit against Citibank, Wells Fargo, and JP Morgan Chase; fraudulent marketing cases against software companies such as Symantec, AVG and Ascentive and brick and mortar companies such as AMD; mobile content class actions against all major cellular telephone carriers; and product liability and personal injury cases, including the NCAA Single School/Single Sport Concussion MDL, the Thomas the Tank Engine lead paint class actions and the tainted pet food litigation involving Menu Foods.

We are lead counsel in *Robins v. Spokeo*, 136 S. Ct. 1540 (2016) where the United States Supreme Court held that "intangible" harms can satisfy Article III standing requirements.

We are class counsel in *Wakefield v. Visalus*, No. 3:15-cv-01857 (D. Ore. Apr. 12, 2019), which after three and a half years of litigation recently produced the largest-ever privacy jury verdict, which equates to just over $925 million in damages to the Class.

We have testified before the United States Senate and state legislative bodies on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy, and other consumer issues. Our attorneys have appeared on dozens of national and international television and radio programs, and in numerous national and international publications, discussing our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, and also lecture on class actions at law schools.

In *Barnes v. Aryzta*, No. 17-cv-7358 (N.D. Ill. Jan. 22, 2019), the court endorsed an expert opinion finding that we "should 'be counted among the elite of the profession generally and [privacy litigation] specifically' because of [our] expertise in the area."

The Hollywood Reporter explained that we are "accustomed to big cases that have lasting legacy."

Overall, our verdicts and settlements are valued at over $2 billion, collectively.

**Edelson PC**

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE

EDELSON PC is a leader in plaintiffs' class and mass action litigation. Law360 has called us a "Titan of the Plaintiffs Bar," a "Plaintiffs Class Action powerhouse" and a "Privacy Litigation Heavyweight." In 2018, we were recognized for the second consecutive year as an "Illinois Powerhouse," alongside Kirkland & Ellis, Dentons, Schiff Hardin and Swanson Martin; Edelson was the only firm with less than a hundred lawyers recognized. Law360 also named us a "Cybersecurity & Privacy Group Of The Year," again the only plaintiff's firm to win this honor.

We have been described as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *See In re Facebook Privacy Litig.*, No. C 10-02389 (N.D. Cal. Dec. 10, 2010) (order appointing us interim co-lead of privacy class action); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379 (N.D. Cal. Aug. 12, 2011) (appointing us sole lead counsel due, in part, to our "significant and particularly specialized expertise in electronic privacy litigation and class actions"). We have also been recognized by courts for our uniquely zealous and efficient approach to litigation, which led the then-Chief Judge of the United States Court for the Northern District of Illinois to praise our work as "consistent with the highest standards of the profession" and "a model of what the profession should be. . . ." *In re Kentucky Fried Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-cv-7670, MDL 2103 (N.D. Ill. Nov. 30, 2011). Likewise, in appointing our firm interim co-lead in one of the most high profile banking cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill. July 16, 2010). After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have several sub-specialties within our plaintiffs' class action practice:

### MASS/CLASS TORT CASES

We are representing governmental entities and labor unions seeking to recover losses arising out of the Opioid Crisis, classes of student athletes suffering from the long-term effects of concussive and sub-concussive injuries, and individuals damaged by the "Camp Fire" in Northern California. Our attorneys were a part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second-hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative cases and settlements include:

- Filed first cases on behalf of labor unions seeking to recover losses arising out of the Opioid Crisis. *See, e.g. Philadelphia Federation of Teachers Health and Welfare Fund v. Purdue Pharma, L.P., et al., No. 2:17-cv-04746-TJS (E.D. Penn. Oct. 26, 2017).* Representing governmental entities in similar litigation. *E.g. City of Melrose Park v. Purdue Pharma, et al.*, 18-CH-06601 (Cir. Ct. Cook Cty., Ill.), 18-cv-

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

**Edelson PC**

05288 (N.D. Ill.).

- *In re: National Collegiate Athletic Association Single School/Single Sport Concussion Litig.*, No. 16-cv-8727, MDL No. 2492 (N.D. Ill.): Appointed co-lead counsel in MDL brought against the NCAA, its conferences and member institutions alleging personal injury claims on behalf of college football players resulting from repeated concussive and sub-concussive hits.

- Representing numerous victims of the Northern California "Camp Fire," allegedly caused by utility company Pacific Gas & Electric through proposed class action, *Burnett v. PG&E Corp.*, No. CGC18571849 (Cal. Super. Ct.), as well as in more than one hundred individual cases.

- *Mullen v. GLV, Inc., et al.*, No. 18-cv-1465 (N.D. Ill.): Filed first of its kind class action against nationally recognized volleyball training club and its co-owners, alleging fraud claims arising from defendants' alleged failure to disclose rape and sexual abuse of underage women committed by company principal. Appointed Class Counsel in securing adversarial certification of class of parents of youth players at the club.

- *Bouzerand v. United States*, No. 1:17-cv-01195-VJW (Ct. Fed. Claims): Filed putative class action on behalf of homeowners alleging the government has to fairly compensate the class under the Fifth Amendment's Takings Clause after the government flooded their homes by releasing reservoir waters during Hurricane Harvey.

- *Aaron v. Chicago Housing Authority*, No. 99 L 11738 (Cir. Ct. Cook Cty., Ill.): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

- *Merck/Vioxx Lawsuits*: Represented hundreds of individuals claiming medical problems including heart attacks and strokes after taking the prescription medication Vioxx. Cases resolved as part of Merck's global settlement.

- *Edelson PC v. Christopher Bandas, et al.*, No. 1:16-cv-11057 (N.D. Ill.): Filed groundbreaking lawsuit seeking to hold professional objectors and their law firms responsible for, among other things, alleged practice of objecting to class action settlements in order to extort payments for themselves, and the unauthorized practice of law. After several years of

FILED DATE: 7/16/2019 3:06 PM    2019CH03701

**Edelson PC**

FILED DATE: 7/16/2019 3:06 PM  2019CH03701

litigation and discovery, secured first of its kind permanent injunction against objector and his law firm, which, *inter alia*, barred them from practicing in Illinois or asserting objections to class action settlements in any jurisdiction absent meeting certain criteria.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## MORTGAGE & BANKING

EDELSON PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "[p]rompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, No. 10-cv-3647 (N.D. Ill.): Appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-04152-CW (N.D. Cal.): Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over $1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litig.*, No. 09-cv-0350-MMC (N.D. Cal.): Lead counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): Obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

Edelson PC

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

## PRIVACY/DATA LOSS

### *Data Loss/Unauthorized Disclosure of Data*

We have litigated numerous class actions involving issues of first impression against Facebook, Uber, Apple, Netflix, Sony, Gannett, Redbox, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft, and others involving failures to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *City of Chicago and People of the State of Illinois, ex rel. Kimberly M. Foxx, State's Attorney of Cook County, Illinois v. Uber Technologies, Inc.*, No. 17-CH-15594 (Cir. Ct. Cook Cty, Ill.): Several Edelson attorneys appointed Special Assistant Corporation Counsel for the City of Chicago and Special Assistant State's Attorney for Cook County, Illinois in their consolidated data breach/failure to notify lawsuit against Uber Technologies.

- *People of the State of Illinois, ex rel. Kimberly M. Foxx, State's Attorney of Cook County, Ill. v. Facebook, Inc., et al.*, No. 18-cv-02667 (N.D. Ill.): Several Edelson attorneys appointed Special Assistant State's Attorneys in enforcement action against Facebook and Cambridge Analytica-affiliated companies for the breach of personal information to Cambridge Analytica and others.

- *In re Facebook Biometric Privacy Litigation*, No. 3:15-cv-03747 (N.D. Cal.): Filed the first of its kind class action against Facebook under the Illinois Biometric Information Privacy Act, alleging Facebook collected facial recognition data from its users without authorization. Appointed Class Counsel in securing adversarial certification of class of Illinois Facebook users.

- *Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing Internet analytics company of improper data collection practices. The court finally approved a $14 million settlement.

- *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred. Case also resulted in the first class action settlement in the country to provide data breach victims with monetary payments irrespective of identity theft.

- *In re Netflix Privacy Litig.*, No. 11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy

**Edelson PC**

FILED DATE: 7/16/2019 3:06 PM    2019CH03701

Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar *cy pres* settlement that has been finally approved.

