## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KANDICE NEALS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>PARTECH, INC., a Delaware corporation,<br><br>*Defendant*. | Case No.: 19-cv-05660<br><br>Honorable Ronald A. Guzman<br><br>Magistrate Judge M. David Weisman |

### PLAINTIFF'S MOTION TO COMPEL
### DEFENDANT'S RESPONSES TO PLAINTIFF'S WRITTEN DISCOVERY REQUESTS

Plaintiff Kandice Neals ("Plaintiff" or "Neals"), by and through her undersigned counsel, hereby respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.2, for an order compelling Defendant ParTech, Inc. ("Defendant" or "ParTech") to properly respond to her written discovery requests, as detailed below.

### INTRODUCTION

In this putative class action, Plaintiff Neals alleges that ParTech collected, stored, and used her biometric fingerprint data without obtaining her written consent or establishing a retention policy as required by the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* Defendant collected, Neals alleges, not only her and her co-workers' fingerprints, but also the fingerprints of every other person in Illinois who used ParTech's biometric timekeeping system. At issue now is Defendant's refusal to provide unquestionably relevant information and documents in response to Plaintiff's discovery requests, both with respect to liability and class certification issues—the latter going entirely unanswered.

1

ParTech's written discovery deficiencies can be broken up into a few general categories: it refuses to (i) comply with Rule 34(b)(2)(C), stating for each objection whether it has withheld any documents on the basis of that objection, (2) withdraw its general and boilerplate objections, (3) produce any information or documents necessary for class certification by refusing to answer questions beyond Plaintiff's own employer, (4) produce any information or documents related to Plaintiff's BIPA claims under 740 ILCS 14/15(a), and (5) provide non-evasive answers to certain interrogatories. Over the past month, counsel for the parties have discussed these issues at length in an effort to reach an accord—which has included four phone calls, two meet and confer letters, and countless emails—but have been unable to.

In the end, Defendant has made clear that it will not comply with its discovery obligations without a compelling order. As a result, Plaintiff brings the instant motion requesting that the Court order Defendant to produce the requested documents and information identified below.

## BACKGROUND

ParTech provides a cloud-based point of sale ("POS") system that utilizes a biometric finger scanner (the "Biometric Timeclocks"). (Dkt. 32, Pl.'s First Am. Compl. ("FAC"), ¶ 1.) It sells this POS system to customers throughout Illinois, who in turn require their employees to use the Biometric Timeclocks to clock in and out of work using the employees' fingerprints. (Id. ¶ 2.) ParTech sold this system to Ms. Neals' employer, Charley's Philly Steaks, as well as to numerous other employers throughout Illinois. (Id. ¶¶ 21, 28.) Neals alleges that through her use of ParTech's Biometric Timeclocks, ParTech collected and stored her fingerprints. (Id. ¶¶ 28–29.) ParTech did that, she alleges, without complying with the requirements of BIPA—specifically, sections 15(a) and 15(b), (id ¶¶ 30–33)—and committed these same BIPA violations

against every person in Illinois who used one of ParTech's Biometric Timeclocks, (*id.* ¶¶ 35–39). Ms. Neals seeks to certify a class of all such individuals, as she made clear in her complaint. (*Id.* ¶ 35.)

After the pleadings were settled,[1] the parties submitted a case management report and Plaintiff promptly served her first set of interrogatories and document requests to Defendant on March 4, 2020. (Pl.'s 1st Interrogs., Ex. 1; Pl.'s 1st Reqs. for Prod., Ex. 2.). On March 12, 2020, the parties appeared for a case management conference where the Court entered a detailed schedule in order to ensure that discovery proceeded expeditiously, including deadlines to confer pursuant to Local Rule 37.2 and deadlines to file discovery-related motions. (Dkt. 40.) The COVID-19 pandemic intervened, and the Court (acting through Judge Pallmeyer) entered a number of general extensions in matters pending throughout the District. ParTech served its written objections and responses to Plaintiff on June 19, 2020—the last day permissible—and made its document production a week later, on June 26, 2020. (*See* Def.'s Ans. to Pl.'s Interrogs., Ex. 3, and Def.'s Resps. to Pl.'s Reqs. for Prod., Ex. 4.)

