**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| KANDICE NEALS, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | No. 19-cv-05660 |
| v. | Hon. Franklin U. Valderrama |
| PARTECH, INC., a Delaware corporation, | |
| *Defendant*. | |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .........................................3

      A.    Illinois' Biometric Information Privacy Act ........................................3

      B.    Plaintiff's Allegations and Defendant's POS System........................5

      C.    Litigation, Negotiation, and Settlement .............................................6

III.    TERMS OF THE SETTLEMENT AGREEMENT..........................................9

      A.    Class Definition ......................................................................................9

      B.    Settlement Payments...........................................................................10

      C.    Prospective Relief ................................................................................11

      D.    Payment of Settlement Notice and Administrative Costs................11

      E.    Payment of Attorneys' Fees, Costs, and Incentive Award ..............12

      F.    Release of Liability...............................................................................12

IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ...........................................................................12

      A.    The Numerosity Requirement is Satisfied ........................................13

      B.    Common Issues of Fact and Law Predominate.................................14

      C.    The Typicality Requirement is Satisfied ...........................................15

      D.    The Adequacy Requirement is Satisfied ...........................................16

      E.    A Class Action is a Superior Method of Resolving the Controversy...............20

      F.    The Class is Ascertainable..................................................................22

V.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .....23

VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........................................................................................................24

A.    Plaintiff Kandice Neals and Proposed Class Counsel Have Adequately Represented the Settlement Class ............................................................. 26

B.    The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties ........................................................................... 31

C.    The Settlement Treats All Settlement Class Members Equally ................... 33

D.    The Relief Secured for the Settlement Class Is Adequate and Warrants Approval ................................................................................................. 35

     1.    The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval ........................................... 35

     2.    The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval ........................................ 37

     3.    The terms of the requested attorneys' fees are reasonable ................. 39

VII.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE ........................................................................................ 40

VIII.    CONCLUSION ........................................................................................ 42

## **TABLE OF AUTHORITIES**

### **United States Supreme Court Cases**

*Amchem Prods. Inc. v. Windsor*,
 521 U.S. 591 (1997)................................................................12, 13, 22

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
 568 U.S. 455 (2013)................................................................13

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974)................................................................40

*Frank v. Gaos*,
 139 S. Ct. 1041 (2019)................................................................29

*Ortiz v. Fibreboard Corp.*,
 527 U.S. 815 (1999)................................................................34

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011)................................................................14

### **United States Circuit Court of Appeals Cases**

*Arreola v. Godinez*,
 546 F.3d 788 (7th Cir. 2008) ................................................................13

*Beaton v. SpeedyPC Software*,
 907 F.3d 1018 (7th Cir. 2018) ................................................................16

*Bell v. PNC Bank, Nat'l Ass'n*,
 800 F.3d 360 (7th Cir. 2015) ................................................................14

*Bryant v. Compass Grp. USA, Inc.*,
 958 F.3d 617 (7th Cir. 2020) ................................................................7

*Gautreaux v. Pierce*,
 690 F.2d 616 (7th Cir. 1982) ................................................................24

*Golan v. FreeEats.com, Inc.*,
 930 F.3d 950 (8th Cir. 2019) ................................................................37

*Gomez v. St. Vincent Health, Inc.*,
 649 F.3d 583 (7th Cir. 2011) ................................................................24

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996)........................................................................25

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012).......................................................................29

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015)..............................................................13, 22, 23

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019)...................................................................18, 20

*Retired Chi. Police Ass'n v. City of Chi.*,
    7 F.3d 584 (7th Cir. 1993)..........................................................................17

*Sosa v. Onfido, Inc.*,
    No. 21-1107, 2021 WL 3523197 (7th Cir. Aug. 11, 2021) ...............................18

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011)......................................................................16

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014)..................................................................14, 22

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006)......................................................................25

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011)......................................................................39

## United States District Court Cases

*Adkins v. Facebook, Inc.*,
    No. 18-cv-05982-WHA (N.D. Cal. May 6, 2021) ...........................................2

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ..........................27

*Barnes v. Air Line Pilots Ass'n, Int'l*,
    310 F.R.D. 551 (N.D. Ill. 2015)..............................................................13, 21

*Bernal v. NRA Grp. LLC*,
    318 F.R.D. 64 (N.D. Ill. 2016)............................................................20, 21, 22

*Burlinski v. Top Golf USA, Inc.*,
    No. 19-cv-06700 (N.D. Ill. Oct. 13, 2021) ...................................................19

*Charvat v. Valiente*,
No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ......................................31

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
No. 1:18-cv-07018 (N.D. Ill. Sept. 10, 2020) ..................................................................39

*Davis v. Heartland Emp. Servs.*,
No. 19-cv-00680 (N.D. Ill.) .............................................................................................19

*Dixon v. Washington & Jane Smith Cmty.-Beverly*,
No. 17-cv-8033 (N.D. Ill. May 31, 2018) ........................................................................34

*Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374,
1995 WL 17009594  (N.D. Ill. Oct. 10, 1995) .................................................................35

*Gumm v. Ford*,
No. 5:15-cv-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019) .................................26

*Hale v. State Farm Mut. Auto. Ins. Co.*,
No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ....................................25

*Hudson v. Libre Tech., Inc.*,
No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. 2020) ...............................36

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ...............................................................................25, 28

*In re AT & T Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ...............................................................................37

*In re Facebook Biometric Info. Priv. Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) ...............................................................................20, 36

*In re Facebook Biometric Info. Priv. Litig.*,
No. 15-cv-3747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26 2021) ..............................10, 18

*In re Google Buzz Priv. Litig.*,
No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ..................................29

*In re Google LLC Street View Elec. Commc'ns Litig.*,
No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ............................2

*In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*,
No. 8:10ML 02151 JVS, 2013 WL 3224585 (C.D. Cal. 2013) ........................................38

vi

*Jackson v. Nat'l Action Fin. Servs., Inc.*,
227 F.R.D. 284 (N.D. Ill. 2005)......................................................................20

*Kaufman v. Am. Express Travel Related Servs., Co.*,
No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016)...........................28

*Lopez-McNear v. Superior Health Linens, LLC*,
No. 19-cv-2390 (N.D. Ill. Apr. 27, 2021).................................................34, 39

*Martinez v. Nandos Rest. Grp., Inc.*,
19-cv-07012 (N.D. Ill. Oct. 27, 2020) ..............................................19, 30, 34

*Muir v. Nature's Bounty (DE), Inc.*,
No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018)............................15

*Osada v. Experian Info. Sols., Inc.*,
290 F.R.D. 485 (N.D. Ill. 2012)......................................................................17

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
252 F.R.D. 438 (N.D. Ill. 2008)......................................................................17

*Ramirez v. GLK Foods, LLC*,
No. 12-C-210, 2014 WL 2612065 (E.D. Wis. June 11, 2014) ........................21

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .........................................................37, 38

*Schulte v. Fifth Third Bank*,
No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) .....................33

*Snider v. Heartland Beef, Inc.*,
No. 4:20-cv-04026 (C.D. Ill.) .........................................................................21

*Snyder v. Ocwen Loan Servicing, LLC*,
No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ...............25, 26, 33

*Starr v. Chi. Cut Steakhouse*,
75 F. Supp. 3d 859 (N.D. Ill. 2014) ................................................................17

*Thome v. Novatime Tech., Inc.*,
No. 19-cv-6256 (N.D. Ill. Mar. 8, 2021)....................................................10, 30

*Toney v. Quality Res., Inc.*,
323 F.R.D. 567 (N.D. Ill. 2018).......................................................................23

*Wright v. Nationstar Mortg. LLC*,

No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016)........................................32

*Young v. Rolling in the Dough, Inc.*,
No. 1:17-CV-07825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ..............................28, 33

*Ziemack v. Centel Corp.*,
163 F.R.D. 530 (N.D. Ill. 1995) ......................................................................................16

**State Supreme Court Cases**

*Rosenbach v. Six Flags Ent. Corp.*,
129 N.E. 3d 1197 (Ill. 2019) ............................................................................................5

**State Appellate Court Cases**

*McDonald v. Symphony Bronzeville Park LLC*,
2020 IL App (1st) 192398................................................................................................18

*Rottner v. Palm Beach Tan, Inc.*,
2019 IL App (1st) 180691-U ...........................................................................................18

*Sekura v. Krishna Schaumburg Tan, Inc.*,
115 N.E. 3d 1080 (Ill. App. Ct.) .....................................................................................18

*Tims v. Black Horse Carriers, Inc.*,
2021 IL App (1st) 200563................................................................................................35

**State Circuit Court Cases**

*Abusalem v. The Standard Market, LLC*,
2019 L 000517 (Cir. Ct. DuPage Cty.) ...........................................................................29

*Carroll v. Crème de la Crème, Inc.*,
2017-CH-01624 (Cir. Ct. Cook Cty.) ................................................................................2

*Diller v. Ryder Integrated Logistics*,
2019-CH-3032 (Cir. Ct. Cook Cty.) ................................................................................19

*Edmond v. DPI Specialty Foods*,
2018-CH-09573 (Cir. Ct. Cook Cty.) ...........................................................................3, 30

*Fluker v. Glanbia Performance Nutrition, Inc.*,
2017-CH-12993 (Cir. Ct. Cook Cty.) ..........................................................................29, 30

*Johnson v Resthaven/Providence Life Servs.*,
2019-CH-1813 (Cir. Ct. Cook Cty.) ................................................................................19

*Jones v. Rosebud Rests., Inc.*,
   2019-CH-10620 (Cir. Ct. Cook Cty.) ................................................19

