**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| KANDICE NEALS, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | No. 19-cv-05660 |
| v. | Hon. Franklin U. Valderrama |
| PARTECH, INC., a Delaware corporation, | |
| *Defendant*. | |

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW
<u>FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................................1

II.     BACKGROUND .................................................................................................3

       A.     BIPA and the Underlying Claims .....................................................3

       B.     Litigation History and the Work Performed for the Settlement Class...........5

       C.     The Settlement Secures Excellent Relief for the Settlement Class ...................8

III.     THE REQUESTED ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD ARE REASONABLE AND SHOULD BE APPROVED .............................9

       A.     Percentage-of-the-Fund Should be Used to Determine Fees Here .................11

       B.     A 35% Fee Award Is Appropriate Here .............................................12

             1.     This case presented serious obstacles to recovery, and Class Counsel litigated the case mindful of the possibility that the class might recover nothing.................................................14

             2.     Class Counsel achieved an excellent result for the class .....................16

             3.     A lodestar cross-check confirms the reasonableness of the requested fees .........................................................18

IV.     THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARD .................................................................................20

V.     CONCLUSION .................................................................................21

# **TABLE OF AUTHORITIES**

## **United States Supreme Court Cases**

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..................................................................................... 9

*Frank v. Gaos*,
  139 S. Ct. 1041 (2019)................................................................................ 17

*Hall v. Cole*,
  412 U.S. 1 (1973)........................................................................................ 18

## **United States Circuit Court of Appeals Cases**

*Americana Art China, Co., Inc. v. Foxfire Printing & Packaging Inc.*,
  743 F.3d 243 (7th Cir. 2014) ...................................................................... 16

*Bryant v. Compass Grp. USA, Inc.*,
  958 F.3d 617 (7th Cir. 2020) ........................................................................ 7

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) .................................................................... 20

*Fox v. Dakkota Integrated Sys., LLC*,
  980 F.3d 1146 (7th Cir. 2020) ...................................................................... 7

*Florin v. Nationsbank of Ga. N.A.*,
  34 F.3d 560 (7th Cir. 1994) ........................................................................ 11

*Golan v. FreeEats.com, Inc.*,
  930 F.3d 950 (8th Cir. 2019) ...................................................................... 15

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ................................................................. 11, 19

*In re Google Referrer Header Privacy Litig.*,
  869 F.3d 737 (9th Cir. 2017) ...................................................................... 17

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) .............................................................. 2, 10. 13

*In re Trans Union Corp. Privacy Litig.*,
  629 F.3d 741 (7th Cir. 2011) ...................................................................... 10

*Montgomery v. Aetna Plywood*,
    231 F.3d 399 (7th Cir. 2000) ......................................... 12

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ......................................... 12

*Pickett v. Sheridan Health Care Ctr.*,
    813 F.3d 640 (7th Cir. 2016) ......................................... 18

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ......................................... 10

*Skelton v. General Motors*,
    860 F.2d 250 (7th Cir. 1988) ......................................... 9

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ......................................... 9, 10

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ......................................... 13

## United States District Court Cases

*Adkins v. Facebook, Inc.*,
    No. 18-cv-05982-WHA (N.D. Cal. May 6, 2021 and July 13, 2021).............................. 17

*Barnes v. Aryzta*,
    No. 1:17-cv-07358, 2019 WL 277716 (N.D. Ill. 2019).............................. 18, 19

*Bryant v. Compass Grp. USA, Inc.*,
    No. 19-cv-06622 (N.D. Ill. Nov. 2, 2021) ......................................... 17

*Davis v. Heartland Emp. Servs.*,
    No. 19-cv-00680 (N.D. Ill. Oct. 25, 2021) ......................................... 12, 13, 21

*Figueroa, et al. v. Kronos Inc.*,
    No. 19-cv-01306 (N.D. Ill. Feb. 18, 2022) ......................................... 17

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016).............................. 12, 13

*Goodman v. Hangtime, Inc.*,
    No. 14-cv-01022 (N.D. Ill. Sept. 29, 2015) ......................................... 19

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018).................................... 11

iv

*Howe v. Speedway LLC*,
No. 19-cv-01374 (N.D. Ill.) ............................................. 15

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................. 16

*In re Facebook Biometric Info. Privacy Litig.*,
No. 3:15-CV-03747-JD, 2018 WL 2197546 (N.D. Cal. May 14, 2018) ...................... 15

*In re Facebook Biometric Info. Privacy Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021) ............................................. 18

*In re Google LLC Street View Elec. Commc'ns Litig.*,
No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ...................... 17

*In re Portal Software, Inc. Secs. Litig.*,
No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................... 20

*Jones v. CBC Rests. Corp.*,
No. 19-cv-6736 (N.D. Ill. Oct. 22, 2020) ............................................. 13

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015) ............................................. *passim*

*Lopez-McNear v. Superior Health Linens, LLC*,
No. 19-cv-2390 (N.D. Ill. Apr. 27, 2021) ............................................. 21

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. Nov. 22, 2019) ............................................. 14

*Neals v. PAR Tech. Corp.*,
419 F. Supp. 3d 1088 (N.D. Ill. 2019) ............................................. 14

*Norberg v. Shutterfly, Inc.*,
152 F. Supp. 3d 1103 (N.D. Ill. 2015) ............................................. 14

*Perlin v. Time Inc.*,
237 F. Supp. 3d 623 (E.D. Mich. 2017) ............................................. 16

*Wilkins v. HSBC Bank Nevada, N.A.*,
No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ............................................. 10

