**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| KANDICE NEALS, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | No. 19-cv-05660 |
| v. | Hon. Franklin U. Valderrama |
| PARTECH, INC., a Delaware corporation, | |
| *Defendant*. | |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................ 2

    A. Nature of the Litigation ..................................................................................... 3

    B. The Claims ......................................................................................................... 3

    C. Procedural History ............................................................................................. 4

III. TERMS OF THE SETTLEMENT AGREEMENT ......................................................... 6

    A. Class Definition ................................................................................................. 6

    B. Monetary Relief ................................................................................................. 7

    C. Prospective Relief .............................................................................................. 7

    D. Payment of Settlement Notice and Administrative Costs .................................. 8

    E. Attorneys' Fees and Incentive Award ............................................................... 8

    F. Release ................................................................................................................ 8

IV. THE CLASS NOTICE FULLY SATISFIED DUE PROCESS ...................................... 9

V. THE SETTLEMENT WARRANTS FINAL APPROVAL ........................................... 11

    A. Plaintiff and Class Counsel have Adequately Represented the Class ........... 12

    B. The Settlement Is the Product of Arm's-Length, Non-Collusive
        Negotiations ..................................................................................................... 14

    C. The Settlement Treats Class Members Equally ............................................... 16

    D. The Relief Secured for the Settlement Class is Adequate and Warrants Final
        Approval ........................................................................................................... 16

        1. *The Relief Provided by the Settlement is Excellent* ............................... 17

        2. *The Cost, Risk, and Delay of Further Litigation Compared to the
            Settlement's Benefits Favors Final Approval* .......................................... 20

*3.* ***The Method of Distributing Relief to the Class Members is Effective and Supports Final Approval*** ........................................................................ 22

*4.* ***The Terms of the Requested Attorneys' Fees are Reasonable*** .............. 23

**E.** **The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement** ........................................................................ 24

*1.* ***The Reaction of the Settlement Class Favors Approval*** ........................ 24

*2.* ***Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval*** ................................................ 26

*3.* ***The Settlement Raises No Red Flags*** ..................................................... 26

**VI.** **CONCLUSION** ........................................................................................................ 27

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)........................................................................................9

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)......................................................................................16

**United States Circuit Court of Appeals Cases**

*Bryant v. Compass Grp. USA, Inc.*,
    958 F.3d 617 (7th Cir. 2020) ........................................................................5

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ......................................................................26

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) ......................................................................22

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) ....................................................................22

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ......................................................................11

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ......................................................................11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ......................................................................12

*Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*,
    309 F.3d 978 (7th Cir. 2002) ......................................................................11

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) .............................................................. *passim*

**United States District Court Cases**

*Alvarado v. Int'l Laser Prods., Inc.*,
    No. 18-cv-7756 (N.D. Ill. Jan. 24, 2020).....................................................24

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)...................24, 25

*Bryant v. Compass Group USA, Inc.*,
  No. 19-cv-06622 (N.D. Ill. Nov. 2, 2021) ..................................................17, 18

*Chambers v. Together Credit Union*,
  No. 19-CV-00842-SPM, 2021 WL 1948453 (S.D. Ill. May 14, 2021) ...........................12

*Cooks v. TNG GP*,
  No. 2:16-cv-01160-KJM-AC, 2021 WL 5139613 (E.D. Cal. Nov. 4, 2021) ...................15

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
  No. 18-cv-7018 (N.D. Ill Sept. 20, 2020) ...........................................................24

*Crumpton v. Octapharma Plasma, Inc.*,
  No. 19-cv-08402 (N.D. Ill. Feb. 16, 2022) ...................................................23, 25

*Figueroa, et al. v. Kronos Inc.*,
  No. 19-cv-01306 (N.D. Ill. Feb. 18, 2022) .......................................................18

*Goldsmith v. Tech. Sols. Co.*,
  No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) .........................................20

*Howe v. Speedway LLC*,
  No. 19-cv-01374 (N.D. Ill.) ......................................................................21

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) .......................................................17, 22

*In re Google LLC Street View Elec. Commc'ns Litig.*,
  No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)...........................17

*In re NCAA Student-Athlete Concussion Injury Litig.*,
  332 F.R.D. 202 (N.D. Ill. 2019).................................................................12

*Lopez-McNear v. Superior Health Linens, LLC*,
  No. 19-cv-2390 (N.D. Ill. Apr. 27, 2021) .......................................................24

*Martinez v. Nando's Rest. Grp., Inc.*,
  No. 19-cv-07012 (N.D. Ill.) .....................................................................19

*McDaniel v. Qwest Commc'ns Corp.*,
  No. CV 05 C 1008, 2011 WL 13257336 (N.D. Ill. Aug. 29, 2011) .................................25

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
  No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .....................................25, 26

*Schulte v. Fifth Third Bank*,
  No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) .......................................15

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................................ *passim*

*Snyder v. Ocwen Loan Servicing, LLC*,
  No. 14 c 8461, 2018 WL 4659274 (N.D. Ill. Sept. 28, 2018)....................................12, 13

*Snyder v. Ocwen Loan Servicing, LLC*,
  No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ....................................11, 15

*Thome v. NOVAtime Tech., Inc.*,
  No. 19-cv-6256 (N.D. Ill. Mar. 8, 2021)...................................................................18, 25

**State Appellate Court Cases**

*Tims v. Black Horse Carriers, Inc.*,
  2021 IL App (1st) 200563 ..................................................................................................21

**State Circuit Court Cases**

*Abusalem v. The Standard Mkt., LLC*,
   No. 2019 L 000517 (Cir. Ct. DuPage Cnty.) ....................................................................19

*Carroll v. Crème de la Crème, Inc.*,
  No. 2017-CH-01624 (Cir. Ct. Cook Cnty. June 6, 2018) ..................................................18

*Edmond v. DPI Specialty Foods, Inc., et al.*,
  No. 2018-CH-09573 (Cir. Ct. Cook Cnty.) ......................................................................20

*Fluker v. Glanbia Performance Nutrition, Inc.*,
  No. 2017-CH-12993 (Cir. Ct. Cook. Cnty.) ...............................................................19, 20

*Kusinski v. ADP LLC*,
   2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) ................................................18, 25