- *N.P. v. Standard Innovation (US), Corp.*, No. 1:16-cv-08655 (N.D. Ill.): Brought and resolved first ever IoT privacy class action against adult-toy manufacturer accused on collected and recording highly intimate and sensitive personal use data. Case resolved for $3.75m (Canadian).

- *Sekura v. L.A. Tan Enterprises, Inc.*, No. 15 CH 16694 (Cir. Ct. Cook County, Ill.): Reached the first ever settlement under Illinois's biometric privacy statute. Settlement provided the class with $1.5m and released only the franchisor and related companies, thus allowing additional ongoing suits against franchisees to continue.

- *Halaburda v. Bauer Publishing Co.*, No. 12-cv-12831 (E.D. Mich.); *Grenke v. Hearst Communications, Inc.*, No. 12-cv-14221 (E.D. Mich.); *Fox v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich.): Consolidated actions brought under Michigan's Preservation of Personal Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer. In January and July of 2015, final approval was granted to a settlement reached in the *Bauer Publishing* matter and an adversarial class was certified in the *Time* case, respectively.

- *Standiford v. Palm*, No. 09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litig.*, No. 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litig.*, No. 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litig.*, No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, No. 08 CH 00448 (Cir. Ct. Cook Cty., Ill.): Lead counsel in injunctive settlement alleging national retailer allowed

**Edelson PC**

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

purchase information to be publicly available through the Internet.

*Telephone Consumer Protection Act*

EDELSON PC has been at the forefront of TCPA litigation for nearly a decade, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), and the largest (up to $76 million in total monetary relief) TCPA settlement to date. *See Birchmeier v. Caribbean Cruise Line, Inc., et al.*, No. 12-cv-4069 (N.D. Ill.). The firm has secured more than $200 million for consumers in cases across the United States. Representative settlements and ongoing cases include:

- *Birchmeier v. Caribbean Cruise Line, Inc., et al.*, No. 12-cv-4069 (N.D. Ill.): Co-lead counsel in class action alleging that defendant violated federal law by making unsolicited telemarketing calls. Obtained adversarial class certification of nationwide class of approximately 1 million consumers. On the eve of trial, case resulted in the largest TCPA settlement to date, totaling up to $76 million in monetary relief.

- *Wakefield v. Visalus*, No. 3:15-cv-01857 (D. Ore. Apr. 12, 2019): Co-lead counsel in class action alleging that defendant violated federal law by making unsolicited telemarketing calls. Obtained jury verdict equating to more than $925 million in damages to the class.

- *Kolinek v. Walgreen Co.*, No. 13-cv-4806 (N.D. Ill.): Lead counsel in class action alleging that defendant violated federal law by making unsolicited prescription reminder calls. Won reconsideration of dismissal based upon whether provision of telephone number constituted consent to call. Case settled for $11 million.

- *Hopwood v. Nuance Communications, Inc., et al.*, No. 13-cv-2132 (N.D. Cal.): Lead counsel in class action alleging that defendants violated federal law by making unsolicited marketing calls to consumers nationwide. $9.245 million settlement provided class members option to claim unprecedented relief based upon total number of calls they received. Settlement resulted in some class members receiving in excess of $10,000 each.

- *Rojas v CEC*, No. 10-cv-05260 (N.D. Ill.): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litigation*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal.): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.*, No. 11-cv-5935 PSG (C.D. Cal.): Lead counsel in $10 million text spam settlement.

FILED DATE: 7/16/2019 3:06 PM    2019CH03701

**Edelson PC**

- *Kramer v. B2Mobile*, No. 10-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Wright, et al. v. Nationstar Mortgage, LLC*, No. 14-cv-10457 (N.D. Ill.): Co-lead counsel in $12.1 million debt collection call settlement.

- *Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D. Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.): Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.): Lead counsel in $6 million text spam settlement.

- *Woodman v. ADP Dealer Services*, No. 2013 CH 10169 (Cir. Ct. Cook Cty., Ill.): Lead counsel in $7.5 million text spam settlement.

- *Lockett v. Mogreet, Inc.*, No 2013 CH 21352 (Cir. Ct. Cook Cty., Ill.): Lead counsel in $16 million text spam settlement.

- *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): Co-lead counsel in in $10 million text spam settlement.

- *Weinstein v. Airit2me, Inc.*, No. 06 C 0484 (N.D. Ill): Co-lead counsel in $7 million text spam settlement.

CONSUMER TECHNOLOGY

*Fraudulent Software*

EDELSON PC has represented plaintiffs in consumer fraud cases in courts nationwide against companies peddling fraudulent software. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cir. Ct. Cook Cty., Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp.*, No. 12-cv-00154-CRB (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and

**Edelson PC**

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

marketed its computer repair software. Case settled for $11 million.

- *LaGarde v. Support.com, Inc.*, No. 12-cv-00609-JSC (N.D. Cal.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC*, No. 11-CV-294-PBT (E.D. Pa.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb v. Cleverbridge, Inc.*, No. 1:11-cv-04141 (N.D. Ill.): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

### Video Games

EDELSON PC has litigated video-game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc.

## PRODUCTS LIABILITY CLASS ACTIONS

We have been appointed lead counsel in state and federal products liability class settlements, including a $30 million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook Cty., Ill.): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-cv-2867 (D.N.J.): Part of mediation team in class action involving largest pet food recall in United States history. Settlement provided $24 million common fund and $8 million in charge backs.

## INSURANCE CLASS ACTIONS

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555 (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in late December 2000, resulting in a multi-million dollar cash award to the

**Edelson PC**

FILED DATE: 7/16/2019 3:06 PM    2019CH03701

class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

## GENERAL CONSUMER PROTECTION CLASS ACTIONS

We have successfully prosecuted countless class actions against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, EDELSON PC have litigated consumer fraud cases in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### *Mobile Content*

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton Cty. Super. Ct., Ga.): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation. "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cty., Ill.): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges. Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12 million.

- *Parone v. m-Qube, Inc.*, No. 08 CH 15834 (Cir. Ct. Cook Cty., Ill.): Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges. Case settled for $12.254 million.

- *Williams v. Motricity, Inc.*, No. 09 CH 19089 (Cir. Ct. Cook Cty., Ill.): Lead counsel in class action settlement involving 24 cases alleging the

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

**Edelson PC**

imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.): Lead counsel in class action settlement alleging unauthorized mobile content charges. Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (L.A. Super. Ct., Cal.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.*, No. 07-cv-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

### *Deceptive Marketing*

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill.): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 10-cv-02964 (N.D. Ill.): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No. 11-cv-01785 (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763 (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook Cty., Ill.): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook Cty., Ill.): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill.): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full

**Edelson PC**

debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill.): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook Cty., Ill.): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook Cty., Ill.): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com*, No. 01-600703 (N.Y. Sup. Ct., N.Y. Cty.): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and CEO of EDELSON PC. He is considered one of the nation's leading class and mass action lawyers, having secured over $1 billion in settlements and verdicts for his clients.

Law360 described Jay as a "Titan of the Plaintiff's Bar." The American Bar Association recognized Jay Edelson as one of the "most creative minds in the legal industry." Law360 noted that he has "taken on some of the biggest companies and law firms in the world and has had success where others have not." Another publication explained that "when it comes to legal strategy and execution, Jay is simply one of the best in the country." Professor Todd Henderson, the Michael J. Marks Professor of Law at the University of Chicago Law School, opined that when thinking about "who's the most innovative lawyer in the US ... [Jay is] at or near the top of my list."

FILED DATE: 7/16/2019 3:06 PM 2019CH03701

**Edelson PC**

Jay has received special recognition for his success in taking on Silicon Valley. The national press has dubbed Jay and his firm the "most feared" litigators in Silicon Valley and, according to the New York Times, tech's "babyfaced ... boogeyman." Most recently, Chicago Lawyer Magazine dubbed Jay "Public Enemy No. 1 in Silicon Valley." In the emerging area of privacy law, the international press has called Jay one of the world's "profiliertesten (most prominent)" privacy class action attorneys. The National Law Journal has similarly recognized Jay as a "Cybersecurity Trailblazer"—one of only two plaintiff's attorneys to win this recognition.