Upon review, Plaintiff identified numerous deficiencies in Defendant's responses and production. One glaring deficiency was Defendant's failure to comply Rule 34(b)(2)(C), as it did not state for a single objection whether it withheld any responsive materials based on an objection, and if so, which objections it relied upon. On July 11, 2020, citing Rule 34, Plaintiff's counsel requested that Defendant supplement its responses accordingly before the parties' Local Rule 37.2 conference, so that the parties could have a productive conversation about the responses and production, rather than keeping Plaintiff guessing as to whether any information

---

[1] ParTech moved to dismiss the complaint, which the Court granted pending an amendment from Plaintiff about where she scanned her fingerprint. (Dkt. 30.) The Court rejected ParTech's lead argument that it was exempt from BIPA liability altogether. (*Id.*) After Plaintiff amended her complaint, ParTech answered. (Dkt. 35.)

3

was being withheld and on what basis. (Declaration of Schuyler Ufkes, Ex. 5, ¶ 2.) Defendant refused to do so.

To aid their conference, Plaintiff served a meet and confer letter to Defendant on July 16, 2020 describing each deficiency in detail. (*Id.* ¶ 3.) Counsel for the parties then held their first Local Rule 37.2 conference on July 17, 2020, which they agreed to finish up on July 20, 2020 due to Defendant's scheduling conflicts. (*Id.* ¶ 4.) During the first conference, virtually no progress was made: Defendant's counsel stood on all of their objections and otherwise advised that they would need to confer with ParTech about supplementing any of its responses or production.

On July 28, 2020, Defendant responded to Plaintiff's meet and confer letter in writing. (*Id.* ¶ 5.) The response letter cleared up a few outstanding issues, but Defendant otherwise maintained its position that all of its general and specific objections were appropriate and refused to substantively amend or supplement any of its discovery responses besides one (Interrogatory No. 4). Counsel for the parties then held a second conference on August 3, 2020—which again had to be finished on August 4, 2020 due to Defendant's scheduling conflicts—in another effort to resolve, or at least narrow, their disputes. (*Id.* ¶ 6.) Unfortunately, no agreements were reached during the second conference, and counsel for Defendant again stated that it would follow up with ParTech on several of the issues, which at that time, had been raised over three weeks prior.[2] On August 10, 2020, Defendant provided supplemental responses to Plaintiff's discovery requests (only one of which was substantive) and didn't produce a single document requested by

---

[2] A side dispute that was raised throughout the conferences—and which Plaintiff is optimistic the Court will not need to address—is whether Defendant needs to produce source code and software running on the Biometric Timeclocks. (*See* Ex. 2, Reqs. 14, 16). Defendant has agreed to do so, but it has not yet done so, and continues to impose additional hurdles before Plaintiff can receive or review this information. The parties are still working through this issue, but Plaintiff notes that she may need to seek further relief from the Court if Defendant does not produce the source code and software.

Plaintiff. (Def.'s Supp. Ans. to Pl.'s Interrogs., Ex. 6; Def.'s Supp. Resps. to Pl.'s Reqs. for Prod., Ex. 7) That same day Plaintiff's counsel asked whether any documents would be produced, and Defendant's counsel responded yesterday evening—three days later—that it expects to produce supplemental documents on August 17th or 18th. (Ex. 5, ¶ 7.) Defendant has not specified what documents it expects to produce. Defendant has not agreed to answer the relevant discovery questions concerning class certification and the merits, discussed below.

As these efforts show, the parties have attempted to resolve their differences without Court intervention on repeated occasions. But despite these efforts, to date, the parties have been unable to reach agreement on any of the issues detailed below.