*Kusinski v. ADP LLC*,
   2017-CH-12364 (Cir. Ct. Cook Cty.) ..............................................10, 30, 39

*Licata v. Facebook, Inc.*,
   2015-CH-05427 (Cir. Ct. Cook Cty.) ................................................18

*Marshall v. Lifetime Fitness, Inc.*,
   2017-CH-14262 (Cir. Ct. Cook Cty.) ................................................2

*Mazurkiewicz v. Mid City Nissan*,
   2018-CH-09798 (Cir. Ct. Cook Cty.) ................................................30

*Muniz v. Workwell Techs., Inc.*,
   2019-CH-04061 (Cir. Ct. Cook Cty.) ................................................30

*O'Sullivan, et. al. v. WAM Holdings, Inc.*,
   2019-CH-11575 (Cir. Ct. Cook Cty.) ................................................19

*Prelipceanu v. Jumio Corporation*,
   2018-CH-15883 (Cir. Ct. Cook Cty.) ................................................10

*Sekura v. L.A. Tan Enters., Inc.*,
   2015-CH-16694 (Cir. Ct. Cook Cty.) ..............................................10, 18, 39

*Sosa v. Mod Super Fast Pizza, LLC*,
   2020-CH-01737 (Cir. Ct. Cook Cty.) ................................................21

*Svagdis v. Alro Steel Corp.*,
   2017-CH-12566 (Cir. Ct. Cook Cty.) ................................................39

*Watts v. Aurora Chicago Lakeshore Hosp. LLC*,
   2017-CH-12756 (Cir. Ct. Cook Cty.) ................................................30

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
   2018-CH-02140 (Cir. Ct. Cook Cty.) ................................................39

## **Miscellaneous Authority**

740 ILCS 14 ....................................................................*passim*

Fed. R. Civ. Proc. 23 ....................................................................*passim*

Ill. House Transcript, 2008 Reg. Sess. No. 276 ...................................................................4

*Chicago Restaurant Workers Relief Fund*,
    https://southernsmoke.org/chicago-relief-fund ...............................................................10

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
    Law360 (Aug. 28, 2018), https://www.law360.com/articles/1076447/illinois-
    powerhouse-edelson-pc ................................................................................................ 19

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
    Law360 (October 5, 2017), https://edelson.com/wp-content/uploads/2016/05/Illinois-
    Powerhouse-Edelson-PC.pdf ....................................................................................... 19

Grace Dixon Hanson, *Class Action Group Of The Year: Edelson*,
    Law360 (Dec. 3, 2020), https://www.law360.com/articles/1328395/class-action-group-
    of-the-year-edelson ......................................................................................................18

Joyce Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*,
    Law360 (Dec. 8, 2020), https://www.law360.com/articles/1327009/cybersecurity-
    privacy-group-of-the-year-edelson ..............................................................................18

Lauraann Wood, *Illinois Powerhouse: Edelson*,
    Law360 (Sept. 3, 2019), https://www.law360.com/articles/1193728/illinois-powerhouse-
    edelson ......................................................................................................................... 19

*Law360 Names Practice Groups of the Year*,
    Law360 (Nov. 29, 2020), https://www.law360.com/articles/1327476/law360-names-
    practice-groups-of-the-year ..........................................................................................18

Matt Marshall, *Pay By Touch In Trouble, Founder Filing For Bankruptcy*,
    Venture Beat, available at http://goo.gl/xT8HZW ..........................................................4

Meg Marco, *Creepy Fingerprint Pay Processing Company Shuts Down*,
    Consumerist, available at https://goo.gl/rKJ8oP .............................................................4

1 Newberg on Class Actions
    § 3:56 (5th ed. 2011) ...................................................................................................23

2 Newberg on Class Actions
    § 4:72 (5th ed. 2011) ...................................................................................................21

4 Newberg on Class Actions
    § 13:1 (5th ed. 2011) ...................................................................................................24
    § 13:53 (5th ed. 2011) ............................................................................................37, 38

5 Newberg on Class Actions
§ 15:83 (5th ed. 2011) .......................................................................................................40

## I.   INTRODUCTION

Numerous class actions have been filed under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, against employers for collecting employees' biometric data through biometric timeclocks. BIPA requires entities that collect protected biometric data—like fingerprints—to (1) inform people that their data is being collected, who is collecting it, and why it is being collected and (2) receive written consent regarding the collection. This case, too, is a BIPA suit, and one brought by Illinois workers. But it differs from most BIPA actions in that it is not brought against an employer; instead, it is against the provider of the biometric timekeeping technology itself, ParTech, Inc. ("ParTech" or "Defendant"). Plaintiff Kandice Neals ("Plaintiff") alleges that ParTech provided its cloud-based point-of-sale system ("POS system") with a finger scanner attached to her former employer—and dozens of other quick-service restaurants across Illinois—to facilitate tracking employees' working hours using their fingerprint. Unbeknownst to Plaintiff (and thousands of other Illinois restaurant workers), she alleges, when they used ParTech's biometric POS system at work, ParTech itself collected and stored their fingerprint information on its servers, without complying with BIPA.[1]

Following Rule 12 motion practice, extensive written discovery, including third-party discovery, months of negotiations, and a formal mediation session with the Honorable Stuart E. Palmer (Ret.) of JAMS in Chicago, the Parties have reached a class-wide settlement that, if approved, is poised to provide the highest per-claimant payments of any of the three other BIPA settlements with a provider of biometric equipment.[2] ParTech has agreed to pay $790,000.00 into

---

[1]     Plaintiff and ParTech are referred to individually as "Party" and collectively referred to as the "Parties."

[2]     The capitalized terms used in this motion are those used in the Stipulation of Class Action Settlement (the "Settlement" or "Agreement"), attached hereto as Exhibit 1.

1

a non-reversionary Settlement Fund to be distributed to the Settlement Class comprised of approximately 3,560 current and former restaurant workers. Each Settlement Class Member who files a valid Claim Form will be entitled to a *pro rata* share of the Settlement Fund, which assuming a claims rate of 10 to 20%, will amount to payments of approximately $660 to $1,320 each after costs and any fees are deducted. Critically, in addition to these payments, Class Members will retain any separate BIPA claims they have against their employers who may have also violated BIPA by collecting the same biometric data.

Compared against other privacy cases, this Settlement provides an exceptional amount of monetary relief to Class Members. Many privacy cases have historically been settled for very little meaningful monetary relief, if any is provided to the class at all, which is a trend that unfortunately continues. *E.g.*, *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs). This has been the case in BIPA settlements, too. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, No. 2017-CH-01624 (Cir. Ct. Cook Cnty. June 6, 2018) (providing only credit monitoring). Other BIPA settlements have capped monetary relief at a certain amount, with the inevitable remaining settlement funds reverting to the defendant. *E.g.*, *Marshall v. Lifetime Fitness, Inc.*, No. 2017-CH-14262 (Cir. Ct. Cook Cnty.) ($270 per claimant with credit monitoring, reverting funds to defendant).

And while there have now been dozens of BIPA settlements in the employment context (i.e., between employees and their employers who deploy the biometric timeclocks) that secure, on average, over $1,000 per class member, nearly every one of them has released the vendor of the biometric timekeeping technology for *no* evident value at all. *See, e.g., Edmond v. DPI Specialty Foods*, No. 2018-CH-09573 (Cir. Ct. Cook Cnty.) (fund constituting $1,000 per person with direct checks sent to all class members, but releasing claims against vendor). This Settlement not only provides substantial cash relief to Class Member's for their BIPA claims against ParTech, the vendor of the biometric technology, it also preserves their separate BIPA claims against their employers, meaning they can still pursue those claims for additional monetary relief.

Given the relief proposed by the Settlement Agreement, the Court should not hesitate to find that the Settlement is well within the range of possible approval. Accordingly, Plaintiff respectfully requests that the Court grant her motion for preliminary approval in its entirety, certify the proposed Settlement Class, appoint her attorneys as Class Counsel, direct that the proposed Notice be disseminated to the Settlement Class, and set a Final Approval Hearing.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Illinois' Biometric Information Privacy Act

A brief history and overview of BIPA gives further context to the reasonableness of the proposed Settlement. In the early 2000s, a company called Pay By Touch began installing fingerprint-based checkout terminals at grocery stores and gas stations in major retailers throughout the State of Illinois to facilitate consumer transactions. (First Amended Complaint, ("FAC"), dkt. 32 ¶¶ 11–12.) The premise was simple: swipe your credit card and let the machine scan your index finger, and the next time you buy groceries or gas, you won't need to bring your wallet—you'll just need to provide your fingerprint. But by the end of 2007, Pay By Touch had

filed for bankruptcy. (*Id.* ¶ 12.) When Solidus, Pay By Touch's parent company, began shopping its database of Illinois consumers' fingerprints as an asset to its creditors, a public outcry erupted.[3] Though the bankruptcy court eventually ordered Pay By Touch to destroy its database of fingerprints (and their ties to credit card numbers), the Illinois legislature took note of the grave dangers posed by the irresponsible collection and storage of biometric data without any notice, consent, or other protections. *See* Ill. House Transcript, 2008 Reg. Sess. No. 276.