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................. 21

*Thome v. NOVAtime Tech., Inc.*,
  No. 19-cv-6256 (N.D. Ill. Mar. 8, 2021)........................................................................ 13, 16

**Illinois Supreme Court Cases**

*Rosenbach v. Six Flags Ent. Corp.*,
  2019 IL 123186 ................................................................................................................ 4

**Illinois Appellate Court Cases**

*Marion v. Ring Container Technologies, LLC*,
  No. 3-20-0184 (Ill. App. 3d Dist.) ................................................................................... 7

*Tims v. Black Horse Carriers, Inc.*,
  No. 1-20-0563 (Ill. App. 1st Dist.).................................................................................. 7

**Illinois Circuit Court Cases**

*Bernal v. ADP*,
  2017-CH-12364 (Cir. Ct. Cook Cnty. Aug. 23, 2019) .................................................. 14

*Carroll v. Crème de la Crème*,
  2017-CH-01624 (Cir. Ct. Cook Cnty.) ......................................................................... 12

*Cameron v. Polar Tech Indus., Inc.*,
  2019-CH-000013 (Cir. Ct. DeKalb Cnty. Aug. 23, 2019).............................................. 14

*Diaz v. Greencore USA–CPG Partners, LLC*,
  2017-CH-13198 (Cir. Ct. Cook Cnty. Aug. 30, 2019) .................................................. 12

*Kusinski v. ADP LLC*,
  2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) .................................................. 17

*LaBarre v. Ceridian HCM, Inc.*,
  2019-CH-06489 (Cir. Ct. Cook Cnty.) ......................................................................... 17

**Miscellaneous Authority**

740 ILCS 14 ......................................................................................................... *passim*

5 William Rubenstein, NEWBERG ON CLASS ACTIONS
  § 15.83 (5th ed.)........................................................................................................12, 13
  § 15.87 (5th ed.)...............................................................................................................19

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*,
  7 J. EMPIRICAL L. STUD. 811 (2010) .............................................................................. 12

Fed. R. Civ. P. 23 ......................................................................................................... 9

H.B. 559, 102nd Gen. Assembly (Ill. 2021) .................................................................16

H.B. 560, 102nd Gen. Assembly (Ill. 2021) .................................................................16

H.B. 1764, 102nd Gen. Assembly (Ill. 2021) ...............................................................16

H.B. 3112, 102nd Gen. Assembly (Ill. 2021) ...............................................................16

H.B. 3304, 102nd Gen. Assembly (Ill. 2021) ...............................................................16

H.B. 3414, 102nd Gen. Assembly (Ill. 2021) ...............................................................16

S.B. 56, 102nd Gen. Assembly (Ill. 2021) ....................................................................16

S.B. 300, 102nd Gen. Assembly (Ill. 2021) ..................................................................16

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs:
   An Empirical Study*, 53 UCLA L. Rev. 1303 (2006) ......................................................... 2

## I.     INTRODUCTION

Plaintiff Kandice Neals ("Plaintiff") brought this class action lawsuit alleging that Defendant ParTech, Inc. ("Defendant" or "ParTech")—the vendor of a biometric point of sale (POS) system—collected her and thousands of other Illinois restaurant workers' fingerprints in violation of the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* Plaintiff and her counsel litigated the case significantly, which included briefing Defendant's motion to dismiss, exchanging significant written discovery, successfully moving to compel discovery from Defendant, defeating Defendant's motion for judgment on the pleadings, defeating Defendant's motion to stay, and participating in a full-day mediation with the Honorable Stuart Palmer (ret.). As a result of these efforts, Class Counsel was able to secure a remarkably strong Settlement, which creates a non-reversionary $790,000 Settlement Fund for the benefit of 3,560 Settlement Class members.[1] Assuming a 10-20% claims rate, each Class Member who submits a valid claim will receive a cash payment estimated to be between $650 and $1,300, after any fees and cost are deducted.

The Settlement provides non-monetary relief, too. ParTech has established a publicly available retention and destruction schedule for biometric data and started an "e-consent" program that displays a notice and consent form to workers on the screen of the POS system before they can scan their finger. Under the Settlement, ParTech has formally agreed to maintain these policies going forward. Moreover, the Settlement preserves all of the Class Members' separate BIPA claims against their employers who deployed ParTech's finger-scanning POS system and likely committed separate BIPA violations. That means the Class Members stand to

---

[1]      Capitalized terms used in this motion are those used in the Stipulation of Class Action Settlement ("Settlement" or "Agreement") attached hereto as Exhibit 1.

receive additional monetary relief, on top of this Settlement, for their employers' collection of the same biometric data if they decide to pursue those unreleased claims.

In light of this excellent result, Class Counsel now respectfully moves the Court to award 35% of the Settlement Fund (less the amount paid for notice and the proposed incentive award) as attorneys' fees and expenses for a total of $256,228.70. The requested fee award accurately reflects the fee arrangement that a Class Member would have entered into with Class Counsel had they made an *ex ante* bargain before heading into litigation like this, given the risks in the case. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001). Moreover, the requested percentage fee award is well in line with common fund fee awards in BIPA cases in this District, (*see* Exhibit 2, Chart 1 (listing 35% fee awards in BIPA cases in the Northern District)) and is in fact less as a percentage than that commonly awarded in BIPA cases, (*see id.*, Chart 2 (listing 40% fee awards)). The reasonableness of this request is further confirmed by a lodestar cross-check: Class Counsel spent over three years of time and effort litigating this case, totaling $372,580.00 in appropriate hourly billings, which results in a *negative* lodestar multiplier of 0.69. In other words, the requested fee award represents only 69% of Class Counsel's base lodestar, which significantly discounts counsel's hourly rates and increases the funds available to Class Members.