*LaBarre v. Ceridian HCM, Inc.*,
  2019-CH-06489 (Cir. Ct. Cook Cnty. May 18, 2022) ......................................................18

*Lark, et al v. McDonald's USA, LLC, et al.*,
  No 17-L-559 (Cir. Ct. St. Clair Cnty. Nov. 29, 2021) ......................................................18

*Marshall v. Lifetime Fitness, Inc.*,
   2017-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019)........................................................18

*Mazurkiewicz v. Mid City Nissan*,
  No. 2018-CH-09798 (Cir. Ct. Cook Cnty.) ....................................................................20

*Prelipceanu v. Jumio Corp.*,
  2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020).....................................................25

*Rosenbach v. Six Flags Ent. Corp.*,
  2016-CH-00013 (Cir. Ct. Lake Cnty. Oct. 29, 2021) .....................................................18

*Sekura v. L.A. Tan Enters., Inc.*,
  2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016)......................................................25

*Watts v. Aurora Chicago Lakeshore Hosp. LLC*,
  No. 2017-CH-12756 (Cir. Ct. Cook Cnty.) ....................................................................20

*Zhirovetskiy v. Zayo Grp., LLC*,
  2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019).......................................................18

**Miscellaneous Authority**

4 NEWBERG ON CLASS ACTIONS
  § 13:53 (5th ed. 2011)....................................................................................................22

740 ILCS 14 ............................................................................................................... *passim*

*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*,
  FED. TRADE COMM'N (Sept. 2019) ................................................................................25

*Facebook Biometric Information Privacy Litigation*,
  https://www.facebookbipaclassaction.com (last accessed Jun. 2, 2022)..........................10

Federal Judicial Center,
  *Judges' Class Action Notice and Claims Process Checklist and Plain Language
  Guide 2010*, available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf .................9

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

Illinois House Transcript, 2008 Reg. Sess. No. 276 .....................................................3

*ParTech Point-of-Sale System Finger Scan $790K Class Action Settlement*,
  TOP CLASS ACTIONS (May 13, 2022), https://topclassactions.com/lawsuit-
  settlements/open-lawsuit-settlements/partech-point-of-sale-system-finger-scan-790k-
  class-action-settlement....................................................................................................10

# I.    INTRODUCTION

Plaintiff Kandice Neals filed this class action against Defendant ParTech, Inc., a provider of a cloud-based point-of-sale system ("POS system") with a finger scanner attached, which is used in many restaurants across Illinois, including where Plaintiff worked. Plaintiff alleged that ParTech violated the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* by collecting and storing her and other Illinois workers' fingerprints without their consent, and by failing to create and abide by a publicly-available retention and deletion policy for biometric data. After contentious litigation that included substantial motion practice and written discovery, the Parties reached a Settlement, which the Court preliminarily approved on March 3, 2022. The Settlement provides substantial monetary relief, distributed equitably through a simple claims process, and a comprehensive direct notice program. Now that notice to the Settlement Class is completed and not a single objection or opt out was received, Plaintiff requests this Court grant final approval to this exceptional Settlement.[1]

In terms of monetary relief, the Settlement creates a $790,000 non-reversionary Settlement Fund for the 3,558 class members to be split *pro rata* among those who file Approved Claims. Based on the current number of Approved Claims, those Class Members are expected to receive payments of approximately $650 each. Unsurprisingly, given the comprehensive notice and outstanding relief available, the Settlement has seen an excellent participation rate: there have been 729 Approved Claim submitted, for a claims rate of 20.5%. Although part of a growing trend of increased participation, this far exceeds standard claims rates in consumer class actions which rarely see rates in the double digits. The Settlement further provides non-monetary

---

[1]    The capitalized terms used in this motion are those used in the Stipulation of Class Action Settlement (the "Settlement" or "Agreement"), attached hereto as Exhibit 1.

benefits: after Plaintiff filed this suit, ParTech established a publicly-available retention and destruction schedule for biometric data and started an e-consent program that displays a notice and consent form on screen to workers who use ParTech's POS system before they can scan their finger, ensuring that every user going forward provides informed written consent prior to the collection and storage of their fingerprint data. (Agreement § 2.2.) Finally, the Settlement explicitly preserves Plaintiff's and the Settlement Class's claims against their employers (i.e., ParTech's customers), including BIPA claims. (*Id.* § 1.21.)

In accordance with the Court's Preliminary Approval Order, on March 31, 2022, the Settlement Administrator disseminated direct notice to the Settlement Class via U.S. Mail, which successfully reached an address for over 96% of the Settlement Class. By the Objection/Exclusion Deadline of May 26, 2022, not a single member of the Settlement Class asked to be excluded or objected.

The lack of opposition is unsurprising, considering the amount of monetary relief provided under the Settlement and how favorably it compares against other privacy class action settlements, including BIPA settlements. As explained below, this Settlement provides among the best monetary relief per person in a BIPA settlement with a technology vendor to date.

For these reasons, and as detailed below, this Settlement is exceptional. The factors to be considered under Rule 23 when determining whether to grant final approval to a class settlement weigh in favor of approving this one. Thus, the Court may appropriately grant final approval.

## II.   BACKGROUND

Though Plaintiff has detailed the case background in her preliminary approval motion and motion for attorneys' fees (dkts. 124, 134), it is set forth in brief below for ease of reference.

### A. Nature of the Litigation

BIPA was passed after the bankruptcy of a company called Pay By Touch, which had partnered with gas stations and grocery stores in Illinois to install checkout terminals that used fingerprint scanners linked to bank accounts to make purchases. (First Amended Complaint, ("FAC"), dkt. 32 ¶¶ 11–12.) When Pay By Touch's parent company declared bankruptcy at the end of 2007, it began shopping its database of Illinois consumers' fingerprints as an asset to its creditors. (*Id.* ¶ 12.) This decision was met with public backlash, and while a bankruptcy court ultimately ordered the destruction of the database, the Illinois legislature recognized the "very serious need" to protect Illinois citizens' biometric data. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276. Therefore, in 2008, the Illinois legislature passed BIPA, which makes it unlawful for any private entity to collect and store consumers' biometric data unless it first (i) obtains their informed written consent, (ii) provides details related to the data's purpose and storage, and (iii) establishes and complies with a publicly-available retention and destruction policy. *See id.*; 740 ILCS 14/15(a), (b). If a company fails to comply with BIPA's provisions, the statute provides for a civil private right of action allowing consumers to recover $1,000 for negligent violations or $5,000 for willful violations, plus costs and reasonable attorneys' fees. 740 ILCS 14/20.