Jay has taught class actions and negotiations at Chicago-Kent College of Law and privacy litigation at UC Berkeley School of Law. He has written a blog for Thomson Reuters, called Pardon the Disruption, where he focused on ideas necessary to reform and reinvent the legal industry and has contributed opinion pieces to TechCrunch, Quartz, the Chicago Tribune, law360, and others. He also serves on Law360's Privacy & Consumer Protection editorial advisory board. In recognition of the fact that his firm runs like a start-up that "just happens to be a law firm," Jay was recently named to "Chicago's Top Ten Startup Founders over 40" by Tech.co.

Jay currently serves on Chicago's 47th Ward Democratic Organization Judicial Recommendation Committee, which is responsible for interviewing, vetting and slating Cook County Judicial Candidates for election.

**RYAN D. ANDREWS** is a Partner at EDELSON PC. He presently leads the firm's complex case resolution and appellate practice group, which oversees the firm's class settlements, class notice programs, and briefing on issues of first impression.

Ryan has been appointed class counsel in numerous federal and state class actions nationwide that have resulted in over $100 million in refunds to consumers, including: *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.): *Ellison v Steve Madden, Ltd.*, No. cv 11-5935 PSG (C.D. Cal.); *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D. Cal.); *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill.): *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cir. Ct. Cook Cty., Ill.); and *Lofton v. Bank of America Corp.*, No. 07-5892 (N.D. Cal.).

Representative reported decisions include: *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018); *Warciak v. Subway Restaurants*, Inc., 880 F.3d 870 (7th Cir. 2018), cert. denied, 138 S. Ct. 2692 (2018); *Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018), cert. denied, ___ S. Ct. ___ (2019); *Klaudia Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175; *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F. 3d 482 (1st Cir. 2016); *Resnick v. AvMed, Inc.*, 693 F. 3d 1317 (11th Cir. 2012); and *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009).

Ryan graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications. Ryan received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Ryan has served as an Adjunct Professor of Law at Chicago-Kent, teaching a third-year seminar on class actions. While in law school, Ryan was a Notes & Comments Editor for The Chicago-Kent Law Review, earned CALI awards for the highest grade in five classes, and was a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall

**Edelson PC**

in the United State District Court for the Northern District of Illinois.

Ryan is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is the Managing Partner of EDELSON PC and its director of nationwide litigation. He started his career as a trial lawyer, serving as a prosecutor for the City of Chicago where he took part in dozens of trials. Rafey went on to join a litigation boutique in Chicago where he continued his trial work, before eventually starting with EDELSON in 2008. He is regarded by his peers as a highly skilled litigator, and has been appointed lead class counsel in more than two dozen class actions in state and federal courts across the country. His work has led to groundbreaking results in trial courts nationwide, and he has secured hundreds of millions of dollars on behalf of his clients.

Some of Rafey's more notable achievements include nationwide settlements involving the telecom industry, including companies such as AT&T, Google, Sony, Motricity, and OpenMarket valued at more than $100 million.

Rafey has also been appointed to the Executive Committee in the NCAA concussion cases, considered to be "one of the largest actions pending in the country, a multi district litigation … that currently included about 100 personal injury class actions filed by college football players[.]" He also represents labor unions and governmental entities in lawsuits against the drug manufacturers and distributors over the on-going opioid crisis, and serves as trial court counsel in *Robins v. Spokeo, Inc.*, 2:10-cv-05306-ODW-AGR, which has been called the most significant consumer privacy case in recent years.

Rafey's class action practice also includes his work in the privacy sphere, and he has reached groundbreaking settlements with companies like Netflix, LinkedIn, Walgreens, Nationstar and comScore. Rafey also served as lead counsel in the case of *Dunstan, et al. v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.), where he led the effort to secure class certification of what is believed to be the largest adversarial class to be certified in a privacy case in the history of U.S. jurisprudence.

Rafey's work in general complex commercial litigation includes representing clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successfully litigated numerous multi-million dollar cases, including several "bet the company" cases.

Rafey is a frequent speaker on class and mass action issues, and has served as a guest lecturer on several occasions at UC Berkeley Boalt School of Law. Rafey also serves on the Executive Committee of the Antitrust, Unfair Competition and Privacy Section of the State Bar of California where he has been appointed Vice Chair of Privacy, as well as the Executive Committee of the Privacy and Cybersecurity Section of the Bar Association of San Francisco.

**Edelson PC**

Rafey received his J.D. from the DePaul University College of Law in 2005. A native of Colorado, Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at EDELSON PC where he focuses his practice on emerging consumer technology and privacy issues.

Chris is the Partner-in-Charge of the Firm's Case Development & Investigations Group. His team investigates complex technological fraud and privacy related violations, including fraudulent software and hardware, undisclosed tracking of online consumer activity, illegal data retention, and large-scale commercial data breaches. In the privacy space, Chris plays an active role in applying under federal and state statutes to new technologies. He has been appointed class counsel in multiple class actions, including one of the largest settlements under the Telephone Consumer Protection Act, ground-breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. Chris has been asked to appear on television, radio, and in national publications to discuss consumer protection and privacy issues, as well as asked to lecture at his alma mater on class action practice.

Chris received his law degree from The John Marshall Law School, his M.A. in Legal Sociology from the International Institute for the Sociology of Law (located in Onati, Spain), and his B.A. in Legal Sociology from the University of California, Santa Barbara. Chris also serves on the Illinois Bar Foundation, Board of Directors.

**DAVID I. MINDELL** is a Partner at Edelson PC and Co-Chair of the firm's Public Client and Government Affairs group, where he represents state Attorneys General, counties, and cities in high-stakes litigation and investigations involving consumer protection, information security and privacy violations, the opioid crisis, and other areas of enforcement that protect government interests and vulnerable communities. David also counsels governments and state and federal lawmakers on a range of policy issues involving consumer protection, privacy, technology, and data security.

In addition to his Public Client and Government Affairs practice, David helps direct the firm's Investigations team, including "a group of internal lab of computer forensic engineers and tech-savvy lawyers [who study] fraudulent software and hardware, undisclosed tracking of online consumer activity and illegal data retention." Cybersecurity & Privacy Practice Group of the Year, *Law360* (Jan. 2019). His team's research has led to lawsuits involving the fraudulent development, marketing and sale of computer software, unlawful tracking of consumers through mobile-devices and computers, unlawful collection, storage, and dissemination of consumer data, mobile-device privacy violations, large-scale data breaches, unlawful collection and use of biometric information, unlawful collection and use of genetic information, and the Bitcoin industry.

David also helps oversee the firm's class and mass action investigations, including claims against helmet manufacturers and the National Collegiate Athletic Association by thousands of former high school, college, and professional football players suffering from the long-term effects of concussive and sub-concussive hits; claims on behalf of hundreds of families and business who lost their homes, businesses, and even loved ones in the "Camp Fire" that

FILED DATE: 7/16/2019 3:06 PM 2019CH03701

**Edelson PC**

ravaged thousands of acres of Northern California in November 2018; and on behalf of survivors of sexual abuse.

Prior to joining EDELSON PC, David co-founded several tech, real estate, and hospitality related ventures, including a tech startup that was acquired by a well-known international corporation within its first three years. David has advised tech companies on a variety of legal and strategic business-related issues, including how to handle and protect consumer data. He has also consulted with startups on the formation of business plans, product development, and launch.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has spoken to a wide range of audiences about his investigations and practice.

**ROGER PERLSTADT** is a Partner at EDELSON PC, where he concentrates on appellate and complex litigation advocacy. He has briefed and argued appeals and motions in both federal and state appellate courts.

Prior to joining EDELSON PC, Roger was a law clerk to United States District Court Judge Elaine E. Bucklo, an associate at a litigation boutique in Chicago, and a Visiting Assistant Professor at the University of Florida Levin College of Law. He has published articles on the Federal Arbitration Act in various law reviews.

Roger has been named a Rising Star by *Illinois Super Lawyer Magazine* four times since 2010.

Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

**EVE-LYNN RAPP** is a Partner at EDELSON PC, where she focuses her practice on a wide range of consumer protection class and governmental action litigation. Eve is the firm's hiring partner and sits on the Executive Committee.

Eve devotes a considerable amount of her practice to consumer technology cases, with a particular emphasis on cell phone telephony and Telephone Consumer Protection Act ("TCPA") cases, consumer fraud cases, and privacy lawsuits. She also regularly handles plaintiff's side employment class actions, including federal Fair Labor Stands Act cases and their state law counterparts.