## ARGUMENT

Plaintiff is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information is discoverable "if [it] appears reasonably calculated to lead to the discovery of admissible evidence." *MSTG, Inc. v. AT&T Mobility LLC*, No. 08-cv-7411, 2011 WL 221771, at *2 (N.D. Ill. Jan. 20, 2011). An order compelling discovery is appropriate where "a party fails to answer an interrogatory submitted under Rule 33[,]" and where "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). Courts have "consistently adopted a liberal interpretation of the discovery rules," *Wilstein v. San Tropai Condo. Master Assoc.*, 189 F.R.D. 371, 375 (N.D. Ill. 1999), and "[t]he burden rests upon the objecting party to show why a [] request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Defendant has failed to properly respond to the majority of Plaintiff's requests *or* establish why they are improper, and a compelling order is thus necessary.

I. **ParTech Must Tell Plaintiff Whether It is Withholding Documents Based on Its Objections.**

As an initial matter, ParTech fails to comply with Fed. Civ. P. 34(b)(2)(C) for the majority of its objections. The Rule is straightforward: parties responding to document requests must state, for each and every objection, "whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). The purpose of this Rule is to "allow for meaningful evaluation" of discovery responses, and for the requesting party and court "to determine, with certainty, the requests for which [it] is producing documents, the requests for which [it] is withholding documents and on what basis, and the requests for which it has no responsive documents." *See E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, No. 04-cv-5153, 2006 WL 1652653, at *2 (E.D. Cal. June 13, 2006); Fed. R. Civ. P. 34, advisory committee notes (explaining that the 2015 amendment "should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections"). ParTech supplemented some of its responses to comply with Rule 34, but its partial compliance is neither sufficient nor what's required: it must comply for *each* request and objection.[3] ParTech's refusal to comply has required Plaintiff to spend needless time and effort trying to guess what information has been withheld and on what basis, and has frustrated the meet and confer process. ParTech should be compelled to comply with Rule 34 for each of its objections.

II. **ParTech's General Objections are Improper.**

ParTech has lodged eighteen "general objections" to Plaintiff's interrogatories and document requests. This is improper. *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL

---

[3] *See* Ex. 4, Def.'s Resps. to Pl.'s Reqs. for Prod.; Ex. 7, Def.'s Supp. Resps. to Pl.'s Reqs. for Prod. (failing to state whether any documents were withheld in response to Request Nos. 5, 7, 8, 10, 11, 13–28, 30, 31, 33, 36–39, 41, and if so, which specific objection(s) it relies upon to withhold them).

6

1651709, at *4 (N.D. Ill. Apr. 17, 2019) ("[B]road objections to discovery that do not address the specific interrogatory or document request to which they are posed 'are tantamount to not making any objection at all.'") (internal citations omitted); *In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *3 (N.D. Ill. Mar. 20, 2015) (emphasizing that "[i]t is well-established that such generalized boilerplate objections have no effect" and waiving all general objections not stated in response to a specific discovery request). All of ParTech's general objections should be overruled or deemed waived.

### III. ParTech's Frequently-Raised Objections are Improper

ParTech also relies on the following categories of objections throughout its specific responses to withhold the vast majority of the information and documents requested. Each is improper and should be overruled.

#### A. ParTech's Boilerplate Objections as to Relevance, Overbreadth, and Disproportionality are Futile.

ParTech has objected to nearly every request as "overbroad and disproportionate to the needs of the case," and/or that they seek "information irrelevant to, and not reasonably related to any claim or defense in, this litigation," without providing any bases or additional detail.[4] When a party fails to "cite a basis for a boilerplate objection" it "violat[es] [] the Federal Rules . . . which require parties to specifically state the grounds and legal basis for objecting to discovery requests." *Swift v. First USA Bank*, No. 98-cv-8239, 1999 WL 1212561, at *7 (N.D. Ill. Dec. 15, 1999). Indeed, "[i]t is well-established that such generalized boilerplate objections have no effect," and "[c]ourts have repeatedly warned litigants who oppose discovery that their 'burden