Recognizing the "very serious need" to protect Illinois citizens' biometric data—which includes retina scans, fingerprints, voiceprints, and scans of hand or face geometry—the Illinois legislature unanimously passed BIPA in 2008 to provide individuals recourse when companies fail to appropriately handle their biometric data in accordance with the statute. (*See* FAC ¶ 13; 740 ILCS 14/5.) Thus, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information. . . . . "

740 ILCS 14/15(b). BIPA also establishes standards for how companies must handle Illinois consumers' biometric data. For example, BIPA requires companies to develop and comply with a written policy establishing a retention schedule and guidelines for permanently destroying

---

[3]    *See*, *e.g.*, Meg Marco, *Creepy Fingerprint Pay Processing Company Shuts Down*, CONSUMERIST, available at https://goo.gl/rKJ8oP (last accessed Jan. 3, 2022); Matt Marshall, *Pay By Touch In Trouble, Founder Filing For Bankruptcy*, VENTURE BEAT, available at http://goo.gl/xT8HZW (last accessed Jan. 3, 2022).

biometric data. 740 ILCS 14/15(a). To enforce the statute, BIPA provides a civil private right of action and allows for the recovery of statutory damages in the amount of $1,000 for negligent violations—or $5,000 for willful violations—plus costs and reasonable attorneys' fees. *See* 740 ILCS 14/20.

As the Illinois Supreme Court assessed the legislature's intent in passing BIPA, the statute:

> vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. . . . These procedural protections are particularly crucial in our digital world because technology now permits the wholesale collection and storage of an individual's unique biometric identifiers—identifiers that cannot be changed if compromised or misuse. When a private entity fails to adhere to the statutory procedures . . . the right of the individual to maintain [his or] her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized. This is no mere technicality. The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1206 (Ill. 2019) (internal citations and quotations omitted).

### B.     Plaintiff's Allegations and Defendant's POS System

Plaintiff claims that her former employer—Charley's Philly Steaks, located in Schaumburg, Illinois—used a ParTech point-of-sale system with a finger scanner attached to authenticate and monitor her and other Illinois employees' working hours. (FAC ¶¶ 22, 29, 45.) A POS system is a combination of hardware and software that allows customer-facing businesses to accept payments from customers, keep track of sales, and importantly for purposes of this case, track their employees' working hours. ParTech offers a POS system to its customers—who are almost exclusively restaurants—that has a finger scanner attached (shown below) allowing employees to clock in and out of work by scanning their finger.

5




Plaintiff alleges that she and thousands of other restaurant employees across Illinois were required to scan their fingerprints into ParTech's POS system to clock in and out of work at their respective employers' restaurants. (*Id.* ¶¶ 22, 29.) What Plaintiff did not know, and what ParTech did not notify her of, Plaintiff alleges, was that ParTech *itself* then collected her biometric data through the POS system's cloud-based software. (*Id.* ¶¶ 1, 30–33, 45–51.) Besides failing to notify her and other Illinois employees that it was collecting biometric data, Plaintiff alleges that ParTech failed to seek informed consent. (*Id.* ¶¶ 30, 32, 41–43, 47–49.) Plaintiff further alleges that ParTech failed to develop or comply with any written policy for permanently destroying employees' biometric information. (*Id.* ¶¶ 31, 50.) Defendant denies that it has engaged in any wrongdoing. (*See* Def.'s Ans., dkt. 35.)

### C. Litigation, Negotiation, and Settlement

Plaintiff Kandice Neals originally filed this putative class action on March 21, 2019, against ParTech's parent company, PAR Technology Corp. ("PAR"), in the Circuit Court of Cook County, Illinois, alleging that PAR had violated BIPA. On August 22, 2019, PAR removed the case to this Court. (Dkt. 1.)

PAR then moved to dismiss the complaint, contending, *inter alia*, that (1) BIPA does not apply to third-party vendors of biometric technology like PAR; and (2) because Neals had not alleged, at that time, that she scanned her fingerprints into PAR's system *in Illinois*, her claim

was barred by Illinois' extraterritoriality doctrine. (*See* dkt. 19.) After full briefing, (*see* dkts. 25, 29), the Court granted PAR's motion—solely on extraterritoriality grounds—without prejudice and allowed Plaintiff to amend her complaint. (Dkt. 30.) On January 15, 2020, Plaintiff filed an amended complaint specifying that she had scanned her fingerprints in Illinois, and she substituted in ParTech as the defendant. (Dkt. 32.) On January 29, 2020, ParTech filed an answer to Plaintiff's amended complaint in which ParTech denied liability and asserted fifteen affirmative and other defenses. (Dkt. 35.)

After a status hearing on February 25, 2020, the Parties began written discovery, exchanging their first sets of interrogatories and requests for production in early March of 2020. (Declaration of Schuyler Ufkes ("Ufkes Decl."), attached hereto as Exhibit 2, at ¶ 3.) Plaintiff responded to Defendant's written discovery requests on April 8, 2020, and Defendant responded to Plaintiff's requests on June 19, 2020 and made its first document production a week later, on June 26, 2020. (*Id.*) On July 28, 2020, Plaintiff served a third-party subpoena to Cross Match Technologies, Inc.—the manufacturer of the finger scanning hardware at issue. (*Id.*) Over the next month, the Parties met and conferred numerous times regarding deficiencies Plaintiff identified in Defendant's responses. (*Id.*) Although Defendant provided supplemental responses on August 10, 2020, Plaintiff ultimately moved to compel certain written discovery from Defendant on August 14, 2020, with the primary issue being that ParTech refused to provide any discovery related to Plaintiff's class claims. (Dkt. 65.) The Court granted Plaintiff's motion in part on September 9, 2020, compelling Defendant to produce class-related discovery. (Dkt. 71.) The same day Plaintiff moved to compel, ParTech moved for judgment on the pleadings, requesting that the Court sever and remand Plaintiff's BIPA claims in light of *Bryant v. Compass*

*Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020). (Dkt. 63.) After a full briefing, the Court denied ParTech's motion on February 9, 2021. (Dkt. 94.)

On September 24, 2020, Plaintiff served her second set of written discovery requests to Defendant, to which Defendant responded on January 6, 2021. (Ufkes Decl. ¶ 4.) Before responding, Defendant moved to stay proceedings on December 28, 2020, pending a decision by the Illinois Appellate Court on the applicable statute of limitations for BIPA claims. (Dkt. 85.) The Court denied the Defendant's motion after full briefing. (*See* dkts. 89, 90, 94.)

Meanwhile, in early October of 2020, the Parties began to explore the potential for a class-wide settlement and exchanged further informal discovery related to the size and composition of the putative class. (Ufkes Decl. ¶ 5.) For over a year, the Parties engaged in a series of arm's-length negotiations. (*Id.*) After many settlement discussions, including a conference call with Magistrate Judge Weisman, the Parties agreed in March of 2021 to participate in a formal mediation. (Dkt. 96.) On April 28, 2021, the Parties attended a full-day, formal mediation session with the Honorable Stuart E. Palmer (Ret.) of JAMS in Chicago. (Ufkes Decl. ¶ 5.) The Parties' settlement negotiations lasted throughout the day, with the Parties ultimately reaching an agreement in principle at the end of the session but with a few material terms of the settlement still to be negotiated. (*Id.*) After two months of additional negotiation on the outstanding material terms and the exchange of additional informal discovery, the Parties executed a binding Memorandum of Understanding on June 30, 2021. (*Id.*) The Parties then prepared and negotiated the final terms of the settlement over the next six months, ultimately executing the final Settlement Agreement on December 23, 2021. (*Id.*)

While the Parties negotiated the Settlement, Defendant also reached out to its customers to collect mailing addresses for the Settlement Class members to effectuate direct notice of the

Settlement. (*See* dkt. 116.) Twelve customers refused to voluntarily provide addresses to Defendant, so Plaintiff served subpoenas *duces tecum* to all twelve customers on December 7, 2021, seeking their employees last known U.S. mail addresses. Plaintiff intends to move to compel any customers who fail to respond.

## III.    TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Stipulation of Class Action Settlement, and are briefly summarized here:

### A.    Class Definition

The proposed Settlement Class includes all persons who scanned their fingers in the State of Illinois through a scanner attached to a point-of-sale system issued, leased, or sold by ParTech, Inc., and for whom any alleged biometric data (including without limitation any alleged biometric identifiers or any alleged biometric information) relating to that scan was shared with or stored by Defendant, between March 21, 2014 and the date of the Preliminary Approval Order. (Agreement § 1.26.) Excluded from the Settlement Class are: (1) any Judge or Magistrate presiding over this action and members of their families, (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, (3) persons who executed Defendant's e-consent or a written release from the person's employer that releases Defendant or the licensor or service provider of the employer's timekeeping software or POS system, before any alleged biometric data relating to the person's finger scan was shared with or stored by Defendant, (4) persons who properly execute and file a timely request for exclusion from the Settlement Class, and (5) the legal representatives, successors, heirs, or assigns of any such excluded persons. (*Id.*)

Individuals who executed a written release as described in the third exclusion are excluded from the Settlement Class because they provided ParTech or their employer a form of

written consent for ParTech to collect their biometric data, before they ever scanned their finger, and thus do not have BIPA claims similar to Plaintiff and the Settlement Class.

### B. Settlement Payments

The Settlement provides that ParTech will establish a $790,000.00 non-reversionary Settlement Fund from which each Settlement Class Member who submits a valid claim will be entitled to a *pro rata* portion after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive award, if approved by the Court. (*Id.* §§ 1.12, 1.28, 1.29, 2.1(a).) Based on claims rates in similar BIPA class settlements, which typically range between 10-20%,[4] Class Counsel estimates that each Class Member who submits a claim will receive a net payment of approximately $650 to $1,300.