Plaintiff's requested $5,000 incentive award is similarly reasonable. Incentive awards in class action settlements frequently exceed $10,000. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1348 (2006) (finding that "[t]he average award per class representative was $15,992"). Plaintiff's requested award reflects her participation throughout this case, including in the investigation of the Action, litigation, discovery, and the settlement process, and is comfortably in line with what

has been awarded in several similar BIPA cases in this District and before this Court. (*See* Exhibit 2, Chart 3 (listing incentive awards ranging from $5,000 to $10,000 in BIPA cases).) Plaintiff's requested fees and incentive award are reasonable and warrant the Court's approval.

## II.    BACKGROUND

A brief summary of the underlying facts and law will lend context to the instant motion and demonstrate the reasonableness of the requested fees and incentive award.

### A.    BIPA and the Underlying Claims

BIPA is landmark privacy law in Illinois, and one of the country's only meaningful regulations on the collection and use of biometric data. Recognizing the "very serious need" to protect Illinois citizens' biometric data—which includes retina scans, fingerprints, voiceprints, and scans of hand or face geometry—the Illinois legislature unanimously passed BIPA in 2008 to provide individuals recourse when companies failed to appropriately handle their biometric data in accordance with the statute. (*See* dkt. 32 ¶ 15; 740 ILCS 14/5.) Thus, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ."

740 ILCS 14/15(b). BIPA also establishes standards for how companies must handle Illinois consumers' biometric identifiers and biometric information. For example, BIPA requires companies to develop and comply with a written policy establishing a retention schedule and

guidelines for permanently destroying biometric information. 740 ILCS 14/15(a). As a means of enforcement, BIPA provides a civil private right of action and allows for the recovery of statutory damages in the amount of $1,000 for negligent violations—or $5,000 for willful violations—plus costs and reasonable attorneys' fees to any person "aggrieved by a violation" of the statute. *See* 740 ILCS 14/20.

As the Illinois Supreme Court assessed the legislature's intent in passing BIPA, the statute:

> vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. . . . These procedural protections are particularly crucial in our digital world because technology now permits the wholesale collection and storage of an individual's unique biometric identifiers—identifiers that cannot be changed if compromised or misused. When a private entity fails to adhere to the statutory procedures . . . the right of the individual to maintain her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized. This is no mere technicality. The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 34 (internal citations and quotations omitted).

This case arises from Plaintiff's experience scanning her fingerprint into ParTech's point-of-sale ("POS") system while working at a Charley's Philly Steaks restaurant in Schaumburg, Illinois. (Dkt. 32. ¶¶ 27, 28.) Plaintiff claims that she—and thousands of other restaurant employees across Illinois—were required to scan their fingerprints on finger scanners attached to ParTech POS systems as a means of tracking their time worked. (*Id.* ¶¶ 27–29.) In doing so, Plaintiff alleges that ParTech collected, stored, and used her and the class's fingerprint information in violation of BIPA. (Id. ¶¶ 30–32.) Specifically, Plaintiff alleges that ParTech violated section 15(a) of BIPA by (i) failing to develop a retention policy and guidelines for permanently destroying biometric data, (ii) failing to publicly disclose any such policy, and (iii)

failing to comply with any such policy (by actually deleting the data). (Id. ¶¶ 42, 50.) Plaintiff

further alleges that ParTech violated section 15(b) of BIPA by collecting, using, and storing her

and other restaurant workers' biometric data without obtaining their informed, written consent.

(Id. ¶¶ 5, 32, 47–49.)

### B. Litigation History and the Work Performed for the Settlement Class

Plaintiff Neals originally filed her putative class action complaint in the Circuit Court of

Cook County, Illinois, on March 21, 2019. Defendant then timely removed the case (dkt. 1), and

shortly thereafter, Defendant moved to dismiss arguing that Plaintiff's claims were barred by

Illinois' extraterritoriality doctrine since (at that time) she did not allege where in Illinois she

scanned her finger, that any obligations imposed by BIPA are the responsibility of Plaintiff's

employer, not the Defendant-vendor, and that Plaintiff neither alleged actual damages nor facts

that would entitle her to statutory damages based on "negligent" or "reckless" violations of

BIPA. (Dkt. 19 at 3, 6, 8.) Plaintiff opposed the motion, arguing, *inter alia,* that holding only the

employer liable for BIPA violations (where the vendor also collects biometric data) is directly

contrary to the language of the statute, and that "negligence" and "recklessness" are not pleading

requirements for a BIPA claim but measures of culpability after liability is established. (Dkt. 25.)

After full briefing and argument, the Court issued an opinion of first impression finding that

vendors of biometric technology, too, are subject to BIPA. (Dkt. 30.) The Court also found that

Plaintiff had sufficiently alleged that Defendant had negligently, recklessly, or intentionally

violated BIPA (*Id.* at 3-4.) And although the Court dismissed Plaintiff's complaint without

prejudice, it allowed Plaintiff to amend to allege the specific location where she scanned her

finger into Defendant's system—in Schaumburg, Illinois—curing any extraterritoriality

concerns. (Dkt. 30.) Plaintiff amended her complaint accordingly (dkt. 32), and Defendant

answered on January 29, 2020 (dkt. 35).