### B. The Claims

Plaintiff brought this suit against ParTech, a company that provides POS systems with a finger scanner attached to its customers (primarily restaurants) who use it to authenticate and monitor their employees' working hours. (FAC ¶¶ 21, 22, 29, 45.) Plaintiff claims that her former employer—Charley's Philly Steaks, in Schaumburg, Illinois—used a ParTech POS system and required her to scan her finger on it to clock in and out of work. (*Id.* ¶¶ 27, 29.)

Plaintiff alleges that she and thousands of other restaurant workers across Illinois were required to scan their fingerprints into ParTech's POS system at their respective employers' restaurants. (*Id.* ¶¶ 22, 29.) What Plaintiff did not know, and what ParTech did not notify her of, she alleges, was that ParTech *itself* then collected her biometric data through the POS system's cloud-based software. (*Id.* ¶¶ 1, 30–33, 45–51.) As a result, Plaintiff alleges that ParTech violated § 15(a) of BIPA by (i) failing to develop a data-retention policy and guidelines for permanently destroying biometric data, (ii) failing to publicly disclose any such policy, and (iii) failing to comply with any such policy. (*Id.* ¶¶ 44–43, 50.) Plaintiff also alleges that ParTech violated § 15(b) of BIPA by collecting, using, and storing its workers' biometric data without obtaining informed written consent. (*Id.* ¶¶ 41, 43, 47–49.) Defendant denies that it has engaged in any wrongdoing. (*See* Def.'s Ans., dkt. 35.)

### C.    Procedural History

Plaintiff originally filed this case on March 21, 2019, against ParTech's parent company, PAR Technology Corp. ("PAR"), in the Circuit Court of Cook County, Illinois, and PAR removed the case to this Court. (Dkt. 1.) PAR then moved to dismiss the complaint, contending, *inter alia*, that (1) BIPA does not apply to third-party vendors of biometric technology like PAR, and (2) Plaintiff's claim was barred by Illinois' extraterritoriality doctrine since Neals did not allege in her original complaint that she scanned her fingerprints into PAR's system *in Illinois*. (*See* dkt. 19.) After full briefing, (*see* dkts. 25, 29), the Court granted PAR's motion—solely on extraterritoriality grounds—without prejudice and with leave to amend. (Dkt. 30.) Plaintiff amended her complaint on January 15, 2020, specifying that she had scanned her fingerprints in Illinois, and she substituted in ParTech as the defendant. (Dkt. 32.) On January 29, 2020,

ParTech answered the amended complaint, denying liability and asserting several affirmative defenses. (Dkt. 35.)

The Parties then began written discovery in early March of 2020. Plaintiff served Defendant with two sets of interrogatories and document requests, and Defendant served Plaintiff with a set of interrogatories and document requests. (Declaration of Schuyler Ufkes ("Ufkes Decl."), attached hereto as Exhibit 2, at ¶ 3.) Plaintiff also served a third-party subpoena to Cross Match Technologies, Inc.—the manufacturer of the finger scanning hardware at issue. (*Id.* ¶ 4.) After numerous meet and confers and supplemental written discovery responses from Defendant, Plaintiff moved to compel certain written discovery from Defendant, largely relating to Defendant's refusal to provide any discovery related to Plaintiff's class claims. (Dkt. 65.) The Court granted Plaintiff's motion to compel in part, ordering Defendant to produce class-related discovery. (Dkt. 71.)

Meanwhile, ParTech moved for judgment on the pleadings, arguing that Plaintiff lacked Article III standing for her section 15(a) claims in light of *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020). (Dkt. 63.) After full briefing, the Court denied ParTech's motion. (Dkt. 94.) Defendant also moved to stay proceedings on December 28, 2020, pending a decision by the Illinois Appellate Court on the applicable statute of limitations for BIPA claims. (Dkt. 85.) The Court also denied that motion after full briefing. (*See* dkts. 89, 90, 94.)

While engaged in fact discovery and between briefing these motions, the Parties explored the potential for a class-wide settlement and exchanged further informal discovery related to the size and composition of the putative class. (Ufkes Decl. ¶ 5.) After many settlement discussions, including a conference call with Magistrate Judge Weisman, the Parties agreed in March of 2021 to participate in a formal mediation. (Dkt. 96.) On April 28, 2021, the Parties attended a full-day,

formal mediation session with the Honorable Stuart E. Palmer (Ret.) of JAMS in Chicago. (Ufkes Decl. ¶ 5.) The Parties ultimately reached an agreement in principle at the end of the session, and after two months of additional negotiation on the outstanding material terms and the exchange of additional informal discovery, the Parties executed a binding Memorandum of Understanding on June 30, 2021. (*Id.*) Over the following six months, the Parties prepared and negotiated the final terms of the Settlement, and Defendant reached out to its customers to collect mailing addresses for the Settlement Class members to effectuate direct notice of the Settlement. (*See* dkt. 116.) On December 7, 2021, Plaintiff served subpoenas on twelve customers who refused to voluntarily provide addresses to Defendant, resulting in hundreds of additional addresses being produced. (Ufkes Decl. ¶ 6.)

The final Settlement Agreement was ultimately executed by the Parties on December 23, 2021. (*Id.* ¶ 5.) Plaintiff promptly moved for preliminary approval of the settlement (dkt. 124), which the Court granted on March 3, 2022. (Dkt. 127.) Most recently, Plaintiff's counsel moved for attorney's fees, expenses, and Plaintiff's incentive award on May 12, 2022. (Dkt. 134.)

## III.    TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Stipulation of Class Action Settlement, (Ex. 1), and are briefly summarized here:

A.    **Class Definition:** In the Preliminary Approval Order, the Court certified a Settlement Class of "[a]ll persons who scanned their fingers in the State of Illinois through a scanner attached to a point of sale system ("POS system") issued, leased, or sold by ParTech, Inc., and for whom any alleged biometric data (including without limitation any alleged

6

biometric identifiers or any alleged biometric information) relating to that scan was shared with or stored by Defendant, between March 21, 2014 and March 3, 2022."[2] (Dkt. 127 ¶ 3.)