Eve also has special expertise in products liability and pharmaceutical litigation. She is representing over a dozen municipalities in lawsuits against the pharmaceutical companies relating to the opioid crisis. Eve's victory in the United States Supreme Court in a products liability case involving the All Writs Act paved the way for hundreds of thousands of people to litigate their claims for deceptive marketing.

**Edelson PC**

Eve has helped lead approximately 40 TCPA class actions, including Birchmeier v. Caribbean Cruise Line, Inc. et al., No. 12-cv-04069 (N.D. Ill.), where, after obtaining class certification and partial summary judgment, she secured a $76 million settlement — the largest ever for a TCPA case. The Parties reached a deal in that case four days before trial.

Eve also was lead counsel in one of the few "Do Not Call" TCPA cases to settle, resulting in a multi-million dollar settlement and affording class members with as much as $5,000 individually. She has also prosecuted TCPA cases on an individual basis in arbitrations, winning six-figure settlements. Overall, Eve has secured over well over one hundred million dollars of relief to consumers in TCPA cases.

Eve has led over a dozen consumer fraud cases, against a variety of industries, including e-cigarette sellers, on-line gaming companies, electronic and sport products distributors. Most recently, she lead and resolved a case against a well-known national fitness facility for misrepresenting its "lifetime memberships," which will result in millions of dollars of relief.

Eve is also responsible for leading one of the first "Internet of Things" cases under the Federal Wire Tap Act against a company collecting highly sensitive personal information from consumers, in which she obtained a $ 5 million (CAD) settlement that afforded individual class members over one hundred dollars in relief.

Eve has successfully lead a number of employment class actions involving claims of overtime, recently reaching a settlement against a cellular tower company netting class members with between $10,000 and $20,000 per person.

In 2015 and 2016, Eve was selected as an Illinois Emerging Lawyer by Leading Lawyers.

Eve received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, she was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve also clerked for both civil and criminal judges (The Honorable Judge Yvonne Lewis and Plummer Lott) in the Supreme Court of New York. Eve graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BENJAMIN H. RICHMAN** is the Managing Partner of EDELSON PC's Chicago office. He handles plaintiff's-side class and mass actions, helping employees in the workplace, consumers who were sold deceptive products or had their privacy rights violated, student athletes suffering from the effect of concussions, and labor unions and governmental bodies seeking to recover losses arising out of the opioid crisis. He also routinely represents technology and brick and mortar companies in a wide variety of commercial litigation and other matters. Overall, Ben has been appointed by the federal and state courts to be Class or Lead Counsel in dozens of cases. His suits have recovered hundreds of millions of dollars for his clients.

On the plaintiff's side, Ben is currently part of the team leading the *National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation – Single Sport/Single School (Football)* multi-district litigation, bringing personal injury lawsuits against the NCAA, athletic conferences, and its member institutions over concussion-related injuries. He is also

**Edelson PC**

representing labor unions and governmental entities in lawsuits against the drug manufacturers and distributors over the opioid crisis. And he is currently pursuing claims of Houston area homeowners against United States seeking recovery for alleged constitutional takings of their properties in the wake of Hurricane Harvey. In addition, Ben is lead counsel in numerous class actions involving alleged violations of class members' common law and statutory rights (e.g., violations of Alaska's Genetic Privacy Act, Illinois' Biometric Information Privacy Act, the federal Telephone Consumer Protection Act, and others).

Some of Ben's notable achievements include acting as lead counsel and securing settlements collectively worth $50 million dollars in over a half-dozen nationwide class actions against software companies involving claims of fraudulent marketing and unfair business practices. He was part of the team that litigated over a half-dozen nationwide class actions involving claims of unauthorized charges on cellular telephones, which ultimately led to settlements collectively worth hundreds of millions of dollars. And he has been lead counsel in numerous multi-million dollar privacy settlements, including several that resulted in individual payments to class members reaching into the tens of thousands of dollars and another that—in addition to securing millions of dollars in monetary relief—also led to a waiver by the defendants of their primary defenses to claims that were not otherwise being released.

Ben's work in complex commercial matters includes successfully defending multiple actions against the largest medical marijuana producer in the State of Illinois related to the issuance of its cultivation licenses, and successfully defending one of the largest mortgage lenders in the country on claims of unjust enrichment, securing dismissals or settlements that ultimately amounted to a fraction of typical defense costs in such actions. Ben has also represented startups in various matters, including licensing, intellectual property, and merger and acquisition.

Each year since 2015, Ben has been recognized by Super Lawyers as a *Rising Star* and Leading Lawyers as an *Emerging Lawyer* in both class action and mass tort litigation.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois. Ben has also routinely guest-lectured at various law schools on issues related to class actions, complex litigation and negotiation.

**ARI J. SCHARG** is a Partner at EDELSON PC and Chair of the firm's Government Affairs Group, where he counsels governmental entities and officials on a range of policy and strategic issues involving consumer protection, privacy, technology, and data security. Known as an aggressive advocate, Ari also leverages his experience litigating hundreds of complex class and mass action lawsuits to help local governments prosecute large-scale cost recovery actions, including those against the pharmaceutical companies responsible for the opioid crisis.

Recognized as one of the leading experts on privacy and emerging technologies, Ari serves on the inaugural Executive Oversight Council for the Array of Things Project where he advises on privacy and data security matters, chairs the Illinois State Bar Association's Privacy and Information Security Section, and was recently appointed by the Illinois Senate President to

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

**Edelson PC**

Co-Chair the Illinois Blockchain and Distributed Ledgers Task Force alongside Representative
Michael Zalewski (21st Dist.). Ari was selected as an Illinois Rising Star by Super Lawyers
(2013 – 2018), and received the Michigan State Bar Foundation's Access to Justice
Award (2017) for "significantly advancing access to justice for the poor" through his consumer
cases.

Ari regularly speaks about data security and technology at law schools and conferences around
the country, and has testified before the Michigan House of Representatives Committee on
Commerce and Trade about the privacy implications raised by the surging data mining industry
and the Nevada Assembly Commerce and Labor Committee about the privacy implications
raised by the surreptitious collection and use of geolocation data.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and
graduated *magna cum laude* from The John Marshall Law School where he served as a Staff
Editor for THE JOHN MARSHALL LAW REVIEW and competed nationally in trial competitions.
During law school, he also served as a judicial extern to the Honorable Bruce W. Black of the
U.S. Bankruptcy Court for the Northern District of Illinois.

**ALFRED K. MURRAY II** is Senior Litigation Counsel at EDELSON PC.

Alfred's prior experience includes handling a myriad of cases in his solo practice after spending
several years at a well-respected civil litigation firm. Alfred's prior experience includes practice
areas of civil right & municipal liability defense, commercial litigation, real estate litigation,
and professional negligence. Known as a skilled yet reasonable litigator, Alfred has conducted
bench trials, jury trials, and evidentiary hearings throughout the Northern District of Illinois,
the Circuit Court of Cook County, and the surrounding suburbs. His experience in commercial
litigation and real estate litigation led to substantive experience with judgment enforcement
proceedings, where he eventually co-authored the *Equitable Remedies* chapter in the 2011
Supplement and 2013 Update to the *Illinois Institute of Continuing Legal Education, Creditors'
Rights in Illinois*. Alfred has also lectured on supplemental proceedings, complex asset
recovery, and post-judgment causes of action for the Illinois Creditors Bar Association, Illinois
State Bar Association, Illinois Institute of Continuing Legal Education, and Chicago Bar
Association. Alfred was selected as an Illinois Rising Star by Super Lawyers (2014, 2015,
2016, 2017, 2018).

Alfred received his B.S. in Political Science from the University of Illinois at Urbana-
Champaign, and received his J.D. from The John Marshall Law School. During law school,
Alfred served as the Chief Justice on the Moot Court Honors Board and participated in a
number of national moot court competitions. While a law student, he also served as a judicial
extern to The Honorable Abishi C. Cunningham of the Circuit Court of Cook County and
served as a law clerk in the criminal enforcement division of the Office of the Illinois Attorney
General, Lisa Madigan.