---

[4] *See, e.g.*, Ex. 3, Gen. Obj. No. 2, Ans. Interrog. Nos. 7–15 (failing to provide basis for overbreadth and disproportionality objections), Ans. Interrog. Nos. 2–15 (failing to provide a basis for relevance objections); Ex. 4, Gen. Obj. No. 2, Resp. Nos. 4, 6, 8–10, 12, 14, 16, 18, 21–24, 26–34, 36–40 (failing to provide basis for relevance, overbreadth, and disproportionality objections).

cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is . . . overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *3 (citing *Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006)). Baseless objections as to proportionality are similarly futile. *H Guys, LLC v. Halal Guys Franchise, Inc.*, No. 19 C 4974, 2020 WL 3578026, at *4 (N.D. Ill. July 1, 2020) ("[M]erely to insist that the concept of proportionality is violated in a given discovery will run afoul of the religiously followed rule that boilerplate, unexplained objections are essentially entitled to no weight.").

In addition to being superficial and improper, the relevance objections are simply wrong. Requests are "relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Kodish*, 235 F.R.D. at 450 (citation omitted); *H Guys, LLC*, 2020 WL 3578026, at *5 ("Relevance is a legal concept that is not to be interpreted in a grudging fashion.") Thus, courts "look unfavorably upon significant restrictions placed upon the discovery process" and require an objecting party to establish "why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450.

Operating well within this liberal standard, Plaintiff's requests seek information necessary to prove her claims and substantiate her class allegations. To prove her BIPA claims, Plaintiff needs to demonstrate that ParTech collected and possessed protected biometric data, *see* 740 ILCS 14/10 (covering "biometric identifiers," such as fingerprints, or "biometric information," information based on fingerprints), without complying with the law's requirements to obtain consent, 740 ILCS 14/15(b), and to destroy information consistent with a publicly-available retention policy, 740 ILCS 14/15(a). Thus, she needs evidence to show how ParTech's Biometric

8

Timeclock system works: what type of biometric data the Timeclocks collect when a person scans their finger, how they identify or verify employees' identities using biometric data (the "Biometric Function"), how biometric data is collected and stored (and by whom), how biometric data is transmitted to ParTech, its cloud, or any third parties, and what third parties were involved in making the Biometric Terminals—so that Plaintiff can obtain additional information from those third parties.[5] She also needs to demonstrate ParTech's involvement in the collection, use, storage, and hosting of the biometric data at issue, which necessarily requires an understanding of the relationship between ParTech and its employer-customers, the communications between them regarding relevant topics like fingerprints and the Biometric Function, whether ParTech transmitted any biometric data to any third parties or allowed third-party access to it, and whether ParTech benefited or profited from the collection of biometric data. Further, Plaintiff is obviously entitled to know whether ParTech obtained any written BIPA-related consent or release forms from Plaintiff or putative class members or had in place any retention, destruction, or security policies related to biometric data, per statute. *See* 740 ILCS 14/15(a), (b), (e).

Plaintiff's class allegations are straightforward, but she is entitled to information from ParTech to certify the class. Plaintiff needs to know which of ParTech's employer-customers used Biometric Terminals in Illinois, whether they used different models of Biometric Timeclocks than the one Plaintiff's employer used (i.e., the EverServ 600)—and if so, whether those Timeclocks functioned in materially the same manner as the EverServ 600—whether the employer-customers used the Biometric Timeclocks in the same manner, and how many Illinois

---

[5] Plaintiff notes that she served a subpoena to produce documents to Cross Match Technologies, Inc.—the manufacturer of the finger scanner attachment at issue—on July 28, 2020 after ParTech identified the entity. Responses to that subpoena are due August 27, 2020.

residents used them (i.e., the class size).