Any uncashed checks or electronic payments unable to be processed within 90 days of issuance will, subject to Court approval, revert to the Southern Smoke Foundation's Chicago Restaurant Worker Relief Fund (the "Relief Fund")—a fund "created to help Chicago restaurant, bar and coffee shop workers who are experiencing hardship from the COVID-19 crisis"—as *cy pres* recipient, or any alternative *cy pres* recipient the Court may select. (*Id.* § 2.1(f).) Specifically, the Relief Fund provides "emergency relief grants based on need to these workers who have lost wages or employment due to the shutdown for the pandemic."[5] Because the Settlement Class here is made up of almost exclusively Illinois restaurant workers who scanned

---

[4]     *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-3747-JD, 2021 WL 757025, at *1 (N.D. Cal. Feb. 26, 2021) (22% claims rate); *Sekura v. L.A. Tan Enters., Inc.*, No. 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (15% claims rate); *Kusinski v. ADP LLC*, No. 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) (13% claims rate); *Thome v. Novatime Tech., Inc.*, No. 19-cv-6256 (N.D. Ill. Mar. 8, 2021) (10% claims rate); *Prelipceanu v. Jumio Corp.*, No. 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (5% claims rate).

[5]     *Chicago Restaurant Workers Relief Fund*, available at https://southernsmoke.org/chicago-relief-fund (last accessed Jan. 3, 2022).

their finger on a ParTech POS system at work, reverting any residual settlement funds to the Relief Fund is the best way to get those funds back into the hands of Settlement Class Members, at best, or, at worst, to other Illinois restaurant workers who share their interests, including the hardships their industry experienced as a result of COVID-19. Neither Plaintiff, Defendant, Class Counsel, or Defendant's Counsel (or any partner of their respective law firms) have any relationship, pecuniary or otherwise, with the Southern Smoke Foundation. No portion of the Settlement Fund will revert back to Defendant. (Agreement § 1.28.)

### C. Prospective Relief

After Plaintiff filed this suit, ParTech (a) made available on its website a written policy establishing a retention and destruction schedule for biometric data, and (b) implemented an e-consent program that displays a notice and consent form on screen to employees who use ParTech's POS system. (*Id.* § 2.2.) Under the Settlement, ParTech has formally agreed maintain its publicly-available retention and destruction schedule and obtain e-consent prior to receiving any alleged biometric data going forward. (*Id.*) Finally, ParTech has agreed to destroy the biometric data of Settlement Class Members in its possession within thirty (30) days of a customer providing ParTech notice that the Settlement Class Member's alleged biometric data should be deleted. (*Id.*)

### D. Payment of Settlement Notice and Administrative Costs

Defendant has agreed to pay from the Settlement Fund all expenses incurred by the Settlement Administrator in, or relating to, administering the Settlement, providing Notice, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing Settlement Payments, and any other related expenses. (*Id.* § 1.24.)

E. **Payment of Attorneys' Fees, Costs, and Incentive Award**

As part of the Settlement, Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court by petition. (*Id.* § 8.1.) Proposed Class Counsel has agreed to limit its request for fees to 35% of the Settlement Fund, with no consideration from Defendant and no "clear-sailing agreement" so Defendant may challenge the amount requested. (*Id.*) Defendant has also agreed to pay Plaintiff an incentive award in the amount of $5,000 from the Settlement Fund, subject to Court approval, in recognition of her efforts as Class Representative. (*Id.* § 8.2.) Plaintiff will move for these payments via a separate request after preliminary approval.

F. **Release of Liability**

In exchange for the relief described above, the Settlement Class Members will release ParTech, Inc., PAR Technology Corporation, and their related entities from all claims relating to ParTech's collection, possession, or storage of biometric data through the use of a scanner attached to Defendant's POS systems at Defendant's customers' facilities located in the State of Illinois, including BIPA claims. (*Id.* §§ 1.20, 1.21, 3.) ParTech's customers—specifically, Illinois-based employers that use a finger scanner attached to ParTech's POS system—are explicitly excluded from the Settlement and release. (*Id.* § 1.21.)

IV. **THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES**

Before the Court can preliminarily approve the proposed Settlement and direct notice to the Settlement Class, it must certify the class for settlement purposes, which requires a finding that the Court "will likely be able to…certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

620 (1997). District courts are given broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

To merit certification, the Settlement Class must first satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, because the Settlement provides for monetary relief, the Settlement Class must also satisfy the requirements of Rule 23(b)(3): that (i) common questions of law or fact predominate over individual issues and (ii) a class action is the superior device to resolve the claims. *Amchem*, 521 U.S. at 615–16. Finally, a certified class must be ascertainable; that is, "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As explained below, the proposed Settlement Class satisfies all the Rule 23(a) and 23(b)(3) prerequisites and is ascertainable, and thus, should be certified for settlement purposes.

**A.    The Numerosity Requirement is Satisfied.**

A class action may proceed when the proposed class "is so numerous as to render joinder impractical." Fed. R. Civ. P. 23(a)(1). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (citing collected Seventh Circuit cases). While there is no magic number at which joinder becomes unmanageable, courts have typically found that numerosity is satisfied when the class comprises forty (40) or more people. *See*, *e.g.*, *id.* (certifying class of 120 members). Here, the proposed Settlement Class is sufficiently numerous, as Defendant has confirmed by declaration that approximately 3,560 individuals fall within the Settlement Class

definition. (*See* Declaration of Paul Rubin, ("Rubin Decl."), attached hereto as Exhibit 4, at ¶ 4.) The numerosity requirement is readily satisfied.

### B. Common Issues of Fact and Law Predominate.

Rule 23(a)(2) instructs that a class may be certified only if there exist "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Where, as here, the class seeks monetary relief, the common questions must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). *See also Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately…"). Common questions are those "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotations omitted). As such, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (internal quotations omitted). When "the defendant's allegedly injurious conduct differs from plaintiff to plaintiff . . . no common answers are likely to be found." *Id.* But when "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," class treatment is appropriate. *Id.*

Here, common issues of law and fact certainly predominate. Plaintiff's and the proposed Settlement Class's claims are based upon the same common contention and course of alleged conduct by ParTech: that it allegedly violated BIPA by collecting and storing the Settlement Class's biometric data without obtaining informed written consent or establishing a publicly-

available retention policy. (*See* FAC ¶¶ 20–24, 30–33.) This contention raises several issues of law and fact common to the Settlement Class, including: (1) whether the finger scan information collected, captured, or otherwise obtained from Plaintiff and the Settlement Class constitutes "biometric identifiers" or "biometric information" (as defined by 740 ILCS 14/10) subject to BIPA; (2) whether ParTech properly informed Plaintiff and the Settlement Class of its purposes for collecting, using, and storing their biometric data, 740 ILCS 14/15(b); (3) whether ParTech obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Settlement's Class's biometric data, *id.*; (4) whether ParTech developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric data, 740 ILCS 14/15(a); (5) whether ParTech complied with any such written policy (if one existed), (6) whether ParTech used Plaintiff's and the Settlement Class's fingerprints to identify them, and (7) whether ParTech's alleged violations of BIPA were committed negligently or recklessly, 740 ILCS 14/20 (providing $1,000 in damages per negligent violation or $5,000 in damages per willful violation).

Because answering each of these questions would resolve all Class Members' claims in one stroke, and no individualized issues (to the extent there are any) could defeat this overwhelming commonality, predominance is satisfied. *See Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *9 (N.D. Ill. Aug. 1, 2018) (predominance requires that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating individual issues.") (internal quotations omitted).

## C. The Typicality Requirement is Satisfied.

The next prerequisite—typicality—requires that a class representative has claims that are typical of those of the putative class members. Typicality examines whether there is "enough

congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). Where a named plaintiff's claim "arise[s] from the same events or course of conduct that gives rise to the putative class members' claims," typicality is satisfied. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). In other words, when the basis of the suit is the defendant's systematic business practices toward the named plaintiff and the members of the proposed class, typicality is generally satisfied.

Here, there is nothing separating Plaintiff's BIPA claim from that of any other member of the Settlement Class. She alleges that, like every other member, she (i) was an employee of one of ParTech's customers, (ii) used ParTech's POS system which required her to scan her finger, (iii) was identified by ParTech's POS system each time she scanned her finger, (iv) had her fingerprint data transmitted to ParTech to be stored, (v) was never given any BIPA-compliant notices, disclosures, or requests for consent from ParTech, and (vi) never signed a written release with her employer authorizing ParTech's collection of her biometric data. (*See* FAC ¶¶ 21-24, 28-33.)

Because she was subject to the same conduct and practices by ParTech as everyone else, Plaintiff's BIPA claims will "stand or fall on the same facts as the claims of the putative class members." *Ziemack v. Centel Corp.*, 163 F.R.D. 530, 534 (N.D. Ill. 1995). Plaintiff's claims are therefore typical of the Settlement Class's claims.

### D. The Adequacy Requirement is Satisfied.

The final Rule 23(a) prerequisite—adequacy—requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is twofold: "'adequacy of the named plaintiff's counsel, and the

adequacy of representation provided in protecting the different, separate, and distinct interest[s]' of the class members." *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)). To assess adequacy, courts examine whether "the named plaintiff has [(1)] antagonistic or conflicting claims with other members of the class; or (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485, 490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008)) (internal quotation marks omitted).

Here, both Plaintiff and proposed Class Counsel have and will continue to adequately represent the Settlement Class. Because Plaintiff suffered the same alleged injury as every other member of the Settlement Class—the collection and storage of her biometric data without her informed written consent during the class period (FAC ¶¶ 29–34)—her interest in redressing Defendant's alleged violations of BIPA is identical to the interests of all other members of the Settlement Class. Thus, Plaintiff does not have any interests antagonistic to those of the Settlement Class. Consequently, Plaintiff's interests are entirely representative of and consistent with the interests of the Settlement Class.