The Parties then engaged in months of contentious written discovery, which included a dispute over a protective order which the Parties briefed (dkts. 51, 53, 54), numerous meet-and-confers, and Plaintiff's motion to compel certain of Defendant's written discovery responses (dkt. 65). Plaintiff served her first written discovery requests on Defendant on March 4, 2020, to which Defendant initially responded on June 19, 2020, due to several COVID-19-related extensions. (Declaration of Schuyler Ufkes ("Ufkes Decl."), attached hereto as Exhibit 3, at ¶ 3.) Plaintiff twice requested that Defendant supplement its responses, first on July 11, 2020, then again in a Rule 26 deficiency letter on July 16, 2020, but Defendant declined. (*Id.*) Though the Parties resolved a few issues during two Local Rule 37.2 conferences and Defendant provided some supplemental responses, several issues remained. (*Id.*) As a result, on August 14, 2020, Plaintiff moved to compel. (Dkt. 65.) After briefing and argument, on September 9, 2020, Magistrate Judge Weisman granted Plaintiff's motion to compel in part, ordering Defendant to produce class-related discovery and responses to certain interrogatories, among other things. (Dkt. 71.) Plaintiff also served a third-party subpoena to and received documents from the manufacturer of the finger-scanning hardware at issue and served a second set of interrogatories and document requests on Defendant. (Ufkes Decl. ¶¶ 4, 5.)

Meanwhile, on August 14, 2020, Defendant moved for judgment on the pleadings, arguing that Plaintiff lacked Article III standing to pursue her section 15(a) claims in federal court, and Plaintiff filed a response. (Dkts. 63, 70, 79.) During their briefing, this case was reassigned. (Dkt. 74.) The Court denied Defendant's motion in full, agreeing with Plaintiff that Defendant's motion for judgment on the pleadings should be construed as a motion to sever and remand the section 15(a) claim, and agreeing that Plaintiff sufficiently alleged a concrete and

particularized injury under section 15(a) of BIPA to confer standing, relying on the Seventh

Circuit's then-recent rulings in *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir.

2020) and *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146 (7th Cir. 2020). (Dkt. 94.)

On December 29, 2020, Defendant moved to stay proceedings for 90 days pending the

Illinois Appellate Court's upcoming decisions on the applicable statute of limitations in *Tims v.*

*Black Horse Carriers, Inc.*, No. 1-20-0563 (Ill. App. 1st Dist.) and *Marion v. Ring Container*

*Technologies, LLC*, No. 3-20-0184 (Ill. App. 3d Dist.). (Dkt. 85, 90.) Plaintiff opposed the

motion, arguing that clarity on the applicable statute of limitations for BIPA claims would have

virtually no impact on this case because Plaintiff filed her case within any possible applicable

statute, and because the scope of discovery then-left to complete would not change based on the

applicable limitations period. (Dkt. 89 at 1.) The Court agreed with Plaintiff and denied

Defendant's motion on February 9, 2021. (Dkt. 94 at 11-14.)

Though the Parties had been discussing a class-wide resolution since early October 2020,

their discussions ramped up following the Court's ruling. The Parties had already exchanged

informal discovery regarding the size and composition of the class, exchanged initial offers and

demands, and held a conference call with Magistrate Judge Weisman in an effort to advance their

settlement discussions. (Ufkes Decl. ¶ 6.) After several back-and-forth negotiations, the Parties

agreed in March of 2021 to participate in a formal mediation. (*Id.*) On April 28, 2021, the Parties

attended a full-day mediation session with the Honorable Stuart E. Palmer (ret.) of JAMS in

Chicago. (*Id.*) The Parties' settlement negotiations lasted throughout the day, with the Parties

ultimately reaching an agreement in principle at the end of the session but with a few material

terms of the settlement still to be negotiated. (*Id.*) After two months of additional negotiation on

the outstanding material terms and the exchange of additional informal discovery, the Parties

executed a binding Memorandum of Understanding on June 30, 2021. (*Id.*) The Parties then prepared and negotiated the final terms of the settlement over the next six months, ultimately executing the final Settlement Agreement on December 23, 2021. (*Id.*) Plaintiff then promptly moved for preliminary approval (dkt. 124), which the Court granted on March 3, 2022 (dkt. 127).

While the Parties negotiated the Settlement, Defendant also reached out to its customers to collect mailing addresses for the Settlement Class members to effectuate direct notice of the Settlement. (*See* dkt. 116.) Twelve customers refused to voluntarily provide addresses to Defendant, so Plaintiff served subpoenas to all twelve customers on December 7, 2021, seeking the last known mailing addresses of Settlement Class members who worked for those customers. (Ufkes Decl. ¶ 7.) These subpoenas resulted in addresses for hundreds of additional Settlement Class members, ensuring that they would receive notice. (*Id.*)

### C. The Settlement Secures Excellent Relief for the Settlement Class

As detailed in Plaintiff's motion for preliminary approval, the relief to the Settlement Class is an outstanding result. The Settlement creates a non-reversionary fund of $790,000 for the 3,560 Class Members, which will be split *pro rata* between approved claimants after Court-approved fees and costs. Even if a relatively high 20% of Class Members submit a claim, payments are expected to be $650 for each valid claimant. If the claims rate is 10%, each claimant will receive about $1,300.

Aside from the monetary relief, the Settlement creates non-monetary benefits as well. After Plaintiff filed this suit—and no doubt as a result of it—ParTech established a publicly available retention and destruction schedule for biometric data and started an e-consent program that displays a notice and consent form on screen to workers who use ParTech's POS system before they can scan their finger, ensuring that every user provides informed written consent

prior to the collection and storage of their fingerprint data. The Settlement Agreement formally requires ParTech to maintain and comply with these policies in Illinois going forward, and further requires ParTech to delete any biometric data of Class Members in its possession within thirty (30) days of a customer telling ParTech to delete such data. (Agreement § 2.2.) This prospective relief aligns perfectly with the goals of BIPA and the goals of this lawsuit, which are to ensure that Illinois workers—past, current, and future—are protected under BIPA.