      **B.**     **Monetary Relief:** ParTech has established a non-reversionary Settlement Fund of $790,000.00 for the benefit of the Settlement Class. Each Class Member who submitted a valid claim will be entitled to a *pro rata* portion after payment of notice costs, administrative expenses, and any attorneys' fees and incentive award approved by the Court. (Agreement §§ 1.12, 1.28, 1.29, 2.1(a).) Should the Court approve Plaintiff's requested attorneys' fees and incentive award, and given the remarkable 20.5% claims rate, each Class Member who submitted an Approved Claim can expect to receive a Settlement Payment for approximately $650. Any uncashed checks or electronic payments unable to be processed within 90 days of issuance will be provided to the Southern Smoke Foundation's Chicago Restaurant Worker Relief Fund as *cy pres* recipient, subject to final approval (*id.* § 2.1(f)), as preliminarily approved by the Court. (Dkt. 127 ¶ 7.)

      **C.**     **Prospective Relief:** Shortly after Plaintiff filed this suit, ParTech posted on its website a publicly-available retention and destruction schedule, and implemented an e-consent form on its POS systems with a finger scanner attached. ParTech agrees to continue to maintain a publicly-available retention and destruction schedule and obtain e-consent in Illinois prior to receiving any alleged biometric data going forward. ParTech further agrees to destroy the alleged biometric data of any Settlement Class members in its possession within thirty (30) days of a

---

[2]     Excluded from the Settlement Class are: (1) any Judge or Magistrate Judge presiding over this action and members of their families, (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, (3) persons who executed Defendant's e-consent or a written release from the person's employer that releases Defendant or the licensor or service provider of the employer's timekeeping software or POS system, before any alleged biometric data relating to the person's finger scan was shared with or stored by Defendant, (4) persons who properly execute and file a timely request for exclusion from the Settlement Class, and (5) the legal representatives, successors, heirs, or assigns of any such excluded persons. (*Id.*)

customer providing ParTech notice that the Settlement Class member's data should be deleted. The Settlement Agreement both memorializes these practices and requires ParTech to maintain them going forward. (Agreement § 2.2.)

    **D.     Payment of Settlement Notice and Administrative Costs:** Defendant has agreed to pay from the Settlement Fund all expenses incurred by the Settlement Administrator in providing notice, administering the Settlement, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing Settlement Payments, and any other related expenses. (*Id.* § 1.24.)

    **E.     Attorneys' Fees and Incentive Award:** Defendant has agreed to pay reasonable attorneys' fees in an amount determined by the Court, to be paid from the Settlement Fund. (*Id.* § 8.1.) Plaintiff's counsel voluntarily agreed to limit their request to 35% of the Settlement Fund, (*id.*), which they made by a separate motion on May 12, 2022. (Dkt. 134.) Defendant has also agreed to pay Plaintiff an incentive award from the Settlement Fund in the amount of $5,000, subject to Court approval, in recognition of her efforts in serving as Class Representative. (Agreement § 8.2; *see* dkt. 134, at 20-21.)

    **F.     Release:** In exchange for the relief described above, the Class Members will release ParTech, PAR, and certain related entities from all claims relating to ParTech's alleged collection, possession, or storage of biometric data through the use of a scanner attached to Defendant's POS systems at ParTech's customers' facilities located in Illinois, including BIPA claims. (Agreement §§ 1.20, 1.21, 3.) The Class Members will not release any claims against Defendant's customers, specifically Illinois-based employers that use a finger scanner attached to ParTech's POS system. (*Id.* § 1.21.)

## IV. THE CLASS NOTICE FULLY SATISFIED DUE PROCESS

Prior to granting final approval to this Settlement, the Court must consider whether the Class Members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011) ("*Schulte I*"). The "best notice practicable" does not necessarily require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process. In general, a notice plan that reaches at least 70% of class members is considered reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

Here, the Parties were able to obtain a U.S. Mail address for 3,450 members of the 3,558-person Settlement Class. (*See* Declaration of Matthew Neylon ("Neylon Decl."), attached hereto as Exhibit 3, at ¶ 4.) Accordingly, the Court-approved Notice plan called for direct notice via First-Class U.S. Mail to all persons in the Settlement Class for whom a valid address was available, plus the creation of a detailed Settlement Website. (Dkt. 127, ¶ 11; Agreement § 4.1.) Pursuant to the Notice plan outlined in the Agreement, ParTech provided Kroll Settlement Administration—the professional Settlement Administrator appointed by the Court—with a class list containing the Class Members' names and last known U.S. Mail addresses. (Neylon Decl. ¶ 4.) Once provided, the Settlement Administrator updated the U.S. Mail addresses through the National Change of Address database to ensure the most up-to-date addresses as possible. (*Id.* ¶ 10.) The Settlement Administrator then sent the Court-approved direct notice via U.S. Mail to all 3,450 addresses on the Class List, which were ultimately successfully delivered to 3,418

addresses. (*Id.* ¶ 11.) At the direction of the Parties, the Settlement Administrator also sent reminder notices via U.S. Mail on May 13, 2022 to 3,130 Settlement Class members who, at that point, had not yet submitted a claim. (*Id.* ¶ 14.) In the end, direct Notice was successfully delivered to a mailing address associated with over 96% of the Settlement Class, plus the reminder notices.

These summary notices directed class members to the Settlement Website, www.ParILBIPASettlement.com, which has been and continues to be available 24/7 and features the "long form" notice and important court filings (including Plaintiff's Motion and Memorandum of Law for Attorneys' Fees, Expenses, and Incentive Award), important deadlines, instructions on how to appear at the Final Approval Hearing telephonically, and answers to frequently asked questions. (*Id.* ¶ 7; Agreement § 4.1(b)(iii).)

On May 13, 2022—not by the instruction of the Parties or the Settlement Administrator—the website TopClassActions.com ("Top Class Actions") posted the details of this Settlement on its site with a link to the online claim form.[3] Within seven days of posting, the claims rate jumped to 118%, meaning there are more claimants than people in the class.[4] (Ufkes Decl. ¶ 7.) The Settlement Administrator has been continuously analyzing the claims for fraud and has confirmed that, to date, 729 claims have been submitted by persons on the Class List, for a 20.5% claims rate. (Neylon Decl. ¶¶ 16–17.)