**LILY HOUGH** is an Associate at EDELSON PC where her practice focuses on consumer
privacy-related class actions.

FILED DATE: 7/16/2019 3:06 PM    2019CH03701

**Edelson PC**

Lily received her J.D., *cum laude*, from Georgetown University Law Center. In law school, Lily served as a Law Fellow for Georgetown's first year Legal Research and Writing Program and as the Executive Editor of the Georgetown Immigration Law Journal. She participated in D.C. Law Students In Court, one of the oldest clinical programs in the District of Columbia, where she represented tenants in Landlord & Tenant Court and plaintiff consumers in civil matters in D.C. Superior Court. She also worked as an intern at the U.S. Department of State in the Office of the Legal Adviser, International Claims and Investment Disputes (L/CID).

Prior to law school, Lily attended the University of Notre Dame, where she graduated *magna cum laude* with departmental honors and earned her B.A. in Political Science and was awarded a James F. Andrews Scholarship for commitment to social concerns. She is also a member of the Pi Sigma Alpha and Phi Beta Kappa honor societies.

**SYDNEY JANZEN** is an Associate at EDELSON PC where her practice focuses on consumer privacy-related class actions.

Sydney received her J.D., *cum laude*, from The John Marshall Law School. While in law school, she was Executive Justice of the Moot Court Honor Society, a staff editor of The John Marshall Law Review, and a teaching assistant for Contracts and Legal Writing and Civil Procedure. Sydney represented John Marshall at the Pepperdine National Entertainment Law Competition where she was a quarter-finalist and won Best Petitioner's Brief. Sydney was a 2016 Member of the National Order of Scribes.

Prior to attending law school, Sydney attended DePaul University where she graduated, *summa cum laude*, with a B.A. in English and French.

**J. AARON LAWSON** is an Associate at EDELSON PC where his practice focuses on appeals and complex motion practice.

Prior to joining EDELSON PC, Aaron served for two years as a Staff Attorney for the United States Court of Appeals for the Seventh Circuit, handling appeals involving a wide variety of subject matter, including consumer-protection law, employment law, criminal law, and federal habeas corpus. While at the University of Michigan Law School, Aaron served as the Managing Editor for the Michigan Journal of Race & Law, and participated in the Federal Appellate Clinic. In the clinic, Aaron briefed a direct criminal appeal to the United States Court of Appeals for the Sixth Circuit, and successfully convinced the court to vacate his client's sentence.

**TODD LOGAN** is an Associate at EDELSON PC. He focuses his practice on class and mass actions and large-scale governmental suits. Todd represents labor unions and governments seeking to recover losses arising out of the opioid crisis, Houston area homeowners in litigation against the United States seeking recovery for alleged constitutional takings of their properties in the wake of Hurricane Harvey, student athletes suffering from the harmful effects of concussions, employees and consumers who have had their privacy rights violated, and consumers who were defrauded.

Todd has litigated dozens of lawsuits in federal and state courts. He led Edelson's efforts in litigating and ultimately obtaining the first ever class action settlement under Illinois' Biometric

FILED DATE: 7/16/2019 3:06 PM 2019CH03701

**Edelson PC**

Information Privacy Act. Overall, his cases have resulted in settlements that have paid out tens of millions of dollars.

Todd graduated from Pomona College and received his J.D. *cum laude* from Harvard Law School.

From 2016–17, Todd clerked for the Honorable James Donato in the Northern District of California.

**MICHAEL OVCA** is an Associate at EDELSON PC where he focuses on consumer, privacy-related and technology-related class actions.

Michael received his J.D. *cum laude* from Northwestern University, where he was an associate editor of the Journal of Criminal Law and Criminology, and a member of several award winning trial and moot court teams.

Prior to law school, Michael graduated *summa cum laude* with a degree in political science from the University of Illinois.

**ALBERT J. PLAWINSKI** is an Associate at EDELSON PC where he focuses on investigating privacy violations by consumer products and IoT devices.

Albert received his J.D. from the Chicago-Kent College of Law. While in law school, Albert served as the Web Editor of the Chicago-Kent Journal of Intellectual Property. Albert was also a research assistant for Professor Hank Perritt for whom he researched various legal issues relating to the emerging consumer drone market—e.g., data collection by drone manufacturers and federal preemption obstacles for states and municipalities seeking to legislate the use of drones. Additionally Albert earned a CALI award for receiving the highest course grade, in Litigation Technology.

Prior to law school, Albert graduated with Highest Distinctions with a degree in Political Science from the University of Illinois at Urbana-Champaign.

**DAN SCHNEIDER** is an Associate at EDELSON PC where he focuses on consumer protection and privacy-related class actions.

Dan received his J.D. *summa cum laude* from the University of Wisconsin, where he served as an Articles Editor for the Wisconsin Law Review.

Prior to law school, Dan graduated *magna cum laude* with a B.A. in Visual and Media Arts from Emerson College. He worked as a freelance journalist for many years covering economics, activism, and music in the Boston area. His work has appeared in *The Atlantic*, *The Boston Globe*, and *In These Times*, among other outlets.

**BEN THOMASSEN** is an Associate at EDELSON PC where he focuses on consumer litigation, with an emphasis on privacy and data breach class actions.

Ben's work at the firm has achieved significant results for classes of consumers. He has been

**Edelson PC**

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

appointed as class counsel in several high profile cases, including, for example, *Harris v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.) (in case against data analytics company, estimated to be the largest privacy class action certified on adversarial basis and resulted in $14MM settlement). Ben has also played critical and leading roles in developing, briefing, and arguing novel legal theories on behalf of his clients, including by delivering the winning oral argument to the Eleventh Circuit in the seminal case of *Resnick, et al. v. AvMed, Inc.*, No. 10-cv-24513 (S.D. Fla.) (appointed class counsel in industry-changing data breach case, which obtained a landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred) and recently obtaining certification of a class of magazine subscribers in *Coulter-Owens v. Time, Inc.*, No. 12-cv-14390 (E.D. Mich.) (achieved adversarial certification in privacy case brought by class of magazine subscribers against magazine publisher under Michigan's Preservation of Personal Privacy Act). His cases have resulted in millions of dollars to consumers.

Ben graduated *magna cum laude* from Chicago-Kent College of Law, where he also earned a certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. He also served as Vice President of Chicago-Kent's Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts. In 2017, Ben was selected as an Illinois Emerging Lawyer by Leading Lawyers.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received a Master of Arts degree from the University of Chicago and his Bachelor of Arts degree, *summa cum laude*, from St. Mary's College of Maryland.

**ALEXANDER G. TIEVSKY** is an Associate at EDELSON PC, where he concentrates on complex motion practice and appeals in consumer class action litigation.

He received his J.D. from the Northwestern University School of Law, where he graduated from the two-year accelerated J.D. program. While in law school, Alex was Media Editor of the Northwestern University Law Review. He also worked as a member of the Bluhm Legal Clinic's Center on Wrongful Convictions. Alex maintains a relationship with the Center and focuses his public service work on seeking to overturn unjust criminal convictions in Cook County.

Alex's past experiences include developing internal tools for an enterprise software company and working as a full-time cheesemonger. He received his A.B. in linguistics with general honors from the College of the University of Chicago.

**SCHUYLER UFKES** is an Associate at EDELSON PC where he focuses on consumer and privacy-related class actions.

Schuyler received his J.D. *magna cum laude*, and Order of the Coif, from the Chicago-Kent

Chicago I San Francisco

**Edelson PC**

College of Law. While in law school, Schuyler served as an Executive Articles Editor for the Chicago-Kent Law Review and was a member of the Moot Court Honor Society. Schuyler earned five CALI awards for receiving the highest grade in Legal Writing II, Legal Writing III, Pretrial Litigation, Supreme Court Review, and Professional Responsibility.

Prior to law school, Schuyler graduated with High Honors from the University of Illinois Urbana-Champaign earning a degree in Consumer Economics and Finance.

**J. ELI WADE-SCOTT** is an Associate at Edelson PC where his practice focuses on consumer, privacy-related, and tech-related class actions.

Before joining Edelson, Eli was a Skadden Fellow at LAF, Cook County's federally-funded legal aid provider. There, Eli represented dozens of low-income tenants in affirmative litigation against their landlords to remedy dangerous housing conditions, such as pest infestations, absence of heat and hot water, and sewage back-ups. Eli secured numerous temporary restraining orders requiring landlords to perform necessary repairs, and obtained tens of thousands of dollars in damages for his clients.