The foregoing represents the whole of Plaintiff's requests, all of which seek relevant and proportional documents and information. But ParTech has withheld an enormous amount of this discovery on the eyebrow-raising basis of relevance and proportionality, without any further explanation of why that might be the case.[6] The Court should overrule ParTech's boilerplate objections and compel production of the foregoing information.

### B. ParTech Cannot Narrow the Scope of this Case to Only Plaintiff and Her Employer.

ParTech refuses to answer discovery beyond Plaintiff's own employer. Instead of answering Plaintiff's discovery as to the scope that she defined the proposed class in her complaint, ParTech has unilaterally decided that the class in this case is limited to only Plaintiff and her fellow employees at Charley's Philly Steaks in Schaumburg, Illinois.[7] The scope of this case, however, is broader than that: this is a putative class action alleging that ParTech violated

---

[6] For ease of reference, ParTech has not produced—and Plaintiff seeks an order compelling—(1) any of its BIPA consent or release forms (or, alternatively, state that none exist), (2) any retention, destruction, or security policies relating to biometric data (or, alternatively, state that none exist), (3) a description of the Biometric Function, (4) any manuals, instructions, or user guides for the Biometric Timeclocks at issue, (5) any manuals, instructions, or user guides for the Brink POS Cloud system at issue, (6) any documents or ESI showing transmissions of biometric data to ParTech or the Brink POS Cloud, (7) the physical location and ownership of servers storing Plaintiff's biometric data, (8) the relevant software and source code of the Biometric Timeclocks, (9) any communications with its customers related to the Biometric Function or using the word "fingerprint," (10) the class size, (11) a list of its employer-customers who used Biometric Timeclocks in Illinois, (12) any contracts with its employer-customers, besides Plaintiff's employer, relating to the Biometric Timeclocks, or (13) any contracts with its employer-customers relating to the Brink POS Cloud system at issue.

[7] Specifically, ParTech objects to (i) the definition of "Proposed Class Member" to the extent it encompasses individuals working for any entity other than Plaintiff's employer (Ex. 3, Gen. Obj. No. 12; Ex. 4, Gen. Obj. No. 13), (ii) the definition of "Relevant Time Period" to the extent it encompasses information outside of the timeframe Plaintiff was employed (Ex. 4, Req. Nos. 14–17), (iii) the production of any information "related to individuals allegedly belonging to a purported class that has yet to be" certified (Ex. 3, Interrog. Nos. 7, 8, 10, 11, 12, 14, 15; Ex. 4, Req. Nos. 1, 8, 20, 21, 23–28, 30–33, 36, 37), (iv) the production of any information regarding ParTech POS devices other than those supplied to Plaintiff's employer (Ex. 3, Interrog. Nos. 2–6; Ex. 4, Req. Nos. 7, 10, 11, 15, 17), and (v) the production of any information regarding entities not associated with the business dealings between ParTech and Plaintiff's employer (Ex. 3, Interrog. No. 5; Ex. 4, Req. Nos. 3, 15, 19, 20, 25).

the privacy rights of thousands of other Illinois residents who similarly used ParTech's Biometric Timeclocks throughout the State. (*See, e.g.*, FAC ¶ 35.) Because this case is not limited to ParTech's BIPA violations stemming from Plaintiff's employer's restaurant, neither should discovery. Defendant, however, has refused to answer or produce *any* discovery that is necessary for Plaintiff to certify the statewide class she intends to certify, (*see id.*), and to otherwise meet her burden to show that certification of the class is appropriate. *Miner v. Gov't Payment Serv., Inc.*, No. 14-cv-7474, 2017 WL 3909508, at *3 (N.D. Ill. Sept. 5, 2017) ("[A] certain amount of discovery is essential in order to determine the certification issue and the proper scope of a class action") (internal citations omitted).