Additionally, proposed Class Counsel Edelson PC have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Edelson PC is a national leader in high stakes plaintiffs' work ranging from class and mass actions to public client investigations and prosecutions. (*See* Firm Resume of Edelson PC, attached as Exhibit 2-A to Ufkes Decl.) The firm holds records for the largest jury verdict in a privacy case ($925 million), the largest consumer privacy settlement ($650 million), and the largest Telephone Consumer

Protection Act ("TCPA") settlement ($76 million). (*Id.*) The firm filed the first-ever class action under BIPA against Facebook, *Licata v. Facebook, Inc.*, No. 2015-CH-05427 (Cir. Ct. Cook Cnty. Apr. 1, 2015), secured the first-ever adversarially-certified BIPA class in that case and defended the ruling in the Ninth Circuit, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (upholding adversarial BIPA class certification), *cert. denied Facebook, Inc. v. Patel*, 140 S. Ct. 937 (2020), and obtained final approval of a settlement agreement with Facebook to resolve the case for $650 million. *In re Facebook Biometric Info. Priv. Litig.*, 2021 WL 757025, at *1 ("Overall, the settlement is a major win for consumers in the hotly contested area of digital privacy."). The firm is responsible for the first-ever BIPA settlement, too, *see Sekura v. L.A. Tan Enters., Inc.*, No. 2015-CH-16694, and has paved the way to many of the favorable appellate decisions for BIPA plaintiffs. *Sekura v. Krishna Schaumburg Tan, Inc.*, 115 N.E. 3d 1080 (Ill. App. Ct.) (pre-*Rosenbach*, holding violation of statute sufficient for plaintiff to be "aggrieved"); *Rottner v. Palm Beach Tan, Inc.*, 2019 IL App (1st) 180691-U (violation of statute sufficient to claim liquidated damages); *McDonald v. Symphony Bronzeville Park LLC*, 2020 IL App (1st) 192398, *appeal allowed,* 163 N.E.3d 746 (Ill. 2021) (holding that the exclusivity provisions of the Illinois Workers' Compensation Act ("IWCA") do not bar employee BIPA claims against employers); *Sosa v. Onfido, Inc.*, No. 21-1107, 2021 WL 3523197, at *1 (7th Cir. Aug. 11, 2021) (affirming district court's denial of motion to compel arbitration).

The firm was recognized by Law360 as a "Practice Group of the Year" for 2020 in two categories—Class Action and Cybersecurity[6]—and for three years running as an "Illinois

---

[6]      *Law360 Names Practice Groups of the Year*, Law360 (Nov. 29, 2020), https://www.law360.com/articles/1327476/law360-names-practice-groups-of-the-year; Grace Dixon Hanson, *Class Action Group Of The Year: Edelson*, Law360 (Dec. 3, 2020), https://www.law360.com/articles/1328395/class-action-group-of-the-year-edelson; Joyce

Powerhouse," alongside Kirkland & Ellis, Sidley Austin, Mayer Brown, Dentons, and Jenner & Block.[7] Edelson has been the only plaintiffs' firm, as well the only firm with fewer than 100 attorneys, to make the latter list. Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Ufkes Decl. ¶ 7.)

Proposed Class Counsel Fish Potter Bolaños, P.C. is a deeply experienced class action and employment law firm. (*See* Declaration of David Fish ("Fish Decl."), attached hereto as Exhibit 3, at ¶ 3.) With respect to BIPA litigation, its attorneys have been involved in over 75 cases—primarily in the employment context—and have helped recover tens of millions of dollars for Illinois workers. *See, e.g.*, *O'Sullivan, et. al. v. WAM Holdings, Inc.*, No. 2019-CH-11575 (Cir. Ct. Cook Cnty.) ($5.85 million); *Davis v. Heartland Emp. Servs.*, No. 19-cv-00680 (N.D. Ill.) ($5.4 million); *Johnson v. Resthaven/Providence Life Servs.*, No. 2019-CH-1813 (Cir. Ct. Cook Cnty.) ($3 million); *Burlinski v. Top Golf USA Inc.*, No. 19-cv-06700, dkt. 103 (N.D. Ill. Oct. 13, 2021) ($2.6 million); *Diller v. Ryder Integrated Logistics*, No. 2019-CH-3032 (Cir. Ct. Cook Cnty.) ($2.25 million); *Jones v. Rosebud Rests., Inc.*, No. 2019-CH-10620 (Cir. Ct. Cook Cnty. Aug. 17, 2020) ($2.1 million); *Martinez v. Nandos Rest. Grp., Inc.*, No. 19-cv-07012 (N.D. Ill. Oct. 27, 2020) ($1.78 million). Their work has been, and will continue to be, directly beneficial to the claims of Plaintiff and the Settlement Class through the pendency of this action.

---

Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*, Law360 (Dec. 8, 2020), https://www.law360.com/articles/1327009/cybersecurity-privacy-group-of-the-year-edelson.

[7] Lauraann Wood, *Illinois Powerhouse: Edelson*, Law360 (Sept. 3, 2019), https://www.law360.com/articles/1193728/illinois-powerhouse-edelson; Diana Novak Jones, *Illinois Powerhouse: Edelson PC*, Law360 (Aug. 28, 2018), https://www.law360.com/articles/1076447/illinois-powerhouse-edelson-pc; Diana Novak Jones, *Illinois Powerhouse: Edelson PC*, Law360 (October 5, 2017), https://edelson.com/wp-content/uploads/2016/05/Illinois-Powerhouse-Edelson-PC.pdf.

Accordingly, because Plaintiff will fairly and adequately protect the interests of the class, and because she and the Settlement Class are amply represented by qualified counsel, the adequacy requirement is satisfied.

### E.    A Class Action is a Superior Method of Resolving the Controversy.

Rule 23(b)(3) additionally requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule sets forth four criteria germane to this requirement. All counsel in favor of certification.

The first factor, individual class members' interest in individually controlling the action, Fed. R. Civ. P. 23(b)(3)(A), weighs in favor of certification. There is no indication any Class Member has brought an individual BIPA suit against ParTech and, given Plaintiff's allegation that ParTech did not institute any BIPA-specific policies or develop written materials for individuals addressing their statutory rights, (FAC ¶¶ 20–26), it's likely that "many class members may be unaware of their rights under [BIPA]." *Bernal v. NRA Grp. LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Both considerations support the notion that class members' interests in individual suits is minimal. *Id.* Further, while BIPA provides for liquidated damages, the relatively modest recovery ($1,000 or $5,000, depending on whether a violation is negligent or reckless), compared to the high costs of retaining adequate counsel "is not likely to provide sufficient incentive for members of the proposed class to bring their own claims." *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (discussing the FDCPA's $1,000 statutory damages provision); *see also In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 549 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 937, 205 L. Ed. 2d 524 (2020) ("While not trivial, BIPA's statutory damages are not enough to incentivize individual plaintiffs given the high costs of

20

pursuing discovery on Facebook's software and code base and Facebook's willingness to litigate the case.").

The second factor, the extent and nature of other proceedings, Fed. R. Civ. P. 23(b)(3)(B), also weighs in favor of certification. There are no other known actions that have progressed to any extent addressing the conduct alleged here.[8] Thus, "'the extent and nature of any litigation concerning the controversy already begun by or against class members' is not a factor" counseling against certification. *Bernal*, 318 F.R.D. at 76 (quoting Fed. R. Civ. P. 23(b)(3)(B)).

Third, it is desirable to concentrate the litigation—and to undergo the settlement approval process—in this forum, *see* Fed. R. Civ. P. 23(b)(3)(C), given that this case concerns a proposed class of plaintiffs who scanned their fingers on POS systems throughout Illinois and whose biometric data was allegedly sent to ParTech from Illinois. *Barnes*, 310 F.R.D. at 562 (third factor met where defendant conducted business and the events giving rise to plaintiffs' claims occurred within the court's district); *Ramirez v. GLK Foods, LLC*, No. 12-C-210, 2014 WL 2612065, at *9 (E.D. Wis. June 11, 2014) (events in forum giving rise to lawsuit support concentration in the forum).

Finally, the fourth factor—"the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D)—also weighs in favor of certification, as no management problems ought to arise here. There is clear predominance of common issues, as explained above, and every member of the Settlement Class can be identified through ParTech's or its customers' records,

---

[8]     Plaintiff is aware of only two pending BIPA cases against ParTech's customers, *see Snider v. Heartland Beef, Inc.*, No. 4:20-cv-04026 (C.D. Ill.) and *Sosa v. Mod Super Fast Pizza, LLC*, No. 2020-CH-01737 (Cir. Ct. Cook Cnty. Ill.), but neither of those cases involve claims against ParTech—they allege separate BIPA violations only against ParTech's customers—and the Settlement expressly excludes those customers from the release. (*See* Agreement § 1.21.)

streamlining the notice process. *Bernal*, 318 F.R.D. at 76; 2 NEWBERG ON CLASS ACTIONS § 4:72 (5th ed. 2011) ("Courts generally hold that if the predominance requirement is met, then the manageability requirement is met, as well."). Thus, consolidating Class Members' claims in one proceeding will generate economies of time and expense and promote legal uniformity.