Finally, beyond this case, the Settlement explicitly preserves all of Plaintiff's and the Settlement Class's claims against their employers, including BIPA claims. (*Id.* § 1.21.) With this carve out, Plaintiff and the Settlement Class may pursue separate BIPA claims against their respective employers who deployed the ParTech POS systems at issue—individually or on a class basis—for additional monetary relief for their collection of the same biometric data.

## III. THE REQUESTED ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD ARE REASONABLE AND SHOULD BE APPROVED.

Rule 23 authorizes courts to "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In common fund settlements like this one, the attorneys' fee award is typically made as a share of the fund. The common fund doctrine is "based on the equitable notion that those who have benefited from litigation should share its costs." *Skelton v. Gen. Motors*, 860 F.2d 250, 252 (7th Cir. 1988) (citation omitted). By awarding fees payable from the common fund created for the benefit of the entire class, the court spreads litigation costs proportionately among those who will benefit from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The Seventh Circuit has consistently directed district courts in common fund cases to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688,

692 (7th Cir. 2007); *see also In re Synthroid*, 264 F.3d at 719 (cautioning that "any method other than looking to prevailing market rates assures random and potentially perverse results"). Ultimately, "the district court's task when determining the appropriate class action attorneys' fee is 'to estimate the contingent fee that the class would have negotiated with the class counsel at the outset had negotiations with clients having a real stake been feasible.'" *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *1 (N.D. Ill. Feb. 27, 2015) (quoting *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011)).

Class Counsel took this case on a contingent basis. (Ufkes Decl. ¶ 8.) Now that Class Counsel has achieved the results they did for the Settlement Class, they respectfully request that, after deducting notice and administration costs and the proposed incentive award from the Settlement Fund (i.e., the "Net Settlement Fund"),[2] the Court award Class Counsel 35% of the Net Settlement Fund, or $256,228.70 in attorneys' fees and expenses.[3] This amount is well in line with what other courts in this District have found a hypothetical *ex ante* bargain to be in BIPA cases. Indeed, the request is further confirmed by a lodestar cross-check. Considering the hourly work Class Counsel has expended, their combined lodestar is $372,580.00—$116,351.30 *more* than the requested fees—which yields a negative multiplier of 0.69. Accordingly, the fees should be approved.

---

[2]    Courts in the Seventh Circuit do not include notice and administration costs as part of the fund in making percentage-of-the-fund fee awards. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). Here, the $256,228.70 amount represents 35% of the Net Settlement Fund, that is, after deducting from the Settlement Fund (1) the $52,918 in total estimated notice and administration costs, and (2) the $5,000 proposed incentive award. (*See* Ufkes Decl. ¶ 18.)

[3]    The requested fee amount is inclusive of the $10,626.64 in costs fronted by Class Counsel—i.e., Class Counsel is not requesting costs separately. (*See* Ufkes Decl. ¶ 16.)

### A.    Percentage-of-the-Fund Should be Used to Determine Fees Here.

In the Seventh Circuit, district courts deciding common fund cases may choose one of two methods for awarding attorneys' fees: (1) percentage-of-the-fund or (2) lodestar approach. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500 (N.D. Ill. 2015). Under the percentage-of-the-fund approach, "plaintiffs' attorneys . . . petition the court to recover its fees" as a percentage of the total fund. *Florin v. Nationsbank of Ga. N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). In contrast, the lodestar approach requires district courts to determine the reasonable value of the services rendered and increase that amount by a multiplier that factors in various considerations. Under the lodestar approach, the court first determines a "reasonable hourly rate allowable for each attorney . . . involved in the case." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). Then, the court multiplies "the hours reasonably expended by the reasonable hourly rates" to produce the lodestar. *Id.* Finally, the court increases the lodestar by a multiplier that accounts for other relevant considerations, such as the attorneys' amount of risk in bringing the case or the complexity of the issues. *See id.* (holding that courts should consider from an *ex ante* perspective "what size risk the attorney assumed at the outset by taking this type of case").

While the court has discretion over whether to use the percentage-of-the-fund or lodestar approach, courts typically select a method by looking "to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek*, 311 F.R.D. at 501. The normal practice in consumer class actions "is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery." *Id.* Therefore, the percentage-of-the-fund approach best mirrors typical contingency agreements, and "the vast majority of courts in the Seventh Circuit" use it in common fund cases. *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018) (quotation omitted); *see also*

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811, 814 (2010) ("Most federal judges chose to award fees by using the highly discretionary percentage-of-the-settlement method.").

A percentage-of-the-fund, contingent approach is what the class would have negotiated with class counsel at the outset in a hypothetical *ex ante* bargain; in fact, it has been used to determine a reasonable fee award in virtually every BIPA class action settlement in both federal and state courts. *E.g.*, *Davis v. Heartland Emp. Servs., LLC*, No. 19-cv-00680, dkt. 130 (N.D. Ill. Oct. 25, 2021) (Valderrama, J.); *Diaz v. Greencore USA–CPG Partners, LLC*, 2017-CH-13198 (Cir. Ct. Cook Cnty. Aug. 30, 2019) (Valderrama, J.). In contrast, the lodestar approach has never been used to evaluate fees in these cases, as far as counsel is aware, where the Class received a monetary benefit.[4] Consequently, this Court should have no hesitation in applying the percentage-of-the-recovery method here.