---

[3]     *See ParTech Point-of-Sale System Finger Scan $790K Class Action Settlement*, TOP CLASS ACTIONS (May 13, 2022), https://topclassactions.com/lawsuit-settlements/open-lawsuit-settlements/partech-point-of-sale-system-finger-scan-790k-class-action-settlement.

[4]     Class Counsel suspects the claims rate jumped this high due to a combination of (1) Top Class Actions posting it and (2) the fact that nearly 1.4 million Illinois residents started receiving their $397 settlement payments from our firm's Facebook BIPA settlement starting May 9, 2022. *See Facebook Biometric Information Privacy Litigation*, https://www.facebookbipaclassaction.com.

Overall, the Notice program was highly successful, as direct Notice reached nearly every member of the class, those notices were supplemented with reminder notices, and the Parties ultimately achieved an outstanding claims rate of 20.5%. This greatly exceeds what is required for due process.

## V.     THE SETTLEMENT WARRANTS FINAL APPROVAL

When analyzing class action settlements, "the law quite rightly requires more than a judicial rubber stamp[.]" *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). To that end, the Seventh Circuit has established "the district judge as a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (internal quotations omitted).

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval . . . after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

As the Advisory Committee for the 2018 amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns[,]" the Court should also take into account the factors set out by the Seventh Circuit. Fed. R. Civ. P. 23(e), Advisory

Committee's Note to 2018 Amendment. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (internal quotations omitted); *accord Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019).

The following discussion of the factors set out in Rule 23(e)(2) and their corresponding factors set out by the Seventh Circuit demonstrates that the Settlement is fair, reasonable, adequate, and deserving of final approval.

### A. Plaintiff and Class Counsel have Adequately Represented the Class.

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is generally satisfied where the named plaintiff participated in the case diligently, and class counsel fought vigorously in the litigation. *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2018 WL 4659274, at *4 (N.D. Ill. Sept. 28, 2018); *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both through motion practice on

12

the legal merits and through discovery of facts and potential damages"). In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *See Snyder*, 2018 WL 4659274 at *4. This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

The knowledge and negotiating position, vigor, participation, and conduct of Ms. Neals and Class Counsel have not changed since this Court granted preliminary approval. (Dkt. 127.) Plaintiff Neals's interests have remained aligned with the Settlement Class through the Notice process and preparation for final approval. Without Ms. Neals stepping up to represent the class and taking on these tasks as the lead plaintiff, including responding to discovery and involvement in nearly every aspect of the case, the relief secured for the Settlement Class wouldn't have been possible. Given her efforts and aligned interest with the class, there can be no doubt that Ms. Neals has only acted in the best interest of the Settlement Class and has adequately represented them.

Likewise, Class Counsel worked vigorously to protect the interests of the class and ensure that the class was represented beyond the simple "adequate" measure. First, the immense amount of investigation and discovery undertaken by Class Counsel ensured that they had adequate information to assess the strength of the case and engage in settlement discussions. For example, Class Counsel engaged in extensive formal written discovery, including successfully moving to compel responses from ParTech and receiving documents pursuant to a third-party subpoena to Cross Match Technologies, Inc.—the manufacturer of the finger scanning hardware at issue. (Ufkes Decl. ¶¶ 3, 4.) In addition to written discovery, Class Counsel engaged in

13

extensive motion practice with ParTech, which included briefing Defendant's motion to dismiss, defeating Defendant's motion for judgment on the pleadings, and defeating Defendant's motion to stay.

After over two years of investigation and discovery, the facts underlying Plaintiff's allegations in this case, though by no means their legal import, are now substantially undisputed: through its cloud-based POS system with a finger scanner attached, ParTech stored the finger scan data of 3,558 of its customers' workers without obtaining any prior written consent forms or making any of the disclosures mandated by BIPA. Therefore, the Settlement unequivocally meets the Rule 23(e)(2)(C) requirement.

**B.      The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations.**

The second factor in Rule 23(e)(2) requires the court to consider whether the proposed settlement is the result of arm's-length negotiations. *See Wong*, 773 F.3d at 864. The record here demonstrates only good-faith, non-collusive bargaining between the Parties. After over two years of active litigation—which included fully briefing a motion to dismiss, a motion for judgment on the pleadings, a motion to compel discovery, and a motion to stay, and conducting substantial formal written discovery, both between the Parties and with third-party Cross Match Technologies—the Parties agreed in early October of 2020 that it was an appropriate time to explore meaningful settlement discussions. (*See* dkts. 77, 78.) This led to eight months of negotiations while the case was still actively litigated. Throughout the negotiation process, the Parties informally exchanged information regarding the size and composition of the class and attended an hour-long conference call with Magistrate Judge Weisman on January 21, 2021 to discuss the Parties' respective settlement positions and the possibility of a settlement conference. (Ufkes Decl. ¶ 5.) The discussion led to a full-day, private mediation with the Honorable Stuart E. Palmer (Ret.) of JAMS Chicago on April 28, 2021. (*Id.*) The Parties, with the benefit of the

mediation, reached agreement on multiple material deal points of the settlement, including the size of the settlement fund and its non-reversionary structure. (*Id.*) The Parties continued to negotiate the remaining materials terms over the next two months, exchanging more informal discovery and soon executed a binding Memorandum of Understanding on June 30, 2021. (*Id.*) The Parties spent the next six months drafting and negotiating the finer deal points of the final settlement agreement, which required submitting two issues unable to be resolved by the Parties to Judge Palmer for a binding determination. (*Id.*); (*see* dkt. 105). *See Wong*, 773 F.3d at 864 (affirming settlement approval and finding no "suspicious circumstances" where the parties negotiated with the assistance of an experienced third-party mediator); *Cooks v. TNG GP*, No. 2:16-cv-01160-KJM-AC, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021) ("The parties' participation in mediation 'tends to support the conclusion that the settlement process was not collusive.'"). After Judge Palmer resolved the issues, the Parties finalized and executed the Settlement Agreement on December 23, 2021. (Ufkes Decl. ¶ 5.)

The arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, provides significant cash payments to Class Members who submit a simple, valid Claim Form, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's-length negotiation"). For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume

15

the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered") (internal quotations omitted).