Eli graduated *summa cum laude* from Cornell College and received his J.D. *magna cum laude* from Harvard Law School. During law school, he was an Executive Editor on the Harvard Law and Policy Review.

From 2016 to 2017, Eli served as a law clerk to the Honorable Judge Rebecca Pallmeyer of the Northern District of Illinois.

**JACOB WRIGHT** is an Associate at EDELSON PC where his practice focuses on consumer and privacy-related class actions.

Jacob graduated with honors from the University of Texas at Austin with a degree in Government and Middle Eastern Studies. He received his J.D. *cum laude* from American University College of Law.

Jacob is a Member of the Equality Illinois Political Action Committee as well as a Next Generation Board Member of La Casa Norte.

**SHAWN DAVIS** is the Director of Digital Forensics at EDELSON PC, where he leads a technical team in investigating claims involving privacy violations and tech-related abuse. His team's investigations have included claims arising out of the fraudulent development, marketing, and sale of computer software, unlawful tracking of consumers through digital devices, unlawful collection, storage, and dissemination of consumer data, large-scale data breaches, receipt of unsolicited communications, and other deceptive marketing practices.

Prior to joining EDELSON PC, Shawn worked for Motorola Solutions in the Security and Federal Operations Centers as an Information Protection Specialist. Shawn's responsibilities included network and computer forensic analysis, malware analysis, threat mitigation, and incident handling for various commercial and government entities.

Shawn is an Adjunct Industry Associate Professor for the School of Applied Technology at the

**Edelson PC**

Illinois Institute of Technology (IIT) where he has been teaching since December of 2013. Additionally, Shawn is a faculty member of the IIT Center for Cyber Security and Forensics Education which is a collaborative space between business, government, academia, and security professionals. Shawn's contributions aided in IIT's designation as a National Center of Academic Excellence in Information Assurance by the National Security Agency.

Shawn graduated with high honors from the Illinois Institute of Technology with a Masters of Information Technology Management with a specialization in Computer and Network Security. During graduate school, Shawn was inducted into Gamma Nu Eta, the National Information Technology Honor Society.

Return Date: No return date scheduled
Hearing Date: 7/23/2019 9:30 AM - 9:30 AM
Courtroom Number:
Location:

FILED
7/16/2019 3:06 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03701

5789281

FILED DATE: 7/16/2019 3:06 PM    2019CH03701

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

KANDICE NEALS, individually and on behalf of all others similarly situated,

        *Plaintiff,*

v.

PAR TECHNOLOGY CORP., a Delaware corporation,

        *Defendant.*

Case No.: 2019 CH 03701

## PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION

Plaintiff Kandice Neals, by and through her undersigned counsel, hereby respectfully moves the Court for an Order certifying this case as a class action pursuant to 735 ILCS 5/2-801. Plaintiff in this case alleges that Defendant PAR Technology Corp. ("PAR")—a developer of a cloud-based point of sale ("POS") system that requires individuals to scan their fingerprints— violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* Defendant provided Plaintiff's former employer, and the employers of numerous other restaurant employees throughout the State, with its biometric timekeeping system. Plaintiff and other Illinois-based employees were required to use Defendant's POS system to "clock" in and out of work using their fingerprints, which it collected on its own servers. Despite making Plaintiff and the Proposed Class's biometric data the backbone of its timekeeping system, Defendant entirely failed to comply with BIPA, the primary Illinois law regulating biometrics. Specifically, Defendant did not (1) disclose the full purposes of its biometric collection in writing to Plaintiff or the Proposed Class, 740 ILCS 14/15(b)(1); (2) obtain Plaintiff's or the Proposed Class's informed consent, 740 ILCS 14/15(b)(2); or (3) establish a written, publicly-available retention

1

FILED DATE: 7/16/2019 3:06 PM    2019CH03701

and destruction policy. 740 ILCS 14/15(a). Because Defendant's conduct as to Plaintiff and the Class was identical—posing the same classwide legal questions, and producing the same answers—certification is appropriate.

Plaintiff accordingly requests that the Court enter an Order: (1) certifying the proposed Class defined below, (2) appointing Plaintiff Kandice Neals as the class representative, (3) appointing her counsel, Edelson PC, as class counsel, and (4) authorizing court-facilitated notice of this class action to the proposed Class.[1] In the alternative, if the Court requires more factual information on the issues presented herein, Plaintiff requests that the Court enter and continue Plaintiff's Motion for Class Certification, allow discovery on classwide issues, and upon completion of discovery, allow Plaintiff to submit supplemental briefing on the Motion.

## I.    FACTUAL BACKGROUND

### A.    The Illinois Biometric Information Privacy Act.

In response to the bankruptcy of a company in possession of a large database of fingerprints, the Illinois legislature in 2008 unanimously passed BIPA. At its core, BIPA is an informed consent statute. It mandates that businesses wishing to collect, use, or disclose biometric data must put in place certain reasonable safeguards before doing so. Those

---

[1]    Plaintiff files this motion at the outset of litigation, in part, to prevent Defendant from attempting a so-called "pick off" to moot her representative claims (*i.e.*, attempting to tender to her her full relief sought in the complaint on her individual claims). *See Barber v. Am. Airlines, Inc.*, 241 Ill. 2d 450, 459 n.1 (2011) (noting that under Illinois law "a named plaintiff who files a motion for class certification *prior* to a Defendants' tender may avoid a mootness determination, at least until after the circuit court rules on the motion for class certification."). Rather than grappling with the realities of having violated many hundreds of individual's rights, the defense practice of "picking off" individual plaintiffs appears to be enjoying an unfortunate renaissance. Plaintiff accordingly seeks to avoid a dismissal of this case on those grounds by filing this motion. Plaintiff nevertheless contends that class certification is appropriate at this early stage of the litigation based on the facts known and alleged by Plaintiff, and discovery on classwide issues is unnecessary here for purposes of class certification.

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

safeguards require that, before collecting, using, or disclosing biometric data, a company must first:

> (1) inform[] the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) inform[] the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receive[] a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

BIPA also establishes standards for how companies must handle the retention and destruction of Illinois residents' biometric identifiers and biometric information. BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a). To enforce the statute, BIPA provides a civil private right of action and allows for the recovery of statutory damages in the amount of $1,000 per negligent violation—or $5,000 per willful violation—plus costs and reasonable attorneys' fees. *See* 740 ILCS 14/20.

**B.    Plaintiff's Allegations on Behalf of Herself and the Proposed Class.**

As detailed in her Class Action Complaint, Plaintiff alleges that Defendant provided her employer—Charley's Philly Steaks—its PAR POS fingerprint scanning system to regulate and monitor her working hours. (*See* Complaint ("Compl.") ¶¶ 21–22.) Defendant provided this system not only to Plaintiff's employer, but to numerous of its other customer-restaurants

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

throughout Illinois to regulate and monitor their Illinois employees' working hours as well, similarly using their fingerprints. (*Id.*) As a condition of employment, Plaintiff and every other employee of PAR's customers were required to scan their fingerprints to enroll in PAR's fingerprint database, and subsequently use their fingerprints in order to clock in and out of work. (*Id.* ¶¶ 21–22, 29–30.) While PAR helped its customers reap a benefit from the decrease in "buddy punching" (one employee clocking in, or out, for another)—and PAR reaped the benefit of selling and/or leasing more POS systems—Plaintiff alleges that PAR failed to comply with any one of BIPA's requirements before collecting hers and hundreds of other employees' fingerprints. (*Id.* ¶¶ 23–24, 29–32.) That is, PAR never secured a written release from any of its customers' employees permitting PAR to collect, store, use, and disseminate their biometric data, as required by BIPA. (*Id.* ¶¶ 41–43.) PAR similarly failed to inform its customers' employees of the purposes for which it collects their sensitive biometric data or to whom the data is disclosed. (*Id.*) Finally, PAR failed to provide its customers' employees with a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying their fingerprint data, as required by BIPA. (*Id.*)

As a result of Defendant's conduct, Plaintiff and all other similarly situated employees are left in the dark about how Defendant is using their unique, unchangeable biometric data and what might happen to that data—the precise scenario the Illinois legislature sought to prevent when it enacted the BIPA. (*Id.* ¶¶ 12–14.) Indeed, they have no way of knowing when—if ever—their biometric identifiers will be removed from Defendant's database(s) or what might happen to their biometric data if PAR merges with another company or, worse, crumbles into bankruptcy. (*Id.* ¶ 25–26.) And because PAR neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection of biometric data, they have no idea whether

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data to third parties. (*Id.* ¶ 23–24.)