      The information sought by Plaintiff is basic to certification of the class. She seeks information about how the Biometric Terminals used throughout Illinois functioned and stored biometric data, whether ParTech provided Plaintiff and the putative class members uniform consent or release forms (if any), whether ParTech had in place a uniform retention policy or destruction guidelines (if any), and whether ParTech's relationships with it employer-customers were materially the same. *See id.*, at *3 (compelling production of defendant's contracts with all of its Illinois county-customers, not just the one plaintiff transacted with, so that plaintiff could determine whether they were similar enough to certify a statewide class). Each of these categories of information is well within the scope of discovery accessible to Plaintiff to prove that common issues predominate, that Plaintiff is an adequate representative, and that her claims are typical of the class members she seeks to represent. Defendant did not request, nor did the Court enter, a bifurcated fact discovery schedule in which discovery relevant to class certification is not available to Plaintiff now. The Court should accordingly overrule ParTech's objections and compel it to answer Plaintiff's Interrogatories and Requests (cited in footnote 6) as to the putative class she seeks to

certify.

### C. ParTech Must Produce Discovery Related to Plaintiff's Section 15(a) Claims.

ParTech has refused to produce any discovery related to Plaintiff's Section 15(a) claim because Plaintiff supposedly lacks standing to pursue that claim in federal court. This objection is not a cognizable discovery objection. First, as the removing party, it is ParTech's obligation—not Plaintiff's—to establish the federal court's jurisdiction. It is therefore improper for ParTech to argue that it doesn't have to produce discovery about claims *it* removed to federal court because it is now calling into question the federal court's jurisdiction over those claims. Nor had ParTech even raised this issue before the Court until today. Obstructing discovery while at the same time bearing the burden of keeping these claims in federal court is facially inappropriate. Second, Plaintiff likely does have standing to assert her Section 15(a) claims in federal court under the amended decision in *Bryant*, but again, that is not her burden to bear. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020); *see also Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-8402, dkt. 50 (N.D. Ill. July 29, 2020), attached hereto as Ex. 8. Third, even if Plaintiff didn't have standing to pursue her Section 15(a) claims in federal court, ParTech would still have to produce discovery related to those claims, as they would proceed in state court. Obstructing inevitable discovery related to the Section 15(a) claims—in the forum that Defendant picked—is gamesmanship. The Court should not condone it.

ParTech, of course, cannot withhold discoverable information from Plaintiff that is necessary for her to establish liability in this case, including ParTech's retention schedules, destruction policies, and any other security policies relating to biometric data (if any). This objection should be overruled globally, and ParTech should be compelled to respond to each request. (Ex. 1, Interrog. Nos. 12, 13; Ex. 2, Req. Nos. 28, 38, 39.)

### IV. Responses to Specific Interrogatories and Requests

#### A. ParTech Refuses to Describe the Biometric Function (Interrogatory No. 3).

Interrogatory No. 3 asks ParTech to describe the Biometric Function of the Biometric Timeclocks; in other words, how the Timeclocks identify or verify the identity of employees using biometric data. (Ex. 1, Definition No. 2, Interrog. No. 3.) ParTech evaded the question entirely responding that "it does not capture, use, process, or store Biometric Data." That response, of course, does not answer the Interrogatory, nor is the Interrogatory predicated on whether ParTech "capture[s], use[s], process[es], or store[s] Biometric Data." ParTech has refused to supplement its answer claiming that it already "answered the interrogatory posed." (Ex. 5-B, at 4.) Plaintiff disagrees and requests that the Court compel ParTech to describe the Biometric Function, regardless of whether it contends that "it does not capture, use, process, or store Biometric Data." *See* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

#### B. ParTech Refuses to Answer Whether It Distributed BIPA-Compliant Notices or Received BIPA-Compliant Releases (Interrogatory Nos. 10 and 11).