More generally, Rule 23's superiority standard requires that the court recognize "the costs *and benefits* of the class device." *Mullins*, 795 F.3d at 663 (emphasis in original). Here, requiring individual cases "would make no sense," because "each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery." *Bernal*, 318 F.R.D. at 76. The class action device, on the other hand, allows the Court to swiftly evaluate common issues surrounding ParTech's alleged violations of BIPA in a single proceeding, generating a uniform result that will apply to all similarly situated persons. *Suchanek*, 764 F.3d at 759 (stating that "promot[ing] uniformity of decision as to persons similarly situated" is a goal of class actions) (quoting *Amchem*, 521 U.S. at 615). Without class-wide adjudication of these claims, thousands of workers would have to sue one-by-one—or at best, employer-by-employer, nearly fifty times over—to recover on these relatively modest individual claims. *See* 740 ILCS 14/20(1). The cost of litigating BIPA claims on an individual basis—including the cost of discovery, motion practice, and trial—would be prohibitively expensive. Moreover, such individual claims would clog the courts with an influx of separate actions, further delaying the possibility of relief. Rule 23's superiority requirement is satisfied.

## F. The Class Is Ascertainable.

Finally, the proposed Settlement Class definition meets Rule 23's implicit requirement of "ascertainability," which requires that a class "be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Whether a class is ascertainable depends on 'the adequacy of

the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class,'" although Plaintiff here would meet both standards. *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 581 (N.D. Ill.) (citing *Mullins*, 795 F.3d at 658).

Here, the Settlement Class definition is based solely on objective criteria: either an individual (i) scanned their finger on a ParTech POS system at an Illinois facility during the relevant time period and (ii) had their biometric data shared with or stored by ParTech (iii) without first executing a release of ParTech, or they did not. (Agreement § 1.26.) Moreover, Settlement Class members can be readily identified through ParTech's and its customers' records. (*See* Rubin Decl. ¶ 4.) Because the class is "defined clearly [and] membership [is] defined by objective criteria," it is ascertainable. *Mullins*, 795 F.3d at 657.

For these reasons, maintenance of this action as a class action is appropriate. The Court should therefore certify the Settlement Class for settlement purposes.

## V.    PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [with the] ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above,[9] proposed Class Counsel have extensive experience in litigating

---

[9]    Courts frequently analyze counsel's adequacy under both 23(a)(4) and 23(g), which is why it is discussed twice here. 1 NEWBERG ON CLASS ACTIONS § 3:56 (5th ed. 2011); *Gomez v.*

consumer privacy class actions in general, and BIPA class actions specifically; have thoroughly investigated the claims at issue; and have the resources necessary to conduct this litigation. (*See* Ufkes Decl. ¶ 7.) And because of their efforts here, proposed Class Counsel have secured a Settlement that provides extraordinary monetary relief in a BIPA case against a technology vendor—who are typically released in employer cases without providing any additional benefit to the class—and which provides the prospective relief necessary to protect privacy interests going forward. Thus, the Court should appoint J. Eli Wade-Scott and Schuyler Ufkes of Edelson PC and David Fish of Fish Potter Bolaños, P.C. as Class Counsel.

## VI. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval of all proposed class action settlements. The procedure for review of a proposed class action settlement is a familiar two-step process—preliminary and final approval—which was codified under Rule 23(e) relatively recently. Fed. R. Civ. P. 23(e)(1)-(2) (eff. Dec. 1, 2018); *see* 4 NEWBERG ON CLASS ACTIONS § 13:1 (5th ed. 2011). The first step—preliminary approval—is a pre-notification inquiry to determine whether the court "will likely be able to approve the proposal under Rule 23(e)(2)," finding that it is sufficiently fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B). In other words, at this stage, the Court needs to determine whether the proposed settlement is "within the range of possible approval" such that there is "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Once preliminary approval is granted, class members are notified of the

---

*St. Vincent Health, Inc.*, 649 F.3d 583, 592–93 (7th Cir. 2011), *as modified* (Sept. 22, 2011) (reviewing counsel's adequacy under Rule 23(a)(4) but mentioning the Rule 23(g) factors in its analysis).

settlement, and the court and parties proceed to the second step: the final fairness determination. *Id.* at 621.

While "[f]ederal courts naturally favor the settlement of class action litigation," a multi-factor test must be used to determine whether the proposed settlement is likely to be found fair, reasonable, and adequate. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)) (internal quotations omitted). Rule 23(e)(2) directs courts to consider whether: (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's-length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).[10]

The proposed Settlement in this case—which creates a $790,000 non-reversionary fund for the 3,560 class members, allows them to retain their BIPA claims against their employers, and ensures ParTech will comply with BIPA going froward—easily satisfies these factors.

---

[10] Notably, the factors to be considered under the amended Rule 23 "overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *2 (S.D. Ill. Dec. 16, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). For this reason, decisions prior to the amendment can still provide guidance to the Court.

### A. Plaintiff Kandice Neals and Proposed Class Counsel Have Adequately Represented the Settlement Class.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment; *see Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506 at *3 (M.D. Ga. Jan. 17, 2019). In considering this factor, courts are to examine whether plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. Ultimately, this factor is generally satisfied where the named plaintiff participated in the case diligently, and where class counsel fought hard on behalf of plaintiff and the class throughout the litigation. *See Snyder*, 2019 WL 2103379, at *4.

Here, Plaintiff Neals has been involved in nearly every aspect of this case, including by helping her attorneys investigate her BIPA claims, preparing and reviewing both the Class Action Complaint and First Amended Complaint before filing, preserving and producing documents in discovery, responding to ParTech's interrogatories, conferring with her counsel throughout the litigation, and reviewing and approving the Settlement Agreement before signing it. (Ufkes Decl. ¶ 8.) Without Ms. Neals stepping up to represent the class and taking on these tasks as the lead plaintiff, the relief secured for the Settlement Class wouldn't have been possible. Given her efforts and aligned interest with the class, there can be no doubt that Ms. Neals has only acted in the best interest of the Settlement Class and has adequately represented them.

26

Likewise, proposed Class Counsel's performance in this case demonstrates that their representation has been beyond adequate, especially when considering (i) the investigation and discovery conducted and (ii) the benefits of the Settlement compared to similar privacy settlements, including those under BIPA. First, the considerable amount of investigation and discovery completed by Plaintiff's counsel ensured that they had adequate information to assess the strength of the case and engage in settlement discussions. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the court and parties have enough information "to evaluate the merits of this case"). Prior to even filing this case, Plaintiff's counsel investigated ParTech and the technology it used to allegedly collect the class members' fingerprint data. (Ufkes Decl. ¶ 2.) Once the case was filed, Plaintiff's counsel pressed forward with formal written discovery as soon as possible. When ParTech did not fully respond to Plaintiff's first set of discovery requests (for example, by withholding *all* documents and information related to class certification issues), Plaintiff's counsel moved to compel. (Dkt. 65.) After successfully compelling nearly all of the key discovery sought in Plaintiff's motion, (dkt. 71), Plaintiff's counsel served a second set of discovery requests to ParTech and subpoenaed and received documents from third-party Cross Match Technologies, Inc.—the manufacturer of the finger scanning hardware at issue. In addition to formal written discovery, the Parties exchanged informal discovery concerning the size and composition of the class to aid in their settlement negotiations. (*See* Ufkes Decl. ¶ 5.) After over two years of investigation and discovery, the facts underlying Plaintiff's allegations in this case, though by no means their legal import, are now substantially undisputed: through its cloud-based POS system with a finger scanner attached, ParTech stored the finger scan data of 3,560 of its customers'

27

employees which was used to identify those employees, without obtaining any written consent forms or making any of the disclosures mandated by BIPA. *See Young v. Rolling in the Dough, Inc.*, 2020 WL 969616, at \*5 (N.D. Ill. Feb. 27, 2020) (approving settlement after it was reached as a result of "contested litigation for nearly two years" and the parties had "exchanged sufficient information to fully evaluate the claims and defenses asserted in the case."); *In re AT & T Mobility*, 270 F.R.D. at 350 (approving settlement where "the focus of th[e] litigation appears to be more on legal than factual issues, and there is no indication that [more] formal discovery would have assisted the parties in devising the [p]roposed [s]ettlement [a]greement.").

In short, the issues in this litigation have crystallized sufficiently for Plaintiff and her counsel to assess the strengths and weaknesses of their negotiating position (based upon the litigation to date, the anticipated outcomes of oral fact discovery and expert discovery, and additional motion practice) and evaluate the appropriateness of any proposed resolution. *See Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at \*10 (N.D. Ill. Mar. 2, 2016) (concluding that "extensive formal discovery, when measured against the cost that would be incurred," would not place the parties in a better position than they are now to determine an appropriate settlement value).

Second, the Settlement achieved by Plaintiff's counsel is expected to provide the highest per-claimant payments in a BIPA settlement with a biometric technology vendor to date. ParTech has agreed to settle this case for $790,000.00 for a class of approximately 3,560 individuals that will be split equally—with no reversion to ParTech—between claiming Class Members. (*See* Agreement § 1.28.) Assuming a claims rate of 10-20%, the Settlement will result in a *net* payment (meaning after all fees and costs are deducted) of approximately $660 to $1,320 per Class Member. This amount dwarfs the amounts recovered in many other statutory privacy

class actions, particularly against a backdrop where settlements have commonly secured no relief to the Class or only *cy pres* relief. *See*, *e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member—where $10,000 in statutory damages were available per claim); *In re Google Buzz Priv. Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only settlement); *see also Frank v. Gaos*, 139 S. Ct. 1041, 1047–48 (2019) (Thomas, J., dissenting) ("Whatever role *cy pres* may permissibly play in disposing of unclaimed or undistributable class funds . . . *cy pres* payments are not a form of relief to the absent class members and should not be treated as such (including when calculating attorney's fees). And the settlement agreement here provided no other form of meaningful relief to the class.").