### B.     A 35% Fee Award Is Appropriate Here.

The Seventh Circuit has instructed district courts to award reasonable attorneys' fees, and that "the measure of what is reasonable is what an attorney would receive from a paying client in a similar case." *Montgomery v. Aetna Plywood*, 231 F.3d 399, 408 (7th Cir. 2000). "[I]n consumer class actions . . . the presumption should . . . be that attorneys' fees awarded to class counsel should not exceed a third or at most half of the total amount of money going to class members and their counsel." *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 235 (N.D. Ill. 2016) (citing *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014)); *see also* 5 William Rubenstein, NEWBERG ON CLASS ACTIONS § 15.83 (5th ed.) (noting that, generally, "50% of the

---

[4]     The one exception is *Carroll v. Crème de la Crème*, 2017-CH-01624 (Cir. Ct. Cook Cnty.), which produced no monetary recovery for the class and instead provided credit monitoring.

fund is the upper limit on a reasonable fee award from any common fund"). Courts consider, against that presumption, the fee awards made in similar cases, the risks that the particular case presented, the quality of the legal work provided, the anticipated work necessary to resolve the litigation, and the stakes of the case. *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) ("[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees awarded by the district court."); *see also In re Synthroid*, 264 F.3d at 721.

Considering these factors, the Court can confidently find that a hypothetical *ex ante* negotiation would have resulted in the 35% Class Counsel now seeks; indeed, at least three courts in this District have awarded the same percentage in similar BIPA cases—one of which similarly secured a $790,000 fund for the class, as here. (*See* Exhibit 2, Chart 1.) The *ex ante* negotiation could have well resulted in an agreement *higher* than the requested 35%, as numerous other Illinois courts have awarded as much as 40% of the fund in BIPA cases. (*See id.*, Chart 2.)[5] Moreover, courts in the Seventh Circuit have awarded percentages of the fund higher than 35% in similar privacy cases. *Kolinek*, 311 F.R.D. at 503 (awarding 36% of fund in TCPA case). Accordingly, the requested award is more than appropriate and is what the class would have agreed to in an *ex ante* negotiation.

The appropriateness of a 35% fee award here is further justified by (1) the substantial risk that Class Counsel took on in accepting the case, and (2) the excellent relief Class Counsel

---

[5] Some courts in this District have awarded 33.3% fee awards in BIPA cases, but the funds in those cases were often substantially larger than the $790,000 fund here, and "as the dollar value of the common fund increases, the percentage of the settlement awarded as attorney fees generally decreases." *Gehrich*, 316 F.R.D. at 235; *see Davis*, No. 1:19-cv-00680, dkt. 130 (awarding 33.3% of $5,418,000.00 fund); *Thome v. NOVAtime Tech., Inc.*, No. 19-cv-6256, dkt. 90 (N.D. Ill. Mar. 8, 2021) ($4,100,000.00 fund); *Jones v. CBC Rests. Corp.*, No. 19-cv-6736, dkt. 53 (N.D. Ill. Oct. 22, 2020) ($3,242,400.00 fund).

ultimately obtained for the Settlement Class.

> **1. This case presented serious obstacles to recovery, and Class Counsel litigated the case mindful of the possibility that the class might recover nothing.**

In a hypothetical *ex ante* negotiation, it would be apparent to the client that a 35% contingent fee would be appropriate considering the significant risk Class Counsel took on in litigating a case mired in issues of first impression. (Ufkes Decl. ¶ 8.) Although these risks are inherent in any contingent-fee litigation, class actions especially, there are particularly acute risks in BIPA cases: as recently as 2015, there was no interpretation of any of the statute's material provisions. *See Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1106 (N.D. Ill. 2015) ("The BIPA was enacted in 2008, and to this date, the Court is unaware of any judicial interpretation of the statute.").

For starters, at the time of filing, no opinions yet existed addressing whether vendors of biometric timekeeping technology are subject to BIPA. And a few months after filing, things looked grim as courts began to express considerable skepticism that vendors could be liable under BIPA at all. *See Bernal v. ADP*, 2017-CH-12364 (Cir. Ct. Cook Cnty. Aug. 23, 2019) (Atkins, J.), attached hereto as Exhibit 4. Other courts joined that position to some degree, depending on how the claims were pleaded. *Cameron v. Polar Tech Indus., Inc.*, 2019-CH-000013 (Cir. Ct. DeKalb Cnty. Aug. 23, 2019); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285–86 (N.D. Ill. Nov. 22, 2019). With the liability of vendors an unresolved issue, the risks that Class Counsel took on here were significant. Nonetheless, Class Counsel forged ahead and secured the first opinion finding that vendors are subject to BIPA. *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1092 (N.D. Ill. 2019) ("To the extent [the above cited vendor] decisions stand for the proposition that the BIPA exempts a third-party non-employer collector of biometric

information when an action arises in the employment context, the Court disagrees with those decisions because there is no textual support whatsoever for such a restricted view of the statute's application.").

Even setting aside that case-dispositive issue, given the functionality of the widely-used fingerprint-scanning technology at issue, Class Counsel pursued this case knowing full well that ParTech would argue at summary judgment that the fingerprint scanners on its POS systems didn't collect "biometric identifiers" or "biometric information" as defined by BIPA, but rather a fingerprint "template," consisting of a string of numbers and letters that—it would argue—isn't regulated by the statute at all. This question is the subject of dispute in existing BIPA cases and hasn't yet been resolved by the courts. *Cf. In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-CV-03747-JD, 2018 WL 2197546, at \*2–3 (N.D. Cal. May 14, 2018) (denying motion for summary judgment on whether facial scans were biometric data regulated by BIPA); *Howe v. Speedway LLC*, No. 19-cv-01374, dkts. 125, 140, 149 (N.D. Ill.) (fully briefed motion for summary judgment on this issue in fingerprint scan case). Although Class Counsel puts little stock in this argument, it is an issue ungoverned by precedent, and if ParTech were to win on it at summary judgment or trial, Plaintiff's case would be defeated entirely, sinking Class Counsel's substantial investment of time and effort in this case.