### C. The Settlement Treats Class Members Equally.

Next, Rule 23(e)(2) requires the proposed settlement to treat class members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Given that the Settlement Class here has nearly identical BIPA claims, the Settlement treats each of them identically. Defendant has established a non-reversionary fund of $790,000, from which each Class Member who submits a valid claim will receive a single, *pro rata* cash payment after fees and costs are paid. (Agreement §§ 1.29, 2.1); *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund").

The Settlement also provides for identical prospective relief requiring ParTech to maintain its e-consent program and retention schedule for biometric data going forward, in a uniform manner. (Agreement § 2.2.) Further, each Class Member will release the same BIPA claims against ParTech, and all will retain all their claims against their respective employers. (*Id.* §§ 1.20, 1.21, 1.22, 3.1.) Because the Settlement treats each Class Member equally, this factor is fully satisfied.

### D. The Relief Secured for the Settlement Class is Adequate and Warrants Final Approval.

The final and most crucial factor under Rule 23(e)(2) scrutinizes whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 identifies several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; and (iii) the terms

of any proposed award of attorneys' fees, including timing of payment. *Id.*[5] This analysis

necessarily encompasses two of the Seventh Circuit's factors: "(1) the strength of the case for

plaintiffs on the merits, balanced against the extent of settlement offer; [and] (2) the complexity,

length, and expense of further litigation[.]" *Wong*, 773 F.3d at 863. Because the first Seventh

Circuit factor "[is the] most important factor relevant to the fairness of a class action

settlement[,]" it is critically important for a settlement to meet this standard. *In re AT & T*

*Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011)

(internal quotations omitted). This Settlement does so.

### 1.    The Relief Provided by the Settlement is Excellent.

The benefits of this Settlement represent an outstanding recovery for the class and excel

when compared to other class action settlements, including those under BIPA. Given the 20.5%

claims rate, after any approved fees and costs are paid, each Class Member who submitted an

Approved Claim will be paid approximately $650 from the $790,000 Settlement Fund.

Settlements in other statutory privacy class actions frequently don't come near this

amount, either in terms of raw numbers or percentage of available relief. Such settlements all too

often secure *cy pres* relief without any individual payments to class members. *See, e.g.*, *In re*

*Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11–14 (N.D. Cal. 2020)

(approving, over objections of class members and state attorney general, a settlement providing

only *cy pres* relief for violations of a federal privacy statute, where $10,000 in statutory damages

were available per claim). This has been true in finally-approved settlements in the BIPA context

as well, where some settlements have provided only credit monitoring and *no* monetary relief for

---

[5]     The fourth sub-factor, which requires the parties to identify any side agreements made in
connection with the settlement, is inapplicable as there are no such agreements. Fed. R. Civ. P.
23(e)(2)(C)(iv); (Ufkes Decl. ¶ 8.)

the class. *See Carroll v. Crème de la Crème, Inc*., 2017-CH-01624 (Cir. Ct. Cook Cnty. June 6,

2018). Other BIPA settlements have capped the amount class members can receive and reverted

the inevitable remaining funds back to the defendant. *E.g.*, *Zhirovetskiy v. Zayo Grp., LLC*, 2017-

CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) (approving $990,000 reversionary fund for 2,200

class members, which capped payments at $400 and reverted up to $490,000 of unclaimed funds

back to defendant); *Rosenbach v. Six Flags Ent. Corp.*, 2016-CH-00013 (Cir. Ct. Lake Cnty. Oct.

29, 2021) (approving $36 million reversionary fund for approximately 1,110,000 class members,

which capped class member payments at $200 or $60 depending on date of finger scan and

reverted unclaimed funds to defendant); *Lark, et al v. McDonald's USA, LLC, et al.*, No. 17-L-

559 (Cir. Ct. St. Clair Cnty. Feb. 28, 2022) (approving $50 million reversionary fund for more

than 175,000 class members, which capped class member payments at $375 or $190 depending

on date of finger scan and reverted tens of millions of dollars in unclaimed funds to defendants);

*Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019) (paying a

cap of $270 to individuals who filed claims and reverting the remainder to defendant).

      Even when compared to the other BIPA vendor cases that have settled, this one excels—

at the time of Settlement, the $790,000 fund for 3,558 class members represented the highest

amount per claiming class member. *See Thome v. NOVAtime Tech., Inc.*, No. 19-cv-6256, dkt. 90

(N.D. Ill. Mar. 8, 2021) ($4.1 million fund for 62,000 class members); *Kusinski v. ADP LLC*,

2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) ($25 million fund for approximately

320,000 class members); *Figueroa, et al. v. Kronos Inc.*, No. 19-cv-01306, dkt. 358 (N.D. Ill.

Feb. 18, 2022) (preliminarily approving $15,276,227 fund for approximately 171,643 class

members); *LaBarre v. Ceridian HCM, Inc.*, 2019-CH-06489 (Cir. Ct. Cook Cnty. May 18, 2022)

(preliminarily approving $3,493,074 fund for 14,142 class members); *see also Bryant v.*

*Compass Group USA, Inc.*, No. 19-cv-06622, dkt. 90 (N.D. Ill. Nov. 2, 2021) (preliminarily approving $6.8 million settlement for 66,159 class members, which releases both the vendor of the biometric technology and all of its customers). This monetary relief is even more remarkable considering that vendor claims are commonly released in employer BIPA cases for nothing, with no separate payment for the vendor's separate BIPA violations or promise of injunctive relief. *But see Fluker v. Glanbia Performance Nutrition, Inc.*, 2017-CH-12993 (Cir. Ct. Cook. Cnty.) (carving out third-party vendor, ADP, from release in BIPA settlement secured by Edelson PC); *Abusalem v. The Standard Mkt., LLC*, No. 2019 L 000517 (Cir. Ct. DuPage Cnty.) (carving out third-party vendor, Ceridian HCM, Inc., from release in BIPA settlement secured by Fish Potter Bolaños, P.C.).