### C.   The Proposed Class.

As a result of Defendant's uniform and repeated BIPA violations, Plaintiff Neals brought this putative class action lawsuit and now seeks certification of a class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by PAR Technology while residing in Illinois.

(*Id.* ¶ 35.) As demonstrated below, the proposed Class meets each of the prerequisites for certification under Section 2-801.

## II.   THE PROPOSED CLASS SATISFIES EACH OF THE PREREQUISITES FOR CERTIFICATION.

Certifying a class in Illinois requires the plaintiff to establish that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801; *see Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 447 (2006).

In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App (1st) 131465, ¶ 9 (citing *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (1st Dist. 2007)). Instead, for purposes of considering whether to grant certification, the Court "accepts the allegations of the complaint as true and should err in favor of maintaining class certification." *Id.*

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

Here, the proposed Class is sufficiently numerous, consisting of more than one hundred individual members. The claims of Plaintiff and the members of the proposed Class are based upon Defendant's uniform practice of (i) providing biometric timekeeping systems to its customers, (ii) collecting those customers' employees' biometric data, and (iii) failing to comply with BIPA's retention and consent provisions—creating entirely common issues on each Class member's BIPA claims. Plaintiff and her counsel are adequate representatives of the proposed Class, with no potential conflicts or interests adverse to the Class. And a class action is the most appropriate method to adjudicate the claims of the members of the proposed Class, given the relatively small individual damages involved, the uniformity of Defendant's conduct, and the unlikelihood of the members of the proposed Class pursuing individual actions. Accordingly, this Court should grant class certification.

A.      **The Proposed Class Consists of Hundreds of Members and Therefore Readily Satisfies the Numerosity Requirement.**

The first step in certifying a class is showing that "[t]he class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when joining "such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chi. Med. Sch.*, 69 Ill. 2d 320, 337 (1977)). "[P]laintiffs need not demonstrate a precise figure for the class size, because a good-faith, nonspeculative estimate will suffice." *Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008). Generally, "[t]he court is permitted to make common sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03-

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

cv-1995, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31, 2004) (internal quotation marks omitted);[2]
*see also* 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 7.20, 66 (4th ed.
2001). Illinois courts typically find numerosity when the class comprises 40 or more people.
*See Wood River Area Dev. Corp. v. Germania Fed. Sav. Loan Ass'n*, 198 Ill. App. 3d 445,
450 (5th Dist. 1990).

Here, Plaintiff alleges that PAR has collected the fingerprints of "at least hundreds" of
its customers' employees who fall within the proposed Class. (Compl. ¶ 36.) Where a plaintiff
alleges that the proposed class consists of more than a hundred members, it is clear that the
class is so numerous that joinder of all members is impracticable. *Cruz*, 383 Ill. App. 3d at 781
(finding numerosity met where "upwards of 100 individuals" were affected by the defendant
employer's policy); *see also Tassan v. United Dev. Co.*, 88 Ill. App. 3d 581, 594 (1st Dist.
1980) (finding more than 150 potential claimants would satisfy numerosity); *Kulins v. Malco, A
Microdot Co., Inc.*, 121 Ill. App. 3d 520, 530 (1st Dist. 1984) (finding even 35 class members
could satisfy numerosity).

Further, even aside from the sheer number of potential Class members, joinder would be
impracticable and class certification is warranted because the claims per person are small
relative to the resources necessary to prosecute this litigation. *See* 740 ILCS 14/20(1). As such,
absent a class action, few individuals could afford to bring an individual lawsuit over the
amounts at issue. *See Gordon*, 224 Ill. App. 3d at 204. Accordingly, the proposed Class easily
satisfies the numerosity requirement.[3]

---

[2]    Because 735 ILCS 5/2-801 was patterned after Rule 23 of the Federal Rules of Civil
Procedure, "federal decisions interpreting Rule 23 are persuasive authority with regard to
questions of class certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d
100, 125 (2005).
[3]    To the extent the Court requires additional details regarding the number of members in
the proposed Class, such information may be readily obtained in PAR's or its customers'

FILED DATE: 7/16/2019 3:06 PM    2019CH03701

**B.    The Proposed Class Shares Many Common Questions of Law and Fact that Predominate Over Any Individual Issues.**

Section 2-801's second prerequisite requires that there are "questions of fact or law common to the class" and that those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Common questions of law or fact are typically found to exist when "the claims of the individual class members are based upon the common application of a statute or where the proposed class members are aggrieved by the same or similar conduct or a pattern of conduct." *Bueker v. Madison Cty.,* 2016 IL App (5th) 150282, ¶ 27; *McCarthy v. LaSalle Nat'l Bank & Trust Co.,* 230 Ill. App. 3d 628, 634 (1st Dist. 1992). After common questions of law or fact have been identified, these common questions must also predominate over any issues affecting only individual class members. "The test for predominance is not whether the common issues outnumber the individual ones, but whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Smith,* 223 Ill. 2d at 448–49. Ultimately, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores. Inc. v. Dukes,* 564 U.S. 338, 350 (2011) (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L. Rev. 97, 131–32 (2009)).

Here, common issues of law and fact clearly predominate. Plaintiff and the proposed Class's claims are based upon the same common contention and course of conduct by PAR: PAR violated the BIPA by collecting each individual's fingerprints without obtaining informed

---

records. Plaintiff would simply need to know the number of Illinois employees that worked for PAR's customers, given that each employee was required to scan their fingerprints as a condition of employment and thus fall into the proposed Class. (Compl. ¶¶ 21–22.)

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

written consent or putting in place any of BIPA's mandated procedural safeguards. (*See* Compl.

¶¶ 20–26, 27–34.) That is, Defendant treated the entire proposed Class in precisely the same

manner—by collecting the fingerprint data of class members through its POS system, and

failing to comply with the retention policy and consent provisions of the statute—resulting in

identical violations of BIPA. *Cf. S37 Mgmt., Inc. v. Advance Refrigeration Co.*, 2011 IL App

(1st) 102496, ¶ 32 ("Where liability is premised on a common practice uniformly applied, as it

is here, it is proper for the trial court to find the plaintiff's claims present questions of fact and

law, common to the class, that predominate over questions affecting only individual members

of the class."). It is clear that Defendant's uniform unlawful conduct will be the focus of the

litigants and the Court and can be proven through the use of common and generalized evidence

applicable to the proposed Class as a whole.

      Defendant's conduct also gives rise to numerous common questions of both law and

fact. These common questions include: (1) whether Defendant collected, captured, or otherwise

obtained Plaintiff's and the proposed Class's biometric identifiers or biometric information; (2)

whether Defendant properly informed Plaintiff and the proposed Class of its purposes for

collecting, using, and storing their biometric identifiers or biometric information; (3) whether

Defendant obtained a written release (as defined by 740 ILCS 14/10) to collect, use, and

disclose Plaintiff's and the proposed Class's biometric identifiers or biometric information; (4)

whether Defendant has disclosed or re-disclosed Plaintiff's and the proposed Class's biometric

identifiers or biometric information to any third parties; (5) whether Defendant has sold, leased,

traded, or otherwise profited from Plaintiff's and the proposed Class's biometric identifiers or

biometric information; (6) whether Defendant developed a written policy, made available to the

public, establishing a retention schedule and guidelines for permanently destroying biometric

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the subject of the biometric identifier or biometric information, whichever occurs first; (7) whether Defendant complies with any such written policy (if one exists); (8) whether Defendant used Plaintiff's and the proposed Class's fingerprints to identify them; and (9) whether Defendant's violations of BIPA were committed recklessly or intentionally. (Compl. ¶ 37.)

Once the Court answers these questions, liability for the claims of Plaintiff and each proposed Class member will be determined in one stroke. This alone establishes predominance. *See Bueker*, 2016 IL App (5th) 150282, ¶ 26 ("To satisfy [the predominance] requirement, the plaintiff must establish that the successful adjudication of the plaintiff's individual claims will establish a right of recovery in favor of the other class members."). The only remaining questions will be whether Plaintiff and the proposed Class are entitled to damages and injunctive relief for Defendant's conduct, which can also be answered on a classwide basis.