Interrogatory Nos. 10 and 11 ask ParTech to describe the manner in which it distributed BIPA-compliant notices to Plaintiff and the putative class members and received BIPA-compliant written releases from them, if at all. Again, ParTech responded that "it does not capture, collect, obtain, store, or use Biometric Data," which, again, does not answer these Interrogatories. Whether ParTech contends that it collected, stored, or used biometric data is beside the point for purposes of these Interrogatories: Plaintiff wants to know—regardless of ParTech's merits position that *it* did not collect, store, or use biometric data—whether it distributed the described notices or obtained the described releases from Plaintiff or the putative class members. If ParTech didn't do so because it does not think it is covered by BIPA, then it

13

should answer as such. *See Hangzhou Aoshuang E-Commerce Co. v. 008fashion*, No. 19 C 4565, 2020 WL 3429735, at *3 (N.D. Ill. June 23, 2020) ("Discovery is not a game, but rather is a process designed to make a trial less a game of blindman's bluff and more a fair contest with basic issues and facts disclosed to the fullest practicable extent.").

        **C.**        **ParTech Refuses to State the Class Size (Interrogatory No. 14).**

Interrogatory No. 14 asks ParTech to simply state the total number of Proposed Class Members, but ParTech refuses, reasoning that (1) it doesn't think a class can be certified, (2) even if a class is certified, it thinks it will be smaller than the one Plaintiff proposes, and (3) it doesn't "expect" to challenge numerosity at class certification, Fed. R. Civ. P. 23(a)(1). (Ex. 5-B, at 5–6.) None of these rationales hold water. That ParTech doesn't believe Plaintiff can certify the class she proposes in her complaint is no basis to withhold relevant discovery, and Plaintiff cannot rely on ParTech's vague statement that it doesn't "expect" to challenge numerosity at class certification—not to mention that she needs the class size for other purposes as well, such as to identify and establish the existence of the class at certification. *See Jenkins v. White Castle Mgmt. Co.*, No. 12 C 7273, 2013 WL 5663644, at *3 (N.D. Ill. Oct. 17, 2013) ("In the class-action context, . . . courts routinely allow pre-certification discovery for the purposes of defining the class and identifying how many similarly situated employees exist.") (collecting cases).

Moreover, as a practical matter, the parties can't engage in meaningful settlement discussions without knowing the class size. Despite ParTech's purported willingness to engage in settlement discussions (dkt. 61 at 6), it has refused to produce this basic information. *See Hangzhou Aoshuang E-Commerce Co.*, 2020 WL 3429735, at *1 ("The unwillingness to answer routine discovery exemplifies what prompted Judge Posner to lament: 'protracted discovery, is the bane of modern litigation.'") (quoting *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir.

14

2000)). The Court should compel ParTech to produce the class size if, for nothing else, to facilitate potential resolution. *See Miner*, 2017 WL 3909508, at *3 ("It is well-established that the federal discovery rules permit liberal discovery in an effort to facilitate the trial or settlement of legal disputes.") (citing *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009)).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order compelling Defendant to fully respond to Plaintiff's Interrogatories and Requests for Production cited herein, and providing such other and further relief that the Court deems reasonable and just.

## LOCAL RULE 37.2 COMPLIANCE

Despite undersigned counsel's sincere and good faith efforts to resolve these matters through several personal consultations via telephone with Defendant's counsel, Mr. John Ruskusky, on July 17, 2020, July 20, 2020, August 3, 2020, and August 4, 2020, the parties were unable to reach an accord on the matters described herein.

                                                                                                     Respectfully submitted,

                                                                                                     **KANDICE NEALS,** on behalf of herself and all others similarly situated

Dated: August 14, 2020                    By: /s/ Schuyler Ufkes
                                                                                 One of Plaintiff's attorneys

                                                                                  Benjamin H. Richman
                                                                                   brichman@edelson.com
                                                                                   J. Eli Wade-Scott
                                                                                   ewadescott@edelson.com
                                                                                   Schuyler Ufkes
                                                                                   sufkes@edelson.com
                                                                                   EDELSON PC
                                                                                   350 North LaSalle Street, 14th Floor
                                                                                   Chicago, Illinois 60654
                                                                                   Tel: 312.589.6370