Moreover, most BIPA settlements in the employment context frequently provide *no* relief at all for violations committed by third-party vendors of the biometric technology, like ParTech. Indeed, as far as proposed Class Counsel are aware, nearly every other BIPA settlement has released the vendor together with the employer, with no separate payment for the vendor's separate BIPA violations or promise of injunctive relief. *But see Fluker v. Glanbia Performance Nutrition, Inc.*, No. 2017-CH-12993 (Cir. Ct. Cook. Cnty.) (carving out third-party vendor, ADP, from release in BIPA settlement secured by Edelson PC); *Abusalem v. The Standard Mkt., LLC*, No. 2019 L 000517 (Cir. Ct. DuPage Cnty.) (carving out third-party vendor, Ceridian HCM, Inc., from release in BIPA settlement secured by Fish Potter Bolaños, P.C.). And when compared to the few other BIPA vendor settlements to date, this Settlement will provide, by far, the highest amount per claiming class member, considering its $790,000 fund for 3,560 class members. *See*

*Muniz v. Workwell Techs., Inc.*, No. 2019-CH-04061 (Cir. Ct. Cook Cnty.) ($900,000 fund for tens of thousands of class members, and allowing for employers to join the settlement for $1,000 per employee); *Thome v. Novatime Tech., Inc.*, No. 19-cv-6256 ($4.1 million fund for 62,000 class members, and assignment of insurance policy); *Kusinski*, No. 2017-CH-12364 ($25 million fund for approximately 320,000 class members). Against a backdrop where vendor claims are commonly released for nothing, this Settlement's estimated $660 to $1,320 net payments per Class Member is outstanding.

As your Honor is likely aware, there are now scores of BIPA class settlements between employees and their employers that similarly provide significant cash relief to the class—on average, over $1,000 per class member before fees and costs are deducted. *E.g.*, *Martinez*, No. 19-cv-07012 (fund constituting $1,000 per person with direct checks sent to all class members); *Edmond*, No. 2018-CH-09573 (same); *Watts v. Aurora Chicago Lakeshore Hosp. LLC*, No. 2017-CH-12756 (Cir. Ct. Cook Cnty.) (same); *Mazurkiewicz v. Mid City Nissan*, No. 2018-CH-09798 (Cir. Ct. Cook Cnty.) (fund constituting $1,250 per person with direct checks sent to all class members); *Fluker*, No. 2017-CH-12933 (fund constituting $1,300 per person with direct checks sent to all class members). But the employer settlements are not particularly useful comparators here for a few reasons. First, there are a host of defenses in vendor cases that aren't present in employer cases—like whether a vendor's so-called "passive" storage of biometric data on its servers constitutes collection under BIPA, and the additional challenge of adversarially certifying a class of employees who worked for dozens of different employers with different timekeeping policies—all of which must be considered when valuing vendor BIPA claims as compared to employer BIPA claims. Second, and most importantly, the Class Members here aren't foregoing their employer claims in favor of their vendor claims in any respect. Under the

Settlement, Class Members will retain all their rights to pursue claims against their respective employers for the employer's own possible BIPA violations. (Agreement § 1.21 (the Released Parties do not include "Defendant's customers (specifically, all Illinois-based employers that use a finger scanner attached to ParTech's POS system")).) This carve-out enables Class Members to vitiate the full scope of their privacy rights under BIPA, rather than, as in other cases, forcing Class Members to make a choice about which violations to pursue.

Finally, aside from the monetary relief, the non-monetary benefits created by the Settlement also demonstrate Plaintiff's and proposed Class Counsel's outstanding representation of the class. (*See id.* § 2.2.). ParTech has established—no doubt a result of Plaintiff filing this lawsuit—a publicly-available retention and destruction schedule for biometric data and a nationwide e-consent program that displays a notice and consent form on screen to workers who use ParTech's POS system before they can scan their finger. Under the Settlement, ParTech has formally agreed to maintain and comply with these policies going forward. (*Id.*) This prospective relief aligns perfectly with both the goals of BIPA and those of this lawsuit, as it will ensure that current and future Illinois workers are protected as the legislature intended.

If the Settlement is approved, the Settlement Class will reap its valuable benefits thanks to Plaintiff's and proposed Class Counsel's hard work pursuing this case and representing their interests. This factor is well satisfied.

### B. The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties.

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at arm's-length. Fed. R. Civ. P. 23(e)(2)(B). The answer here is easy: yes. Unlike many class action settlements "in which settlement negotiations begin before discovery even takes place," this case was contested through an adversarial and contentious process. *Charvat v. Valiente*, No. 12-cv-

31

05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct, 28, 2019). After actively litigating this case for nearly two years—which included fully briefing a motion to dismiss, a motion for judgment on the pleadings, a motion to compel discovery, and a motion to stay, and conducting substantial formal written discovery, both between the Parties and with third-party Cross Match Technologies—the Parties agreed in early October of 2020 that it was an appropriate time to explore meaningful settlement discussions. (*See* dkts. 77, 78.) *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where "the parties have vigorously defended their positions throughout the litigation, participated in two prior mediations, and engaged in discovery" prior to reaching settlement). Over the course of the next eight months, the Parties conducted arm's-length negotiations while continuing to vigorously litigate the case (*see, e.g.*, dkts. 82, 85, 89, 90, 94), including by conferring several times to try to resolve discovery disputes. Throughout the negotiation process, the Parties informally exchanged information regarding the size and composition of the class and attended an hour-long conference call with Magistrate Judge Weisman on January 21, 2021 to discuss the Parties' respective settlement positions and the possibility of a settlement conference. (*See* dkt. 91); (Ufkes Decl. ¶ 5.) These discussions ultimately led to a full-day, private meditation with Honorable Stuart E. Palmer (Ret.) of JAMS Chicago on April 28, 2021. (Ufkes Decl. ¶ 5.) With the assistance of Judge Palmer, the Parties reached agreement on several of the material deal points of the settlement, including the size of the settlement fund and its non-reversionary structure. (*Id*.) Over the next two months, the Parties continued to negotiate the remaining materials terms and exchanged additional informal discovery, which resulted in the Parties executing a binding Memorandum of Understanding on June 30, 2021. (*Id*.) The Parties then spent the next six months drafting and negotiating the finer

deal points of the final settlement agreement, which required submitting two issues unable to be resolved by the Parties to Judge Palmer for a binding determination. (*Id.*); (*see* dkt. 105.) After Judge Palmer resolved the issues, the Parties finalized and executed the Settlement Agreement on December 23, 2021. (Ufkes Decl. ¶ 5.) *See Young*, 2020 WL 969616, at *4 (finding the settlement agreement is "clearly" the product of arm's-length negotiations after it was agreed to after a contested motion, extensive discovery and discovery disputes, and a settlement conference).

The arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, provides significant cash payments to Settlement Class Members who submit a simple Claim Form, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's-length negotiation").

For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### C.    The Settlement Treats All Settlement Class Members Equally.

The next Rule 23(e)(2) factor considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, given that each Class Member has nearly identical BIPA claims for monetary and injunctive relief against

ParTech, the proposed Settlement treats each of them identically. In terms of monetary relief, ParTech has agreed to create a $790,000.00 non-reversionary Settlement Fund, from which each Class Member who submits a valid Claim Form will receive a single, *pro rata* cash payment. (Agreement §§ 1.28, 1.29, 2.1); *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). The Settlement also provides for identical prospective relief requiring ParTech to maintain its e-consent program and retention schedule for biometric data going forward, in a uniform manner. (Agreement § 2.2.) Further, each Class Member will release the same BIPA claims against ParTech, and all will retain their claims against their employers. (*Id.* §§ 1.20, 1.21, 1.22, 3.1.) Because the Settlement treats each member of the Settlement Class equally, this factor is well satisfied.

Likewise, the provision of a service award to Ms. Neals for serving as Class Representative is consistent with the equitable treatment of class members. The requested $5,000 service award appropriately reflects the work she's done for the Settlement Class, which as described above, included helping her attorneys investigate her and the class's claims, preparing and reviewing the pleadings, producing documents in discovery, responding to interrogatories, conferring with her counsel regularly, and reviewing the Settlement Agreement. Moreover, an award of this size is squarely in line with, and in many instances lower than, other service awards given to class representatives in BIPA cases. *See Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-2390, dkt. 69 (N.D. Ill. Apr. 27, 2021) (Pallmeyer, J.) ($5,000 service award); *Martinez*, 19-cv-07012, dkt. 63 ($7,500 service award) (Ellis, J.); *Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17-cv-8033, dkt. 103 (N.D. Ill. May 31, 2018) ($10,000 service award)

34

(Kennelly, J.). Given that Ms. Neals' efforts were key to securing the $790,000 Settlement Fund for the Settlement Class, the modest proposed service award is fully consistent with equity.

### D. The Relief Secured for the Settlement Class Is Adequate and Warrants Approval.

The final and most substantive factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 instructs courts to consider several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. *Id.* As explained below, each of these sub-factors demonstrate that the relief provided by the Settlement is excellent—well beyond adequate—and should be approved.

#### 1. The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval.

In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 amendment.

The Settlement here warrants approval because it provides immediate relief to the Settlement Class while avoiding potentially years of complex litigation and appeals and the risk that comes along with it. *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). For instance, shortly after the Parties reached the Settlement, the Illinois Appellate Court in *Tims v. Black Horse Carriers, Inc.* decided the long-contested issue of what statute of limitations applies to BIPA claims, ruling that a five-year limitations period applies to claims brought under Section 15(a) and (b) of BIPA—

the sections at issue here. 2021 IL App (1st) 200563. Had the Illinois Appellate Court found that a one-year limitation period applies to these claims, *Tims* would have been persuasive authority to time bar the vast majority of the putative class members' BIPA claims in this case. (*See* Agreement § 1.26 (settling a five-year class period).) Although Plaintiff remained confident a five-year period applied, the risk and delay of waiting for this issue—and every other issue of first impression presented by BIPA—to be resolved on appeal militates in favor of settlement here. Additionally, ParTech (like nearly every other BIPA defendant) was likely to argue that the information captured by its fingerprint scanners were not actually "biometric identifiers" or "biometric information" subject to BIPA, but some third category of finger scan information outside of BIPA's purview. Plaintiff again puts little stock in this argument, but it would need to be defeated at summary judgment or trial and remains an issue ungoverned by precedent.