Class certification also remains unanswered, as does the class's ability to actually recover—post-trial—what could be substantial damages against ParTech. *See, e.g., Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million). Furthermore, the attempts to gut BIPA in the legislature have been relentless—over the past year, at least eight such bills have been introduced to amend or

15

repeal BIPA[6]—and it is not unprecedented for legislation to be amended while a class action is pending in a way that threatens the class's entire recovery. *See Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 629–30 (E.D. Mich. 2017) (evaluating the retroactive effect of legislative amendment on pending class action).

Class Counsel accepted this case understanding that a single loss on any of these fronts would decimate the class's—and Class Counsel's—ability to get paid. In light of those risks, it is appropriate to award 35% of the fund in attorneys' fees. *See In re Capital One Tel. Consumer Protection Act Litig*, 80 F. Supp. 3d 781, 805–06 (N.D. Ill. 2015) (adding 6% risk premium to attorneys' fees based on risk of non-payment when case was filed); *Kolinek*, 311 F.R.D. at 502 (same).

### 2. Class Counsel achieved an excellent result for the class.

Given the large number of unresolved questions in BIPA vendor cases, and the possibility that the Settlement Class would recover nothing at all, the relief secured by Class Counsel is exceptionally strong. It is appropriate, too, for the Court to consider the actual result achieved—both as a function of the quality of Class Counsel's work, and because litigants often consider the ultimate degree of success in determining a fee schedule. *See Americana Art China, Co., Inc. v. Foxfire Printing & Packaging Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).

As explained in Plaintiff's motion for preliminary approval, at the time the Parties settled, the $790,000 fund for 3,560 people represented the highest per-person relief in a BIPA case against a biometric technology vendor. *See Thome*, No. 19-cv-6256, dkt. 90 ($4.1 million fund

---

[6]    *See* H.B. 559, 102nd Gen. Assembly (Ill. 2021); H.B. 560, 102nd Gen. Assembly (Ill. 2021); H.B. 1764, 102nd Gen. Assembly (Ill. 2021); H.B. 3112, 102nd Gen. Assembly (Ill. 2021); H.B. 3304, 102nd Gen. Assembly (Ill. 2021); H.B. 3414, 102nd Gen. Assembly (Ill. 2021); S.B. 56, 102nd Gen. Assembly (Ill. 2021); S.B. 300, 102nd Gen. Assembly (Ill. 2021).

for 62,000 class members); *Kusinski v. ADP LLC*, 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) ($25 million fund for approximately 320,000 class members); *Figueroa, et al. v. Kronos Inc.*, No. 19-cv-01306, dkt. 358 (N.D. Ill. Feb. 18, 2022) (preliminarily approving $15,276,227 fund for approximately 171,643 class members); *LaBarre v. Ceridian HCM, Inc.*, 2019-CH-06489 (Cir. Ct. Cook Cnty.) (preliminary approval motion filed for $3,493,074.00 fund for 14,142 class members); *see also Bryant v. Compass Grp. USA, Inc.*, No. 19-cv-06622, dkt. 90 (N.D. Ill. Nov. 2, 2021) (preliminarily approving $6.8 million settlement for 66,159 class members, which releases both the vendor of the biometric technology and all of its customers).

Here, assuming a healthy claims rate between 10-20%, claiming Class Members will receive individual payments of approximatively $650 to $1,300 each. Against a backdrop where many privacy claims under similar statutes settled for pennies on the dollar or no monetary relief at all, this is an exceptional result. *See, e.g.*, *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 740 (9th Cir. 2017), *vacated on other grounds by Frank v. Gaos*, 139 S. Ct. 1041 (2019) (approving 25% award of attorneys' fees on *cy pres*-only fund with not a penny to class members); *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of the Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021 and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs).

Finally, aside from the monetary relief, the non-monetary benefits created by the Settlement further support a 35% fee award. ParTech has established a publicly available

retention and destruction schedule for biometric data and started an e-consent program that displays a notice and consent form on screen to workers who use ParTech's POS system before they can scan their finger as part of its plan to comply with BIPA going forward. Class Counsel's pursuit of this case undoubtedly prompted ParTech to implement these policies, and the Settlement formally requires ParTech to keep them in place. This non-monetary result is also properly considered for purposes of determining fees. *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973).

Ultimately, the monetary and non-monetary relief recovered on behalf of the Settlement Class warrants approving the requested 35% of the monetary benefits of the Net Settlement Fund as attorneys' fees.

> ### 3. A lodestar cross-check confirms the reasonableness of the requested fees.

While the Settlement Class would not have agreed to calculate fees using the lodestar method, and the Court need not perform a lodestar "cross-check" to confirm the reasonableness of the fee award, analyzing the fee award under the lodestar method further confirms its reasonableness. *See Kolinek*, 311 F.R.D. at 500 ("[N]o Seventh Circuit case law suggests that a percentage-of-the-fund approach will yield a reasonable result only where it satisfies a lodestar cross-check").