To that end, the Settlement also preserves Class Members' BIPA claims against their employers, meaning future monetary relief remains available to them for the collection of the same biometric data. Under the Settlement, Class Members will retain all their rights to pursue claims against their respective employers for the employer's own possible BIPA violations. (Agreement § 1.21, (the Released Parties do not include "Defendant's customers (specifically, Illinois-based employers that use a finger scanner attached to ParTech's POS system")).) This carve-out enables Class Members to vitiate the full scope of their privacy rights under BIPA, rather than, as in other cases, forcing Class Members to make a choice about which violations to pursue.

And, as the Court is aware, the employer BIPA claims are valuable: on average, class settlements between employees and their employers who deployed biometric timeclocks settle for over $1,000 per class member before fees and costs are deducted. *E.g.*, *Martinez v. Nando's Rest. Grp., Inc*, No. 19-cv-07012, dkt. 63 (N.D. Ill. Oct. 27, 2020) (fund constituting $1,000 per

person with direct checks sent to all class members); *Edmond v. DPI Specialty Foods, Inc., et al.*, 2018-CH-09573 (Cir. Ct. Cook Cnty.); *Watts v. Aurora Chicago Lakeshore Hosp. LLC*, 2017-CH-12756 (Cir. Ct. Cook Cnty.) (same); *Mazurkiewicz v. Mid City Nissan*, 2018-CH-09798 (Cir. Ct. Cook Cnty.) (fund constituting $1,250 per person with direct checks sent to all class members); *Fluker*, No. 2017-CH-12933 (fund constituting $1,300 per person with direct checks sent to all class members). Not only are the Class Members here receiving significant monetary relief in light of the defenses in vendor cases that are not present in employer casers, but they are maintaining their claims that fall into this employer-employee category.

Finally, the non-monetary benefits created by Plaintiff's efforts and the Settlement—ParTech's retention and deletion policy, e-consent program, and promise to keep them going forward—warrant approval. (Agreement § 2.2.) The prospective relief aligns with BIPA's statutory goals and the goals of this lawsuit.

### 2. The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval.

"As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment.

The Settlement here meets both the 23(e)(2)(C) requirements and the Seventh Circuit's first and second factors because it provides immediate relief to the Settlement Class while avoiding potentially years of risky litigation and appeals, with both Plaintiff and Defendant believing that they have strong cases for their side. *See Schulte I*, 805 F. Supp. 2d at 586

("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). The risks here were not insignificant.

For example, the applicable statute of limitations for BIPA claims is still in the balance, as the Illinois Supreme Court in *Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563 will soon resolve whether a one- or five-year limitations period applies to the various claims under § 15 of BIPA. If the high court holds that a one-year period applies to claims under §§ 15(a) and (b)—instead of a five-year period—the vast majority of the class's BIPA claims would be time barred absent settlement. (*See* Agreement § 1.26 (settling a five-year class period).) Further, on the merits, Defendant would have continued to assert—like nearly every other BIPA defendant—that the fingerprint data collected by its scanners are neither "biometric identifiers" nor "biometric information" covered by BIPA. Rather, the argument goes, the scanner merely scans a person's fingertip and creates an alphanumerical representation of the fingerprint (known as a "template" or "blob"), and any image of the fingerprint is immediately discarded. While Plaintiff seriously questions the merit of this argument, given that "biometric information" includes "any information, regardless of how it is captured, converted, stored, or shared" based on a fingerprint, *see* 740 ILCS 14/10, no court has ruled on this issue yet at summary judgment or trial. *Howe v. Speedway LLC*, No. 19-cv-01374, dkts. 125, 140, 149 (N.D. Ill.) (fully briefed motion for summary judgment on this issue in fingerprint scan case).

Plaintiff would also be required to use significant resources to litigate the issue of class certification. The Advisory Committee notes to amended Rule 23(e) suggest that courts should consider the likelihood of certifying a class for litigation in evaluating this sub-factor because the issue of litigating class certification is a salient one. While Plaintiff believes that she would ultimately prevail on certification issues given Defendant's uniform conduct, class certification is

21

still a significant hurdle and presents a risk to any class recovery. Were adversarial class certification to be granted, the possibility of an interlocutory appeal would still risk causing significant delay to any recovery. *Cf. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (affirming class certification on interlocutory appeal in BIPA case filed four years earlier).

Even if Plaintiff had succeeded at summary judgment and/or trial, Plaintiff expects that Defendant would have re-raised its arguments requesting a reduction in damages based on due process in light of the significant potential statutory damages at issue. (Dkt. 35 at 15-16); *see, e.g., Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million).

Finally, there is no guarantee that the Class Members would receive any benefit from protracted litigation. Protracted litigation is costly and time consuming, and it is possible that it "would provide Class Members with either no in-court recovery or some recovery many years from now . . ." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. at 964. This Settlement provides immediate relief to Class Members, without the risk of protracted litigation. Thus, given the substantial risks, expense, and delay that would accompany further litigation, and in comparison to similar BIPA class action settlements, the Settlement offers substantial value relative to the strength of Plaintiff's case. This crucial factor therefore strongly supports final approval.

### 3. The Method of Distributing Relief to the Class Members is Effective and Supports Final Approval.

The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

Settlement distribution here is straightforward. Class Members could submit a claim either by mail or online. Those who submit online have the option to select to receive their Settlement Payment by Venmo, Zelle, Paypal, Prepaid Mastercard, ACH Direct Deposit, or check; those who submit an Approved Claim by mail will receive a check in the mail and can update their address at any time on the Settlement Website. (Agreement § 1.5.) Once the Settlement is approved, the Settlement Administrator will distribute Settlement Payments to each Class Member for their *pro rata* portion of the fund.[6] *See Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402, dkt. 92 (N.D. Ill. Feb. 16, 2022) (approving BIPA settlement where settlement administrator processed claims under counsel's oversight and distributed *pro rata* shares to class members with valid claims). This well-recognized method of distributing monetary relief fully satisfies this aspect of Rule 23(e)(2)(C)(ii).

### 4. The Terms of the Requested Attorneys' Fees are Reasonable.

The third and final relevant sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii).