Since each question at the heart of this litigation will prove to have a common, classwide answer, Section 2-801's commonality and predominance requirements are satisfied.

**C.      Plaintiff and Her Counsel Are Adequate Representatives and Have No Conflicts with the Proposed Class.**

The third prerequisite of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). To be an adequate class representative, the putative class action plaintiff (i) must be a member of the class, (ii) must not be seeking relief that is potentially antagonistic to the other class members, and (iii) must have the desire and ability to prosecute the claim vigorously on behalf of herself and the other class members. *Ballard RN Ctr., Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2014 IL App (1st) 131543, ¶ 46, *aff'd in part, rev'd in part*, 2015 IL 118644, ¶ 46. In addition,

FILED DATE: 7/16/2019 3:06 PM    2019CH03701

plaintiff's counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *Steinberg*, 69 Ill. 2d at 339 (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *rev'd on other grounds*, 417 U.S. 156 (1974)). This ensures "that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Gordon*, 224 Ill. App. 3d at 203 (citations omitted).

Here, Plaintiff Neals has the same interests as all other proposed Class members, will fairly represent the proposed Class, and readily meets all other requirements of an adequate class representative. First, Plaintiff falls squarely within the proposed Class. As an employee of a restaurant using Defendant's timekeeping system, Plaintiff—like each member of the proposed Class—had her fingerprints collected by Defendant without Defendant's acquisition of her informed written consent; she therefore shares identical claims with all members of the proposed Class. (Compl. ¶¶ 27–33.) Second, Plaintiff is not seeking any relief that is potentially antagonistic to other members of the proposed Class, as she only seeks BIPA's statutory damages and injunctive relief requiring Defendant to comply with BIPA going forward. (*Id.* ¶ 52.) Finally, Plaintiff has and will continue to vigorously prosecute this case on behalf of the proposed Class, as demonstrated by her pursuit of this action on a classwide basis and her willingness to step forward as the named plaintiff, which subjects her to discovery. This qualifies her as a conscientious representative plaintiff and satisfies the adequacy of representation requirement.

Likewise, proposed class counsel, Edelson PC, will also fairly and adequately represent the proposed Class. Plaintiff's counsel are well-respected members of the legal community and have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action—indeed, the firm filed the first-ever class action under BIPA against

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

Facebook, *see In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-CV-03747-JD, 2018 WL 1794295 (N.D. Cal. Apr. 16, 2018) (certifying Illinois user class); *see also In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-CV-03747-JD, 2018 WL 2197546, at *1 (N.D. Cal. May 14, 2018) (denying Defendant's motion for summary judgment), and obtained the first-ever settlement under BIPA in 2016, *see Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cty., Ill.) (securing $1.5 million common fund and future compliance with BIPA). They regularly engage in major complex litigation involving consumer privacy, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by this Court and numerous others throughout the country. (*See* Declaration of J. Eli Wade-Scott ("Wade-Scott Decl."), ¶ 3, a true and accurate copy of which is attached hereto as Exhibit 1; *see also* Firm Resume of Edelson PC, a true and accurate copy of which is attached as Exhibit 1-A to the Wade-Scott Declaration). As they did in those cases, proposed class counsel, with the assistance of Plaintiff, have already diligently investigated and dedicated substantial resources to the investigation of the claims at issue in this action, and they will continue to do so throughout its pendency. (Wade-Scott Decl. ¶ 4.)

Thus, the adequacy of representation requirement is well satisfied.

**D.    A Class Action is the Most Appropriate Method to Adjudicate the Claims at Issue.**

The final prerequisite for class certification is met where "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). In making that determination, courts consider "whether a class action can best secure the economies of time, effort, and expense or accomplish the other ends of equity and justice that class actions seek to obtain." *Ramirez*, 378 Ill. App. 3d at 56. Importantly, "[w]here the first three requirements for class certification have been satisfied, the fourth requirement may

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

be considered fulfilled as well." *Id.*; *Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1079 (1st Dist. 1988) ("[T]he predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Additionally, a "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 224 Ill. App. 3d at 203–04; *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 1004 (1st Dist. 1991) ("In a large and impersonal society, class actions are often the last barricade of consumer protection.").

Here, a class action is certainly the most appropriate method to fairly and efficiently adjudicate the claims of Plaintiff and the proposed Class. The injuries suffered by Plaintiff and the members of the proposed Class are small compared to the burden and expense of prosecuting their claims on an individual basis, which would necessarily include the cost of discovery, motion practice, and trial. Thus, absent a class action, it would be difficult, if not impossible, for the individual members of the proposed Class to obtain effective relief.

Maintenance of this case as a class action is also appropriate because it will allow the Court to swiftly evaluate common issues surrounding Defendant's alleged fingerprint collecting practices in a single proceeding, generating a uniform result that will apply to all similarly situated persons. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (stating that "promot[ing] uniformity of decision as to persons similarly situated" is a goal of class actions) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). Moreover, individual claims would clog the courts with an influx of separate actions, further delaying the possibility of relief and undermining Section 5/2-801's goal of judicial efficiency. *See Cruz*, 383 Ill. App. 3d at 780; *see also CE Design Ltd.*, 2015 Ill. App (1st) 131465, ¶ 28. Finally, the fact that Section 2-801's numerosity, commonality and predominance, and adequacy requirements have

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

been satisfied further demonstrates the appropriateness of proceeding with this case as a class action.

Accordingly, Section 2-801's final prerequisite is satisfied and the proposed Class warrants certification.

### III. IF THE COURT REQUIRES MORE FACTUAL INFORMATION REGARDING THIS MOTION, THE COURT SHOULD ALLOW SUPPLEMENTAL AND DEFERRED BRIEFING FOLLOWING CLASS DISCOVERY.

Given Defendant's uniform practices and policies (or lack thereof), this matter is ripe for class certification and there is no meaningful need for discovery for the Court to certify the proposed Class. If, however, the Court wishes for the Parties to engage in discovery before considering Plaintiff's Motion for Class Certification, the Court should enter and continue the Motion until after the completion of discovery on classwide issues, allow Plaintiff to submit a supplemental brief at that time, and defer Defendant's response and Plaintiff's reply.

As noted above, Plaintiff is moving for class certification as early as possible in part to avoid the "pick off" problem, which occurs when a defendant seeks to settle the named plaintiff's claims on an individual basis in an effort to moot the plaintiff's class claims. *See Barber*, 241 Ill. 2d 450, 456–57 (holding that where a motion for class certification is pending at the time defendant tenders the relief requested by the named representative, "the case is not moot, and the trial court should hear and decide the motion for class certification before deciding whether the case is mooted by the tender."). Plaintiff also moves for class certification at this juncture because the proposed Class should be certified based on the facts known and alleged by Plaintiff. As thoroughly demonstrated above, no additional facts are needed to establish Section 2-801's prerequisites.

Should the Court, however, require additional factual information, Plaintiff requests that

FILED DATE: 7/16/2019 3:06 PM   2019CH03701

the Court enter and reserve ruling on her Motion for Class Certification until after the completion of discovery on classwide issues and allow Plaintiff to submit a supplemental memorandum.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court enter an Order: (1) certifying the proposed Class, (2) appointing Plaintiff Neals as the class representative, (3) appointing her counsel, Edelson PC, as class counsel, and (4) authorizing court-facilitated notice of this class action to the proposed Class. In the alternative, this Court should allow discovery, allow Plaintiff to supplement this briefing, and defer response and reply briefs.

Respectfully submitted,

Dated: July 16, 2019

By: /s/  J. Eli Wade-Scott
         One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075

David Fish
dfish@fishlawfirm.com
John Kunze
kunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
Firm ID: 44086

15

FILED DATE: 7/16/2019 3:06 PM    2019CH03701

## CERTIFICATE OF SERVICE

       I, J. Eli Wade-Scott, an attorney, hereby certify that on July 16, 2019 I served the above and foregoing document by causing a true and accurate copy of the same to be filed and transmitted to all counsel of record via the Court's electronic filing system as well as mailed to the address below:

Par Technology Corporation
28 Liberty Street
New York, NY 10005

                                       /s/ J. Eli Wade-Scott

16