Likewise, the Parties also would have been forced to litigate the issue of class certification adversarially. *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment (instructing courts to consider the likelihood of certifying the class for litigation in evaluating this sub-factor); *see also Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, at *6 (S.D. Cal. 2020) ("Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class…"). Although Plaintiff believes this case is amenable to class certification given Defendant's uniform conduct, *see In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. at 549 (certifying Rule 23(b)(3) class of Facebook users in Illinois for whom Facebook created and stored a face template), and that she would ultimately prevail on certification issues, that process is by no means risk-free. This Settlement provides excellent relief to the Settlement Class Members now, avoiding years of delay to resolve these questions.

Even if Plaintiff had succeeded at class certification, summary judgment and/or trial, Plaintiff expects that Defendant would have re-raised its arguments requesting a reduction in damages based on due process in light of the significant potential statutory damages at issue. (Dkt. 35 at 15-16); *see, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million). Given the significant exposure that ParTech faced, it is an essentially foregone conclusion that these issues would be pressed on appeal, further delaying relief.

Protracted litigation would also consume significant resources, including the time and costs associated with oral discovery, securing expert testimony on complex biometric and data storage issues, and again, motion practice, trial, and any appeals. It is possible that "this drawn-out, complex, and costly litigation process . . . would provide Class Members with either no in-court recovery or some recovery many years from now…" *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Because the proposed Settlement offers immediate—and substantial—monetary relief to the Settlement Class while avoiding the need for extensive and drawn-out litigation, preliminary approval is appropriate. *See*, *e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

## 2. The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval.

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while also ensuring that only "legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2011). Courts have held that requiring a claimant

37

to fill out a short and simple claim form is an appropriate way to balance these concerns, especially in settlements with non-reversionary funds. *See In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*, No. 8:10ML 02151 JVS, 2013 WL 3224585, at *18 (C.D. Cal. 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous."); *Schulte*, 805 F. Supp. 2d at 591 ("[T]he Court has reviewed the claim form and concludes that it is not unduly burdensome, long, or complex. All information called for on the form is required of the claims administrator in order for it to process claims."); 4 NEWBERG ON CLASS ACTIONS § 13:53.

The proposed Settlement here satisfies this factor by relying on well-established, effective methods for processing Class Members' Claim Forms and distributing the proceeds of the Settlement. The Settlement Fund will be distributed to Class Members who submit a short and simple Approved Claim Form, by mail or online, to the Settlement Administrator, Kroll Settlement Administration, LLC—an independent third-party with extensive experience handling the administration of settlement funds. (Agreement §§ 1.5, 1.25, 2.1, 5.1.) The online Claim Form also lets Class Members select to receive their Settlement Payment by Venmo, Zelle, Paypal, Prepaid Mastercard, ACH Direct Deposit, or check. (*Id.* § 1.5.) The Settlement Administrator will provide Class Members with resources (including a website, mailing address, and toll-free phone number) to contact the Settlement Administrator or Class Counsel directly, review and process the Claim Forms, and then disperse to Class Members their *pro rata* share of the Settlement Fund upon approval of the Court. (*Id.* §§ 1.29, 2.1, 5.1.)

38

### 3. The terms of the requested attorneys' fees are reasonable.

The third and final relevant sub-factor[11] considers the adequacy of the relief provided to the class taking into account "the terms of any proposed award of attorney's fees, including timing of payment…" Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, proposed Class Counsel plans to petition the Court for an award of reasonable attorneys' fees after the Settlement Class has received notice of the Settlement. The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method), and its limit on attorneys' fees (i.e., no more than 35% of the non-reversionary Settlement Fund) is reasonable and predicated on the outstanding relief provided to the Settlement Class. (Agreement § 8.1.) To be sure, the percentage-of-the-fund method has been used to determine a reasonable fee award in every BIPA class action settlement creating a common fund to date, and a 35% award will adequately capture the hypothetical *ex ante* agreement that the Settlement Class would have entered into with proposed Class Counsel had they sought them out in the market, given the risks in the case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011); *e.g.*, *Kusinski*, No. 2017-CH-12364 (awarding 35% of fund in vendor settlement); *Lopez-McNear v. Superior Health Linens, LLC*, No.19-cv-2390, dkt. 69 (awarding 35% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, dkt. 57 (N.D. Ill. Sept. 10, 2020) (awarding 35% of fund); *Sekura*, No. 2015-CH-16694 (awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, No. 2018-CH-02140 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *Svagdis v. Alro Steel Corp.*, No. 2017-CH-12566 (Cir. Ct. Cook Cnty.) (awarding 40% of

---

[11] The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is not applicable here as the written Settlement Agreement provided to the Court represents the entirety of the Parties' proposed Settlement. (Ufkes Decl. ¶ 6.) Since there are no side agreements to be identified, this sub-factor weighs in favor of preliminary approval.

fund); *see also* 5 NEWBERG ON CLASS ACTIONS § 15:83 (5th ed. 2011) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). Accordingly, that the Settlement permits the Court to award 35% of the fund in attorneys' fees is more than appropriate.[12] Proposed Class Counsel intend to submit their lodestar to the Court when moving for an award of attorneys' fees so the Court may "cross check" any percentage fee award. Finally, if approved, the Settlement provides that attorneys' fees will be paid within five business days after final judgment, including any appeals. (Agreement §§ 1.13, 8.1.) These terms are reasonable and should be preliminarily approved.

For these reasons, Plaintiff and proposed Class Counsel submit that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of possible approval. The Court should grant preliminary approval.

## VII. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that for any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)[,] the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [proposed settlement, voluntary dismissal, or compromise.]" Fed. R. Civ. P. 23(e)(1). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P.

---

[12] To be clear, Defendant may oppose the amount of attorneys' fees requested by proposed Class Counsel, as there is no "clear-sailing" provision in the Agreement. (Agreement § 8.1.)

23(c)(2)(B) (eff. Dec. 1, 2018). The substance of the notice to the Settlement Class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the Settlement Class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settlement contemplates a comprehensive Notice Plan that will provide direct notice to all Settlement Class Members for whom a U.S. mail address can be obtained through ParTech's or its customers' records. First, ParTech will provide the Settlement Administrator a list of all names and last known U.S. mail addresses of all persons in the Settlement Class (the "Class List"), as available. (Agreement § 4.1.) ParTech has been able to collect the vast majority of the Settlement Class's addresses informally by reaching out to its customers, and where customers have refused, Plaintiff has subpoenaed those customers. (*See* dkt. 116.) To date, there are only two customers who have not responded to Plaintiff's subpoenas. If they do not provide the requested addresses by January 20, 2022, Plaintiff will move to compel them.

Once the Class List is provided, the Settlement Administrator will update the addresses through the National Change of Address database and send direct Notice, which will include a fold-over postcard Claim Form attached, by First Class U.S. Mail. (*Id.* § 4.1(b); *see* Exhibit 1-A.) If any Notice by mail is returned as undeliverable, the Settlement Administrator will forward it to any forwarding addresses provided by the U.S. Postal Service, and if none are provided, the Settlement Administrator will perform skip traces to attempt to obtain the most recent addresses for such Settlement Class Members. (*Id.* §§ 4.1(b); 5.1(c).)

All of the Notice documents are written in plain, easily-understood language. To ensure a comprehensive Notice, the mail Notice will direct class members to a Settlement Website, which

will provide class members 24-hour access to further information about the case, including important court documents and the ability to submit claims forms online. (*Id.* §§ 1.3, 4.1(b), 5.1(f); *see* Exhibit 1-B.) Supporting the mail notices and Settlement Website will be a toll-free telephone line through which class members can contact Class Counsel and the Settlement Administrator to obtain additional information about the Settlement. (*Id.* § 5.1(f).) Finally, Defendant will provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (*Id.* § 4.1(b)(iv).)

Because the proposed Notice Plan effectuates direct Notice to all Settlement Class Members reasonably identified through ParTech's and its customer's records and fully apprises Settlement Class members of their rights, it comports with both Rule 23 and Due Process. Consequently, the Court should approve the Parties' proposed Notice Plan.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement Agreement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the Notice to the members of the Settlement Class, (iv) appointing Plaintiff Kandice Neals as Class Representative, (v) appointing J. Eli Wade-Scott and Schuyler Ufkes of Edelson PC and David Fish of Fish Potter Bolaños, P.C. as Class Counsel, (vi) scheduling a final fairness hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.[13]

---

[13]     Plaintiff intends to submit a proposed Preliminary Approval Order for the Court's convenience and to propose future case deadlines.

Respectfully submitted,

**KANDICE NEALS,** individually and on behalf of all others similarly situated

Dated: January 10, 2022      By: /s/ Schuyler Ufkes
            One of Plaintiff's attorneys

J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

David J. Fish
dfish@fishlawfirm.com
FISH POTTER BOLAÑOS, P.C.
200 East 5th Avenue, Suite 123
Naperville, Illinois 60563
Tel.: 630.355.7590
Fax: 630.778.0400

43