A lodestar analysis is properly based on Class Counsel's current hourly rates. *See Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016). The rates charged by attorneys at Edelson PC correlate to their respective experience and are at or below the average rates of attorneys with similar backgrounds and experience practicing in the Chicago legal market. Edelson PC's rates have been consistently approved by courts in the Seventh Circuit, as well as in federal courts across the country. *See In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021); *Barnes v. Arzyta, LLC*, No. 1:17-cv-07358, 2019 WL 277716, at

18

*4 (N.D. Ill. 2019) (finding Edelson PC's rates "reasonable given the market rate that hourly clients are willing to pay, judicial approval of their rates, and their level of reputation and expertise in the area"); *Goodman v. Hangtime, Inc.*, No. 14-cv-01022, dkt. 124 (N.D. Ill. Sept. 29, 2015) (granting Edelson PC's fee request in full, the reasonableness of which was demonstrated under the lodestar method). Edelson PC's experience and expertise in consumer class action litigation is further detailed in its Firm Resume, attached as Exhibit 3-A to the Ufkes Declaration.

Class Counsel performed substantial work in this litigation, totaling over eight hundred attorney and staff hours already. The individuals primarily responsible for the case, along with their years of experience, rates and hours worked are provided in the Declarations of Schuyler Ufkes and David Fish. (Ufkes Decl. ¶ 14; Declaration of David Fish ("Fish Decl."), attached hereto as Exhibit 5, at ¶ 11.) As those charts demonstrate, the value of Class Counsel's services to the class amounts to $372,580.00 through the present. (*Id.*) Class Counsel has also incurred unreimbursed expenses of $10,626.64, which are encompassed in the attorneys' fee request— i.e., Class Counsel are not seeking expenses separately. (Ufkes Decl. ¶ 16.)

Calculating Class Counsel's base lodestar amount is only one part of the inquiry, however, in determining a reasonable fee award under this approach. The base lodestar amount is increased by a "multiplier . . . designed to reflect the fact that, no matter how many hours were invested, there was, at the outset, the possibility of no recovery." *Harman*, 945 F.2d at 976. A multiplier, accordingly, should be added to reflect the risk that Class Counsel faced in undertaking the litigation, which is discussed above. *See id.* Typically, courts apply a risk multiplier of between 1 and 4. *See* 5 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 15:87 (5th ed.).

19

Here, Class Counsel's fee request of $256,228.70 is $116,351.30 *less* than their base lodestar, which results in a *negative* multiplier of 0.69. This means that, if the Court grants the requested 35% fee, Class Counsel will receive only 69% of their actual lodestar—resulting in a discount (not a multiplier) to their hourly market rates—and the remaining money will remain in the Settlement Fund for the Class Members' benefit. That Class Counsel's requested fees here are lower than their lodestar, despite the presence of factors favoring an upward adjustment of their lodestar, indicates the fee request is eminently reasonable. *See In re Portal Software, Inc. Secs. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel."). The Court should approve Class Counsel's fee request.

## IV. THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARD.

The Settlement Agreement also provides for an incentive award of $5,000 to Plaintiff Kandice Neals for serving as class representative. Incentive awards are appropriate in class actions to compensate individuals for stepping up to protect the interests of a broader class, spending their own time to achieve benefits for the class as a whole. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, Plaintiff Neals' participation was critical to the case's ultimate resolution. Ms. Neals' willingness to commit time to this litigation and undertake the responsibilities involved in representative litigation resulted in a substantial benefit to the Settlement Class and fully justifies the requested incentive award. Throughout the case, Ms. Neals expended time and effort conferring with Class Counsel, providing information to Class Counsel to prepare the pleadings, reviewing the Complaint and First Amended Complaint before filing, responding to ParTech's

Case: 1:19-cv-05660 Document #: 134 Filed: 05/12/22 Page 28 of 29 PageID #:1304

interrogatories, collecting documents to produce in discovery, and reviewing and approving the Settlement Agreement before signing it. (Ufkes Decl. ¶ 19.) These efforts from Ms. Neals were necessary to secure the $790,000 Settlement Fund for the Settlement Class. (*Id.* ¶ 20.) She was also willing to attach her name to this litigation against ParTech and allow it to be transmitted via class notice to over three thousand people, subjecting herself to "scrutiny and attention" which is "certainly worth some remuneration." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 601 (N.D. Ill. 2011).

As a monetary matter, Ms. Neals' requested incentive award is eminently reasonable: it's equal to the amounts awarded to plaintiffs in numerous other privacy cases, including BIPA cases, *see Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-2390, dkt. 69 (N.D. Ill. Apr. 27, 2021) ($5,000 service award); (Exhibit 2, Chart 3), and a fraction of the amounts often awarded in BIPA class settlements in this District and by this Court. *See Davis*, No. 1:19-cv-00680, dkt. 130 ($10,000 service award in BIPA case) (Valderrama, J.); (Exhibit 2, Chart 3). Plaintiff Neals' request is more than in line with other incentive awards and should be granted.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff Kandice Neals respectfully requests that this Court enter an order (1) granting Class Counsel's request for an award of attorneys' fees and expenses in the amount of $256,228.70; (2) awarding Plaintiff Neals a $5,000.00 incentive award; and (3) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**KANDICE NEALS,** individually and on behalf of the Settlement Class,

Dated: May 12, 2022                    By: /s/ Schuyler Ufkes
                                                      One of Plaintiff's attorneys

J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

David J. Fish
dfish@fishlawfirm.com
FISH POTTER BOLAÑOS, P.C.
200 East 5th Avenue, Suite 123
Naperville, Illinois 60563
Tel.: 630.355.7590
Fax: 630.778.0400