Class Counsel petitioned the Court for an award of reasonable attorneys' fees after the Settlement Class received Notice. (Dkt. 134.) The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method) and Class Counsel's request for thirty-five percent (35%) of the non-reversionary Settlement Fund is reasonable and predicated on the outstanding relief provided to the Settlement Class. (Agreement § 8.1.) To be

---

[6] If, after 90 days of issuance, any electronic payments are unable to be processed or any checks go uncashed, those residual funds will revert to the Court-appointed *cy pres* recipient. (Agreement § 2.1(f).) At preliminary approval, the Court preliminarily approved the Southern Smoke Foundation's Chicago Restaurant Worker Relief Fund as *cy pres* recipient. (Dkt. 127 ¶ 7.)

sure, the percentage-of-the-fund method has been used to determine a reasonable fee award in every BIPA class action settlement creating a common fund to date, and the requested percentage fee award is well in line with common fund fee awards in BIPA cases in this District. *See*, *e.g.*, *Alvarado v. Int'l Laser Prods., Inc.*, No. 18-cv-7756, dkt. 70 (N.D. Ill. Jan. 24, 2020) (awarding 35% of the fund) (Pallmeyer, J.); *Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-2390, dkt. 69 (N.D. Ill. Apr. 27, 2021) (same) (Pallmeyer, J.); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 18-cv-7018, dkt. 57 (N.D. Ill Sept. 20, 2020) (same) (Pacold, J.). A lodestar cross-check further confirms the reasonableness of the requested fees: the 35% fee request here results in a *negative* multiplier (or discount) to Class Counsel's lodestar at 0.69, which means Class Counsel's lodestar exceeds the requested fee award. (*See* dkt. 134 at 10.) Accordingly, Class Counsel's request of 35% of the fund in attorneys' fees is reasonable.

Finally, if approved, the Settlement provides that attorneys' fees will be paid within five business days after final judgment, including any appeals. (Agreement §§ 1.11, 8.1.) These terms are reasonable and should be approved.

### E. The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement.

In addition to the requirements that overlap with those now required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the opinion of competent counsel, and whether the settlement raises any red flags that courts should be wary of. *Wong*, 773 F.3d at 863. Here, the positive reaction of the Settlement Class, the support of counsel, and the lack of red flags all favor approval.

#### 1. The Reaction of the Settlement Class Favors Approval.

Lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc.*, *v. ACE INA Holdings, Inc.*, 2012

24

WL 651727, at *6 (N.D. Ill. 2012). Here, the Court-approved Settlement Administrator diligently implemented the Notice plan outlined in the Agreement—in addition to sending reminder notices as directed by the Parties—and the objection and exclusion deadlines have passed without a single person objecting to the Settlement or opting out of participating. That not one person has objected to or requested to be excluded from the Settlement is powerful evidence of the Settlement Class's support for the Settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'") (citations omitted); *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (stating that "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate").

Similarly, the strong 20.5% claims rate also indicates a robust positive reaction from the Settlement Class. *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.,* cases weighted by the number of notice recipients) was 4%."). Indeed, the rate at which Class Members participated in this Settlement—i.e., excluding claims filed by individuals not on the Class List—meets, and in most instances surpasses, nearly every other finally-approved BIPA settlement to date. *See Crumpton*, No. 19-CV-08402, dkt. 92 (20.6% claims rate); *Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (15% claims rate); *Kusinski*, 2017-CH-12364 (12.7% claims rate); *Thome*, No. 19-cv-6256, dkt. 90 (10% claims rate); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (5%

claims rate). The strong response rate combined with a total lack of objections or exclusions thus strongly supports granting final approval to the Settlement.

>    **2.      *Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval.***

The opinion of competent counsel also supports final approval of the Settlement. Where class counsel has "extensive experience in consumer class actions and complex litigation[,]" their "belie[f] that the [s]ettlement is beneficial to the [c]lass" supports approval of the settlement. *Schulte I*, 805 F. Supp. 2d at 586; *see also Retsky Family Ltd. P'ship*, 2001 WL 1568856, at *3 (finding plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted") (internal quotations omitted).

Here, as discussed at length in Plaintiff's motion for preliminary approval (dkt. 124 at 17–19), Class Counsel are competent to give their opinion on this Settlement. Put simply, and for the reasons discussed above, Class Counsel believe that the Settlement provides outstanding monetary and prospective relief without the uncertainty and delay that years of litigation would bring. (Ufkes Decl. ¶ 9.) That is certainly in the best interest of the Settlement Class. (*Id.*)

For these reasons, the opinion of Class Counsel weighs in favor of final approval.

>    **3.      *The Settlement Raises No Red Flags.***

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in analyzing class settlements. In *Eubank v. Pella Corp.*, the Seventh Circuit identified "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for[.]" 753 F.3d 718, 728 (7th Cir. 2014). Those signs included (i) a single class containing two adverse subgroups, (ii) a familial relationship between class counsel

26

and the class representative, (iii) failure to establish the amount of class member recovery, (iv) the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees before notice of the settlement was provided to class members, (vi) a provision in the settlement agreement denying incentive awards to class representatives who objected to the settlement, (vii) providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id.* at 721-28.

Here, none of those red flags are present. There are no subgroups to this class, and the Class Representative, Plaintiff Neals, has no familial relationship with Class Counsel or any member of their respective law firms. The claims process here is simple and straightforward: Class Members were able to submit the short, one-page Claim Form either online through the Settlement Website, or by mail by submitting the postage-prepaid Claim Form that was attached to their original postcard notice. Any unawarded attorneys' fees will be distributed to the Class Members, not revert to ParTech (Agreement § 8.1); there has been no advance of attorneys' fees to Class Counsel; and there is no provision in the Settlement Agreement denying an incentive award to a named plaintiff who does not support the Settlement.

The Settlement here is beneficial to Class Members and displays no warning signs that should give this Court pause. The Settlement should therefore be approved.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order finally approving the Parties' Settlement and ordering such other relief as this Court deems reasonable and just.[7]

---

[7] For the Court's convenience, Plaintiff will submit a proposed final approval order to the Court's designated email address prior to the July 20, 2022 final approval hearing.

Respectfully submitted,

**KANDICE NEALS,** individually and on behalf of
the Settlement Class,

Dated: June 2, 2022

By: /s/Schuyler Ufkes
One of Plaintiff's attorneys

J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

David J. Fish
dfish@fishlawfirm.com
FISH POTTER BOLAÑOS, P.C.
200 East 5th Avenue, Suite 123
Naperville, Illinois 60563
Tel.: 630.355.7590
Fax: 630.778.0400